# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH A. STALLARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 20-2703 (RBW) |
| ) | |
| GOLDMAN SACHS GROUP, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## <u>MEMORANDUM OPINION</u>

The plaintiff, Joseph A. Stallard, brings this civil action against the defendants, Goldman

Sachs Group, Inc., Goldman Sachs & Co. LLC (the "Goldman defendants"), and Voodoo SAS

("Voodoo"), alleging violations of 15 U.S.C. §§ 1, 18, 1114(1), 1117, 1125(a); 17 U.S.C.

§§ 501(a)–(b), 506(a); and 18 U.S.C. §§ 201, 1952(a), 1956, 1962, 2320(a), as well as common

law claims of trademark infringement, unfair competition, fraud, negligent misrepresentation,

tortious interference, unjust enrichment, and civil conspiracy.  <u>See generally</u> Complaint

("Compl."), ECF No. 1.  Currently pending before the Court are (1) Voodoo's motion to dismiss

the Complaint for improper service of process, <u>see</u> Voodoo SAS's Motion to Dismiss the

Complaint for Improper Service of Process Pursuant to Fed. R. Civ. P. 12(b)(5) ("Voodoo's

Mot."), ECF No. 14; and (2) the plaintiff's motion for alternative service, <u>see</u> Plaintiff's

Memorandum in Opposition to Voodoo SAS's Motion to Dismiss the Complaint for Improper

Service of Process Pursuant to Fed. R. Civ. P. 12(b)(5) or in the Alternative, Plaintiff's Motion

for Alternative Service Under Federal Rule of Civil Procedure 4(f)(3) ("Pl.'s Opp'n"), ECF

No. 16.[1]  Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must deny Voodoo's motion, and grant in part and deny in part the plaintiff's motion.

## I.    BACKGROUND

The plaintiff filed his Complaint on September 18, 2019.  See Compl. ¶ 1.  In his Complaint, the plaintiff alleges that Voodoo, a French company, see id. ¶ 8, (1) "distributed a video game" called "Knock Balls[,]" which "infring[ed] the copyrights of [the plaintiff's] Knocky Balls video game[,]" id. ¶ 2; (2) gave [Knocky Balls] a fake negative review[,]" id.; and (3) "reported [Knocky Balls] to Google[,]" who "removed [Knocky Balls] from Google Play and put [the plaintiff's] developer account in jeopardy[,]" id.  The plaintiff further alleges that the Goldman defendants "funded Voodoo with at least $200 million[,]" which "caused Voodoo to dominate the mobile video game market in a way that violates [ ] antitrust laws."  Id. ¶ 4.

On January 20, 2021, Voodoo filed its motion to dismiss for improper service of process.  See Voodoo's Mot. at 5.  Voodoo alleges that the plaintiff "made no effort to serve Voodoo with his [C]omplaint through any of the procedures set forth in Fed[eral] R[ule of] Civ[il] P[rocedure] 4(h) for serving process on a foreign corporation" and "[i]nstead[ ] purports to have effected service on Voodoo by identifying an attorney representing Voodoo in wholly unrelated litigation [before] the [United States Court of Appeals for the] Ninth Circuit[ ("Ninth Circuit")], then making repeated efforts to deliver the [C]omplaint to her by mail and in person at her home

---

[1] The Goldman defendants have also filed a motion to dismiss, see Motion to Dismiss by Goldman Sachs & Co. LLC, Goldman Sachs Group, Inc., ECF No. 13, which the Court will resolve separately.

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) Voodoo SAS's Reply Brief in Support of Its Motion to Dismiss the Complaint for Improper Service of Process Pursuant to Fed. R. Civ. P. 12(b)(5) ("Voodoo's Reply"), ECF No. 20.

and workplace[,]" despite being repeatedly "informed [that] she was not an authorized agent for service of process on Voodoo[.]"  Id. at 1.

A.      **The Plaintiff's Attempted Service**

The parties predominantly agree on the facts regarding the plaintiff's attempted service on Voodoo.  On October 1, 2020, the plaintiff mailed a package, containing a Notice of Lawsuit, a request to waive service, and a copy of the plaintiff's Complaint, via United States Postal Service Priority Mail, to Jaime A. Santos at the District of Columbia office of Goodwin Procter LLP ("Goodwin").[3]  See Pl.'s Opp'n at 4; Voodoo's Mot., Exhibit ("Ex.") 1 at 1 (reflecting a United States Postal Service envelope dated October 1, 2020, addressed to "Jaime A. Santos, Goodwin Procter LLP, 1900 N Street NW, Washington, DC 20036").  In response, Santos sent an e-mail to the plaintiff on October 16, 2020, stating that, although she had "received [the plaintiff's] correspondence[,]" "the Federal Rules of Civil Procedure require corporations to be served by delivering a copy of the summons and complaint to an officer, a managing or general agent, or another agent authorized by appointment or by law to receive service of process" and she was "not an officer, managing agent, or general agent of Voodoo [ ], and [had] not been authorized by appointment or by law to receive service of process for Voodoo[.]"  Voodoo's Mot., Ex. 2 (E-mail from Jaime A. Santos to Joseph Stallard (Oct. 16, 2020 1:03 p.m.) ("Santos Oct. 16, 2020 1:03 p.m. E-mail")) at 1; see also Pl.'s Opp'n at 4–5 (describing the e-mail).  On that same day, the plaintiff replied to Santos's email, stating that he "disagree[d]" because Santos

_____

[3] The Court notes that "[t]he plaintiff disputes the date [that Jaime] Santos[, the attorney for Voodoo whom the plaintiff attempted to serve,] received the [the request for] waiver [of service,]" Pl.'s Opp'n at 5, and asserts that "the defendant did not mention the plaintiff's other email to Santos on October 17[, 2020,]"  Id. at 6 (citing Pl.'s Opp'n, Ex. 2 (E-mail from Joseph Stallard to Jaime A. Santos (Oct. 17, 2020 1:47 p.m.) ("Pl.'s Oct. 17, 2020 1:47 p.m. E-mail")) at 1).  However, because the Court concludes that Santos is not authorized to receive service on behalf of Voodoo, see infra Section III.A, and the plaintiff has not attempted any other form of service on Voodoo, neither the date on which Santos allegedly received the request for waiver of service nor an e-mail from the plaintiff to Santos affects the Court's determination that service has not been properly effected on Voodoo.

was "the lead counsel" in <u>Voodoo SAS v. Say Games, LLC</u>, a case before the Ninth Circuit. Voodoo's Mot., Ex. 3 (E-mail from Joseph A. Stallard to Jaime Santos (Oct. 16, 2020 3:06 p.m.) ("Pl.'s Oct. 16, 2020 3:06 p.m. E-mail")) at 1; <u>see also</u> Pl.'s Opp'n at 5 (describing the e-mail). Accordingly, the plaintiff argued, Santos was "appearing as the agent for Voodoo, while Voodoo is in the country[,]" and because Santos "ha[d] been served, so ha[d] Voodoo."  Voodoo's Mot., Ex. 3 (Pl.'s Oct. 16, 2020 3:06 p.m. E-mail) at 1; <u>see also</u> <u>id.</u>, Ex. 3 (Pl.'s Oct. 16, 2020 3:06 p.m. E-mail) at 1 (arguing that service was proper under D.C. Code § 13-334).  Replying by email that same day, Santos reiterated that she was "not an agen[t] authorized by appointment or by law to receive service of process for Voodoo" and could not "offer [the plaintiff] legal advice for how to effect service of process on a foreign corporation."  <u>Id.</u>, Ex. 4 (E-mail from Jaime Santos to Joseph Stallard (Oct. 16, 2020 9:50 p.m.) ("Santos Oct. 16, 2020 9:50 p.m. E-mail")) at 1; <u>see also</u> Pl.'s Opp'n at 5 (describing the e-mail).

On November 3, 2020, a process server appeared at Santos's home with a copy of the Complaint and summons, <u>see</u> Pl.'s Opp'n at 5; Voodoo's Mot. at 3, which lists the "[d]efendant's name and address" as "Voodoo SAS[,] c/o Jaime A. Santos[,] Goodwin Procter LLP[,] 1900 N Street, NW[,] Washington, DC 20036[,]" Summons in a Civil Action ("Summons") at 1, ECF No. 4.  On November 10, 2020, the plaintiff emailed Santos, apologizing for contacting Santos at her home, and requesting that she either "arrange for [her]self or [her] [ ] office to accept the summons in [the District of Columbia]" or "agree to return the Waiver of Service."  Voodoo's Mot., Ex. 5 (E-mail from Joseph Stallard to Jaime Santos (Nov. 10, 2020 10:41 a.m.) ("Pl.'s Nov. 10, 2020 10:41 a.m. E-mail")) at 1; <u>see also</u> Pl.'s Opp'n at 5 (describing the e-mail).  On November 12, 2020, the plaintiff emailed three counsel who represent Voodoo in this case—Alicia Rubio-Spring, Keith Levenberg, and Ira J. Levy—

stating, <u>inter alia</u>, that "[t]his [wa]s [his] attempt to meet and confer" prior to filing a motion "for an injunction to order the arrangement of service on [Santos] in [the District of Columbia] for Voodoo[.]"  Voodoo's Mot., Ex. 6 (E-mail from Joseph Stallard to Alicia Rubio-Spring, Keith Levenberg, and Ira J. Levy (Nov. 12, 2020 11:01 a.m.) ("Pl.'s Nov. 12, 2020 11:01 a.m. E-mail")) at 1; <u>see also</u> Pl.'s Opp'n at 5 (describing the e-mail).  The plaintiff also requested that the attorneys "arrange to open [Goodwin's District of Columbia] office so that the summons can be served there[,]" "agree to return the [w]aiver of [s]ervice to [the plaintiff] by e[-]mail[,]" or "explain why, even if [Voodoo thought] service [wa]s improper, [the attorneys thought] it[ was] appropriate for [Goodwin] to evade service by refusing to return the [w]aiver of [s]ervice, refusing to cooperate with the process servers, and now refusing to cooperate with [him]."  Voodoo's Mot., Ex. 6 (Pl.'s Nov. 12, 2020 11:01 a.m. E-mail) at 1.

On November 13, 2020, Rubio-Spring responded to the plaintiff, stating that, "[w]ith respect to [the plaintiff's] attempts to leave a summons at Goodwin's [ ] office, [he was] free to leave any materials there[, h]owever, as [ ] Santos originally explained on October 16, [2020, she] has not been authorized to accept service of process on behalf of Voodoo [ ] (nor has Goodwin Procter LLP or any other partner or employee of Goodwin Procter LLP) and [Goodwin] cannot offer [the plaintiff] legal advice for how to effect service of process on a foreign corporation."  Voodoo's Mot., Ex. 7 (E-mail from Alicia Rubio-Spring to Joseph Stallard (Nov. 13, 2020 1:02 p.m.) ("Rubio-Spring Nov. 13, 2020 1:02 p.m. E-mail")) at 1; <u>see also</u> Pl.'s Opp'n at 5 (stating that "Rubio-Spring e[-]mailed the plaintiff to allow the service" of Santos "at Goodwin's [District of Columbia] office").  Accordingly, Rubio-Spring stated, "any package that [the plaintiff] le[ft] at [Goodwin's office] does not constitute proper service."  Voodoo's Mot., Ex. 7 (Rubio-Spring Nov. 13, 2020 1:02 p.m. E-mail) at 1.

On November 19, 2020, the plaintiff filed what he alleged to be proof of service.  See Proof of Service of Summons and Complaint on Voodoo SAS ("Proof of Service") at 1, ECF No. 8.  In his purported Proof of Service, the plaintiff states that Rubio-Spring "authorized the summons and complaint to be delivered to [ ] Santos at her place of business . . . by leaving it with Huylinh Ho at Goodwin['s District of Columbia office]."  Id. ¶ 2.  He further represents that "service of process was completed by Hannah Britton, a process server unrelated to the case," id. ¶ 3, and attaches an affidavit from Britton reflecting service on Ho "as [an a]uthorized [a]gent of Voodoo[,]" id., Ex. 1 (Affidavit of Process Server) at 1; see also Voodoo's Mot. at 4 (stating that "on November 18, 2020, [the p]laintiff directed a process server, Hannah Britton, to deliver a copy of the summons and Complaint to [ ] Ho, a Goodwin employee, at Goodwin's [District of Columbia] office").

According to a declaration filed by Ho, a "Court Procedures and Docketing Clerk" at Goodwin's District of Columbia office, Voodoo's Mot., Ex. 8 (Declaration of HuyLinh Ho ("Ho Decl.")) ¶ 1, Ho "met Hannah Britton, who identified herself as a process server, in the lobby of Goodwin's office" and "received a package containing the summons and complaint in the above-captioned case from [ ] Britton."  Id., Ex. 8 (Ho Decl.)  ¶ 3.  Ho further states that, "[u]pon receiving the package from [ ] Britton," Ho "stated that [she was] a Court Procedures and Docketing Clerk" and "reminded [ ] Britton that [she] was only receiving the package" and "not accepting this package for service."  Id., Ex. 8 (Ho Decl.) ¶ 4.  Ho also stated that she is "not an [a]uthorized [a]gent of Voodoo [ ] and [is] not authorized to accept service of any documents on behalf of Voodoo[.]"  Id., Ex. 8 (Ho Decl.) ¶ 5.

## II.   STANDARD OF REVIEW

Service of process in federal court is governed by Federal Rule of Civil Procedure 4,

which sets forth the various methods of service depending on the type of defendant being served.

See Fed. R. Civ. P. 4.  Service of corporations, partnerships, and associations is controlled by

Rule 4(h), which states that,

> [u]nless federal law provides otherwise or the defendant's waiver has been filed, a
> domestic or foreign corporation, or a partnership or other unincorporated
> association that is subject to suit under a common name, must be served:
>
> (1) in a judicial district of the United States:
>
>> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>>
>> (B) by delivering a copy of the summons and of the complaint to an
>> officer, a managing or general agent, or any other agent authorized by
>> appointment or by law to receive service of process and—if the agent is
>> one authorized by statute and the statute so requires—by also mailing a
>> copy of each to the defendant; or
>
> (2) at a place not within any judicial district of the United States, in any manner
> prescribed by Rule 4(f) for serving an individual, except personal delivery under
> f(2)(C)(i).

Fed. R. Civ. P. 4(h).  For defendants located "not within any judicial district of the United

States[,]" Fed. R. Civ. P. 4(h)(2), Rule 4(h)(2) incorporates by reference Rule 4(f), which

governs service of individuals in a foreign country, see id.  Under Rule 4(f),

> [u]nless federal law provides otherwise, an individual—other than a minor, an
> incompetent person, or a person whose waiver has been filed—may be served at a
> place not within any judicial district of the United States:
>
> (1) by any international agreed means of service that is reasonably calculated to
> give notice, such as those authorized by the Hague Convention on the Service
> Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement
> allows but does not specify other means, by a method that is reasonably calculated
> to give notice:

(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

(B) as the foreign authority directs in response to a letter rogatory or letter of request; or

(C) unless prohibited by the foreign country's law, by:

(i) delivering a copy of the summons and of the complaint to the individual personally; or

(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Under Rule 12(b)(5),[4] a party may seek dismissal of a complaint on the basis of "insufficient service of process[,]" Fed. R. Civ. P. 12(b)(5), which includes bringing a challenge to "the mode of delivery or the lack of delivery of [a] summons and complaint[,]" 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1353 (3d ed. 2004). When service is contested, the plaintiff "bears the burden of demonstrating the validity of [his, her, or] its proposed method of service." Freedom Watch, Inc. v. Org. of Petroleum Exporting Countries, 107 F. Supp. 3d 134, 136 (D.D.C. 2015); see also Light v. Wolf, 816 F.2d 746, 751 (D.C. Cir. 1987). "Thus, the plaintiff must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." Am. Univ. v. District of Columbia, No. 1:19-CV-3512 (TJK-GMH), 2020 WL 4754619, at *3

---

[4] The plaintiff argues that "Federal Rule of Civil Procedure 12(b)(4) allows [a] defendant to raise a defense for 'insufficient process'" and, therefore, because "[t]he defendant did not raise that defense, [ ] it is undisputed that the process service delivered sufficient process to [ ] Ho at [Goodwin's District of Columbia] office." Pl.'s Opp'n at 10. However, as Voodoo correctly notes, see Voodoo's Reply at 3, because it challenges the method of delivery of the summons, rather than the substance of the summons, the pertinent standard is Rule 12(b)(5), rather than Rule 12(b)(4). See Jouanny v. Embassy of Fr. in the U.S., 220 F. Supp. 3d 34, 36 n.1 (D.D.C. 2016) (noting that "'Rule 12(b)(5) [ ] is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint[,]" rather than Rule 12(b)(4) (quoting 5B Charles A. Wright & Arthur A. Miller, Federal Practice & Procedure § 1353 (3d ed. 2004))).

(D.D.C. July 13, 2020) (internal citations and quotation marks omitted).  "If [the] plaintiff does not meet [his,] her[, or its] burden, the Court may dismiss the complaint without prejudice for insufficient service of process."  Hashem v. Shabi, No. 17-1645 (ABJ), 2018 WL 3382913, at *3 (D.D.C. Apr. 26, 2018) (citing Fed. R. Civ. P. 12(b)(5)).  "A court may, however, in its sound discretion, also direct that service be effected within a particular period of time."  Mohammad Hilmi Nassif & Partners v. Republic of Iraq, No. 17-CV-2193 (KBJ), 2020 WL 1444918, at *9 (D.D.C. Mar. 25, 2020) (internal citations and quotation marks omitted).

Because the plaintiff is proceeding pro se, the Court appreciates that "[p]ro se litigants[,]" such as the plaintiff, "are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings."  Moore v. Agency for Int'l Dev., 994 F.2d 874, 876 (D.C. Cir. 1993) (underline added).  Although "[t]he assistance provided by district courts . . . does not constitute a license for a plaintiff filing pro se to ignore the Federal Rules of Civil Procedure," id. (internal citations and quotation marks omitted), the Court may nevertheless decline to dismiss a pro se plaintiff's case for insufficient service of process in favor of allowing the plaintiff another opportunity to comply with the rules.  See Lindsey v. United States, 448 F. Supp. 2d 37, 46–48 (D.D.C. 2006), abrogated on other grounds by Jones v. Bock, 549 U.S. 199, 211–14 (2007) (concluding that the pro se plaintiff's method of service did not comply with the Federal Rules, but "nevertheless conclud[ing] that the complaint should not be dismissed because of this defect").

### III.   ANALYSIS

Voodoo moves to dismiss the plaintiff's Complaint for improper service because (1) the plaintiff "never served an 'agent authorized by appointment or by law to receive service of process[,]" as required by Rule 4(h)(1)(b), see Voodoo's Mot. at 5; and (2) the plaintiff "never

attempted service by internationally agreed means of service[,]" as required by Rules 4(h)(2) and 4(f)(1), id. at 8.  Voodoo argues that "the appropriate remedy is dismissal" because the "[p]laintiff was given months to effect service and still failed to use (or, for that matter, even attempt) an authorized method [of service.]"  Id.  In response, the plaintiff argues that his service of Santos complied with Rule 4(h)(1)(b), see Pl.'s Opp'n at 11, but, in the alternative, asks the Court to either retroactively "order the service on [Santos] under [Rule] 4(f)(3)[,]" id. at 19, or to prospectively authorize service "by registered mail under [Rule] 4(f)(2)(c)(ii)[,]" id. at 22.  For the following reasons, the Court concludes that the plaintiff's attempts to serve Voodoo through Santos do not constitute proper service within the meaning of Rule 4(h), but that the plaintiff should be granted an extension of time in order to effect service on Voodoo in accordance with Rule 4(f).

**A.      Whether Santos Is an Authorized Agent of Voodoo**

In light of the parties' agreement that the plaintiff only attempted to serve Voodoo by delivering a copy of the summons and Complaint to Santos, see id. at 4–7 (describing the plaintiff's attempts at service); Voodoo's Mot. at 1–4 (same), the Court first considers whether Santos was authorized to receive service on behalf of Voodoo under Rule 4(h).  For the following reasons, the Court concludes that the plaintiff has not met his burden to demonstrate that Santos was an "agent authorized by appointment or by law to receive service of process" within the meaning of Rule 4(h)(1)(B).

Rule 4(h) governs service on "a corporation, partnership, or association." Fed. R. Civ. P. 4(h) (capitalization omitted).  Under Rule 4(h)(1)(B), service may be effected "by delivering a copy of the summons and of the complaint to . . . any [ ] agent authorized by

appointment or by law to receive service of process[.]"  Fed. R. Civ. P. 4(h)(1)(B).[5]  "[A]ny

agent who accepts service must be shown to have been authorized to bind his [or her] principal

by the acceptance of process[,]" Schwarz v. Thomas, 222 F.2d 305, 308 (D.C. Cir. 1955), either

explicitly or "implied in fact[,]" United States v. Ziegler Bolt & Parts Co., 111 F.3d 878, 881

(Fed. Cir. 1997).

The plaintiff argues that Santos's representation of Voodoo in unrelated litigation before

the Ninth Circuit amounts to either explicit or implicit authorization by Voodoo of Santos as its

agent for the purpose of accepting service.  See Pl.'s Opp'n at 11 (arguing that, "[e]ven if the

authorization was not explicit, it can also be implied from the relationship").  However, as

Voodoo correctly argues, see Voodoo's Reply at 4 (arguing that "this Court, and numerous

others, have held that an attorney's representation of a client does not make the attorney an agent

for receiving service of process"); see also id. at 4 n.1 (listing cases); Voodoo's Mot. at 5–8

(discussing cases), evidence that Santos has represented Voodoo in other matters does not, on its

own, demonstrate that she is "authorized by appointment or by law to receive service of

process[,]" Fed. R. Civ. P. 4(h)(1)(B).  See, e.g., Raja v. Fed. Deposit Ins. Corp., No. 16-cv-0511

(KBJ), 2018 WL 818393, at *3 ("[S]erving an attorney of record who is not a designated agent

of the defendant for the purpose of service does not satisfy the service of process requirement.");

Johnson-Richardson v. Univ. of Phoenix, 2020 WL 7318004, at *2 (D.D.C. Dec. 11, 2020)

(noting that "[m]ultiple decisions in this district have recognized that counsel of record is not an

authorized agent simply by virtue of representing the defendant in the lawsuit"); Ziegler Bolt &

---

[5] There is no dispute that (1) the plaintiff did not attempt service on Voodoo outside of the United States, see Pl.'s
Opp'n at 11 (representing that the plaintiff "did not serve [Voodoo] outside of the United States under [Rule]
4(h)(2)"); and (2) that Santos is not "an officer, a managing [agent,] or [a] general agent" of Voodoo, Fed. R. Civ. P.
4(h)(1)(B).  See generally Voodoo's Mem.; Pl.'s Opp'n; Voodoo's Reply.  Accordingly, the Court focuses solely on
the provision in Rule 4(h)(1)(B) that permits service on "agent[s] authorized by appointment or by law to receive
service of process[,]" Fed. R. Civ. P. 4(h)(1)(B).

Parts Co., 111 F.3d at 881 ("The mere relationship between a defendant and his[, her, or its] attorney does not, in itself, convey authority to accept service.").

Rather, the plaintiff bears the burden to provide "evidence indicating that [Voodoo] authorized [Santos], implicitly or explicitly, to receive service." Wilson v. Prudential Fin., 332 F. Supp. 2d 83, 88 (D.D.C. 2004); accord Dalal v. Goldman Sachs & Co., Civil Action No. 06-1061 (EGS), 2007 WL 1334972, at *3 (D.D.C. May 7, 2007) (concluding that Dalal's "service [ ] was still inadequate because it was made upon [Goldman Sachs & Co.'s] counsel" and there was "no indication that [Goldman Sachs & Co.'s] counsel was an agent authorized to receive process on [Goldman Sachs & Co.'s] behalf"); Brodie v. Worthington, Civil Action No. 09-1828 (HHK), 2011 WL 4402783, at *1 (D.D.C. Sept. 21, 2011) (concluding that "Brodie must offer evidence that [one of the defendants in that case] authorized his attorney to receive process on his behalf" because "[e]vidence that [that defendant's] attorney represents him in th[at] matter d[id] not suffice, especially when the attorney has explicitly disclaimed any authority to receive service on [the defendant's] behalf"). "[T]here must be a factual basis for believing that an appointment to receive process had been made[.]" Pollard v. District of Columbia, 285 F.R.D. 125, 128 (D.D.C. 2012) (internal quotation marks omitted).

However, outside of Santos's alleged representation of Voodoo, the plaintiff adduces no evidence demonstrating that Santos "exercised [any] authority beyond the attorney-client relationship" that would explicitly or impliedly confer "the power to accept service[,]" Ziegler Bolt & Parts Co., 111 F.3d at 881. See generally Pl.'s Opp'n. Indeed, the evidence before the Court demonstrates unambiguously that Santos did not have such authorization.[6] See Voodoo's

---

[6] The plaintiff claims in his opposition that both Voodoo and Santos were "careful to [not] definitively state that Santos was not authorized to receive service of process." Pl.'s Opp'n at 12. However, this argument ignores the

(continued . . .)

Reply, Ex. 1 (Declaration of Jaime A. Santos, Esq. ("Santos Decl.")) ¶ 2 ("I am not an officer, managing agent, or general agent of Voodoo, and Voodoo has not authorized me to accept or waive service of process on its behalf."); <u>see also</u> Voodoo's Mot., Ex. 2 (Santos Oct. 16, 2020 1:03 p.m. E-mail) at 1 (stating that Santos is "not an officer, managing agent, or general agent of Voodoo [ ], and I have not been authorized by appointment or by law to receive service of process for Voodoo"); <u>id.</u>, Ex. 4 (Santos Oct. 16, 2020 9:50 p.m. E-mail) at 1 (stating that Santos is "not an agen[t] authorized by appointment or by law to receive service of process for Voodoo"); <u>id.</u>, Ex. 7 (Rubio-Spring Nov. 13, 2020 1:02 p.m. E-mail) at 1 (stating that "Attorney Santos has not been authorized to accept service of process on behalf of Voodoo [ ] (nor has Goodwin . . . or any other partner or employee of Goodwin . . . )").[7]

In response, the plaintiff argues that Voodoo "signed a power of attorney to Santos, and the statutory power of attorney [under District of Columbia law,] authorizes [Santos] to receive service of process."  Pl.'s Opp'n at 12; <u>see also</u> <u>id.</u> at 11–12 (citing D.C. Code § 21-2112(6)). However, as Voodoo correctly argues, the "[p]laintiff appears to have conflated an attorney-<u>at-law</u> representing a client in court, i.e., the practice of law, with a non-lawyer attorney-<u>in-fact</u>" exercising authority on someone's behalf under a power of attorney.  Voodoo's Reply at 8

---

(. . . continued)

multiple, unequivocal statements to the contrary that were made to the plaintiff via e-mail by both Santos and Rubio-Spring, <u>see</u> <u>infra</u>, at 12–13, and later set forth in the Santos declaration, <u>see</u> Santos Decl. ¶ 2.

[7] The plaintiff argues that "[c]ourts have said that [ ] a declaration with a bare denial of the applicability of [R]ule 4 to the person serviced is not enough" to demonstrate that service of process was insufficient.  Pl.'s Opp'n at 13 (citing <u>Yueh-Lan Wang ex rel. Wen-Young Wong v. New Mighty U.S. Tr.</u>, 322 F.R.D. 11, 31 (D.D.C. 2017)). However, "[t]he party on whose behalf service is made has [met its] burden of establishing its validity when challenged."  <u>Light</u>, 816 F.2d at 751.  In light of (1) the clear case law holding that an attorney-client relationship is not enough to authorize an attorney to receive service on behalf of the client, <u>see</u> <u>Brodie</u>, 2011 WL 4402783, at *1 ("Evidence that [that defendant's] attorney represents him in th[at] matter d[id] not suffice, especially when the attorney has explicitly disclaimed any authority to receive service on [the defendant's] behalf."); and (2) the plaintiff's failure to provide any support for his allegations that Voodoo authorized Santos to receive service on its behalf, <u>see generally</u> Pl.'s Opp'n, the Court concludes that the plaintiff has not met his burden to demonstrate that service was valid.

(emphasis in original); see also D.C. Code § 21-2112 (setting forth the powers that someone can

grant an attorney-in-fact by signing a power of attorney, including, inter alia, "[w]aiv[ing] the

issuance and service of process upon the principal[ and] accept[ing] service of process"); cf. In re

Cherry, No. 12-00803, 2013 WL 1352294, at *2 (Bankr. D.D.C. Apr. 3, 2013) (concluding

that § 21-2112 does "not extend to permit [an individual] to act as a lawyer for" another

individual).  Without any evidence to support the plaintiff's allegation that Santos holds

Voodoo's power of attorney, see generally Pl.'s Opp'n, his argument does not compel the

conclusion that Santos is an agent of Voodoo authorized to receive service on Voodoo's behalf.

See Ziegler Bolt & Parts Co., 111 F.3d at 881 (noting that "[a] party [ ] cannot fabricate [ ]

implied authority [to accept service of process as an agent] from whole cloth to cure a deficient

service, but must present facts and circumstances showing the proper relationship between the

defendant and its alleged agent").

     Accordingly, contrary to the plaintiff's argument, see Pl.'s Opp'n at 11, the return from

the process server who delivered the copy of the summons and the Complaint to Ho at

Goodwin's District of Columbia office, see id., Ex. 8 (Affidavit of Process Server) at 1, is not

"prima facie evidence of valid service[,]" id. at 11, because it was not served upon someone

authorized to accept service on Voodoo's behalf.  Furthermore, the plaintiff's arguments that

Voodoo consented to the Court's jurisdiction through Santos fail because Santos is not Voodoo's

agent.  See id. at 16–17 (arguing that, under D.C. Code § 13-334, "a plaintiff can serve [a

corporation's] agents[,]" which "subjects the corporation to general personal jurisdiction"); see

also id. at 17–19 (arguing that jurisdiction over Voodoo is consistent with due process).

     Therefore, without any evidence to demonstrate that Voodoo has either explicitly or

implicitly authorized Santos to receive service of process on its behalf, the Court concludes that

Santos is not an agent authorized by Voodoo to receive service of process, and, accordingly, the plaintiff has not adequately served Voodoo under Rule 4(h)(1)(B).

**B.      The Plaintiff's Motion for Alternative Service**

Having concluded that the plaintiff's attempted service of Voodoo does not comply with Rule 4(h)(1)(B)'s requirement for serving a corporation via an authorized agent, the Court turns to the plaintiff's arguments in the alternative that the Court should order service via Santos retrospectively or prospectively under Rule 4(f)(3), see id. at 21, or allow him to effect service according to Rule 4(f)(2)(C)(ii), see id. at 22.  In response, Voodoo argues that the Court should deny the plaintiff's motion and dismiss the plaintiff's claims against it because (1) the "[p]laintiff did not attempt to serve Voodoo outside of the United States[,]" has not "attempted to comply with the Hague Convention in any way[,]" and "furnishes no reason why he can[no]t comply with the Hague Convention[.]"  Voodoo's Reply at 12.  The Court will address the plaintiff's requests in turn.

**1.   The Plaintiff's Request That the Court Authorize Service on Voodoo Through Santos According to Rule 4(f)(3)**

The plaintiff first asks that the Court "order the service on [Voodoo's] attorney under [Rule] 4(f)(3)[.]"  Pl.'s Opp'n at 20.  For the following reasons, the Court declines to order service on Voodoo through Santos either retrospectively or prospectively.

Rule 4(f)(3) grants a Court discretion to authorize service of a defendant in a foreign country by means not otherwise provided for in Rule 4(f).  See Fed. R. Civ. P. 4(f)(3) ("Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States . . . by other means not prohibited by international agreement, as the court orders.").  Under Rule 4(f)(3), "courts have authorized a wide variety of alternative methods of

service[,] including . . . delivery to the defendant's attorney[.]"  Rio Properties, Inc. v. Rio Int'l

Interlink, 284 F.3d 1007, 1016 (9th Cir. 2002); see, e.g., Bazarian Int'l Fin. Assocs., LLC v.

Desarrollos Aerohotelco, C.A., 168 F. Supp. 3d 1, 14–17 (D.D.C. 2016) (denying the

defendants' motion to dismiss for insufficient service of process and concluding that "permitting

service of a foreign individual or corporation through retained United States counsel does not run

afoul of [Rule 4(f)]'s application to individuals and corporations, located in foreign countries,

where service will be completed").  However, "[t]he decision whether to allow alternative

methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district

court."  Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries, 766 F.3d 74, 81

(D.C. Cir. 2014).  In evaluating potential methods of service under Rule 4(f)(3), "an earnest

effort should be made to devise a method of communication that is consistent with due process

and minimizes offense to foreign law."  Id. at 82 (internal citations, quotation marks, and

emphasis omitted).

      Here, unlike in other cases where service on a foreign defendant's United States counsel

has been ordered under Rule 4(f)(3), there is no evidence that the plaintiff has made any attempt

at service in a manner that complies with Rule 4(f) prior to asking the Court to retroactively

authorize his attempts to serve Voodoo.  Cf. Bazarian, 168 F. Supp. 3d at 14–17 (retroactively

authorizing service on United States counsel under Rule 4(f)(3) after the plaintiff had "attempted

to comply with the Hague Convention to serve the original complaint on [the defendant]");

Kaplan v. Hezbollah, 715 F. Supp. 2d 165, 167 (D.D.C. 2010) (prospectively ordering "service

by publication[]" on Hezbollah under Rule 4(f)(3) after plaintiffs had attempted to serve the

alleged leader of Hezbollah because service by publication "would not appear to violate any

international agreement regarding service of process and is reasonably calibrated to achieve

notice to Hezbollah"); <u>Hashem</u>, 2018 WL 3382913, at *3–4 (allowing Hashem to serve Shabi "through [Shabi's] counsel of record located in the United States" after Hashem "attempted to serve . . . Shabi by mail under Rule 4(f)(2)(C)(ii)").  In contrast to the cases where service by means not provided in Rule 4(f) of defendants in foreign countries has been permitted, the only attempts at service made by the plaintiff have been his attempts at serving Santos, which, under clear precedent from this circuit, <u>see supra</u> Section III.A, do not comply with Rule 4.

Moreover, the plaintiff affirmatively represents that he is able to comply with Rule 4, <u>see</u> Pl.'s Opp'n at 22 (stating that he, "via the Clerk[ of the Court], can serve [Voodoo] by registered mail under [ ] Rule . . . 4(f)(2)(C)(ii)"), without providing any explanation as to why he has failed to already do so, <u>see generally</u> Pl.'s Opp'n.  Accordingly, in light of the fact that the plaintiff represents that he is able to comply with Rule 4, but has not yet attempted any manner of service aside from serving Santos, the Court declines to retroactively authorize service of Voodoo via Santos.[8]

**2.  The Plaintiff's Request that the Court Permit Him to Serve Voodoo by Registered Mail Under Rule 4(f)(2)(C)(ii)**

Lastly, the Court turns to the plaintiff's request that he be permitted to "serve [Voodoo] by registered mail under [ ] Rule . . . 4(f)(2)(C)(ii)."  <u>Id.</u> at 22.

As the plaintiff correctly argues, <u>see id.</u>, service of Voodoo by registered mail would be permissible under Rule 4(f)(2)(C)(ii).  According to Rule 4(f)(2)(C)(ii), "if there is no internationally agreed means [of service], or if an international agreement allows[,] but does not specify[,] other means," "unless prohibited by the foreign country's law," a plaintiff may serve a

---

[8] Because the Court declines to grant the plaintiff's request under Rule 4(f)(3), it does not reach the plaintiff's arguments that the Court has the authority to retroactively permit service on Voodoo through Santos, <u>see</u> Pl.'s Opp'n at 21–22 (arguing that because Voodoo "already has actual notice of the case, then [the C]ourt[] can liberally construe the [R]ules to retroactively order . . . service" under Rule 4(f)(3)).

foreign defendant by "using any form of mail that the clerk addresses and sends to the [defendant] and that requires a signed receipt[.]"  Fed. R. Civ. P. 4(f)(2)(C)(ii).  Article 10(a) of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, to which both France and the United States are signatories, permits service by mail pursuant to Rule 4(f)(2)(C)(ii), see Convention Done at the Hague Art. 10, Feb. 10, 1969, 20 U.S.T. 361 ("Hague Convention") (stating that, "[p]rovided the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad"); Winter Splash, Inc. v. Menon, __ U.S. __, 137 S. Ct. 1504, 1513 (2017) (holding that "the traditional tools of treaty interpretation unmistakably demonstrate that Article 10(a) encompasses service by mail"), and "France has not objected to Article 10[,]" Melia v. Les Grands Chais de Fr., 135 F.R.D. 28, 36 (D.R.I. 1991).  Therefore, because service by mail is both "allow[ed]" by the Hague Convention, Fed. R. Civ. P. 4(f)(2), and not "prohibited by the foreign country's law[,]" Fed. R. Civ. P. 4(f)(2)(C), service on Voodoo "using any form of mail that the clerk addresses and sends . . . and that requires a signed receipt[,]" Fed. R. Civ. P. 4(f)(2)(C)(ii), would comply with Rule 4.

Accordingly, the Court concludes that it will grant the plaintiff an extension of the deadline by which he must effect service on Voodoo in order for the plaintiff to attempt service in compliance with Rule 4(f)(2)(C)(ii).  Although Voodoo's arguments regarding the plaintiff's unwillingness to attempt compliance with Rule 4(f) prior to the issuance of this Memorandum Opinion and Order are compelling, see Voodoo's Reply at 14, the plaintiff's pro se status and the lack of evidence that Voodoo would face any prejudice from an extension of the service deadline, see generally id.; Voodoo's Mot., cause the Court to conclude that the plaintiff should be granted a "second bite[ at] the apple[,]" id. at 14.  See Moore, 994 F.2d at 876 (noting that

"[p]ro se litigants are allowed more latitude than litigants represented by counsel to correct

defects in service of process and pleadings").  The Court therefore denies Voodoo's motion to

dismiss, and grants the plaintiff's motion for alternative service only to the extent he seeks an

extension of the service deadline to effect service on Voodoo in compliance with

Rule 4(f)(2)(C)(ii).  However, the plaintiff is advised that, in the event he fails to effect service in

compliance with Rule 4 on or before the deadline ordered by the Court, Voodoo may renew its

motion to dismiss under Rule 12(b)(5), as the Court's extension "does not, of course, 'constitute

a license for a plaintiff filing pro se to ignore the Federal Rules[,]'" Lindsey, 448 F. Supp. 2d

at 47.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must deny Voodoo's motion to

dismiss, and grant in part and deny in part the plaintiff's motion for alternative service.

**SO ORDERED** this 6th day of January, 2022.[9]

REGGIE B. WALTON
United States District Judge

---

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.