**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOSEPH A. STALLARD,

      Plaintiff,

           v.

GOLDMAN SACHS GROUP, INC.,
GOLDMAN SACHS & CO., LLC, and
VOODOO SAS,

      Defendants.

No. 1:20-cv-02703-RBW

<u>**MOTION BY DEFENDANT VOODOO SAS TO DISMISS THE COMPLAINT**</u>

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

STANDARD OF LAW ......................................................................................................... 6

ARGUMENT ....................................................................................................................... 6

   I.   The Court Should Dismiss This Case for Lack of Jurisdiction. ...................................... 7

   II.   The Court Should Dismiss Plaintiff's Copyright Claims. ............................................... 9

        A.   Plaintiff Has No Valid Copyright Over the "Concept" of Throwing Balls at
           a Stack of Blocks. .............................................................................................. 9

        B.   Even If There Were Some Validly Copyrighted Elements of "Knocky
           Balls," They Were Not Infringed. ..................................................................... 15

   III.   The Court Should Dismiss Plaintiff's Trademark Claims. ............................................. 18

        A.   Voodoo's Plainly Dissimilar Logo Gives Plaintiff No Valid Claim for
           Infringement of His Generic Logo. .................................................................. 19

        B.   Plaintiff Has No Claim for Infringement of His Generic Name. .......................... 23

        C.   Plaintiff's Third Trademark Claim Just Rehashes His First Two. ........................ 25

   IV.   The Court Should Dismiss Plaintiff's RICO Claims. .................................................... 26

   V.   The Court Should Dismiss Plaintiff's Antitrust Claims. ............................................... 29

   VI.   The Court Should Dismiss Plaintiff's Remaining State-Law Claims. .......................... 30

CONCLUSION ................................................................................................................... 32

# TABLE OF AUTHORITIES

**Cases**                                                                 Page(s)

*Adler v. Loyd*,
    496 F. Supp. 3d 269 (D.C. Cir. 2020)................................................28

*Affiliated Hosp. Prods., Inc. v. Merdel Game Mfg. Co.*,
    513 F.2d 1183 (2d Cir. 1975)....................................................11

*Am. Ass'n for Advancement of Sci. v. Hearst Corp.*,
    498 F. Supp. 244 (D.D.C. 1980)................................................22

*Anti- Monopoly, Inc. v. Gen'l Mills Fun Grp.*,
    611 F.2d 296 (9th Cir. 1979) ...................................................11

*Aref v. Lynch*,
    833 F.3d 242 (D.C. Cir. 2016)...................................................31

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................6

*Atari Games Corp. v. Nintendo of Am., Inc.*,
    975 F.2d 832 (Fed. Cir. 1992)..................................................15

*Atari Games Corp. v. Oman*,
    979 F.2d 242 (D.C. Cir. 1992)...................................13, 14, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................6

*Bell v. Blaze Magazine*,
    No. 99-12342, 2001 WL 262718 (S.D.N.Y. Mar. 16, 2001)................18

*Blinded Veterans Ass'n v. Blinded Am. Veterans Foundation*,
    872 F.2d 1035 (D.C. Cir. 1989) ..........................................*passim*

*BNSF Ry. v. Tyrrell*,
    137 S. Ct. 1549 (2017)............................................................7

*Boston Duck Tours, LP v. Super Duck Tours, LLC*,
    531 F.3d 1 (1st Cir. 2008).................................................21, 23

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977)...........................................................8, 9, 30

*Buchanan v. Sony Music Ent.*,
   No. 18-3028, 2020 WL 2735592 (D.D.C. May 26, 2020),
   *aff'd*, 836 F. App'x 16 (D.C. Cir. 2021) ................................................................17

*Capcom U.S.A., Inc. v. Data East Corp.*,
   No. 93-3259, 1994 WL 1751482 (N.D. Cal. Mar. 16, 1994) .................................14

*Cherry v. Dist. of Columbia*,
   170 F. Supp. 3d 46 (D.D.C. 2016) (Walton, J.) .....................................................31

*Cockrum v. Donald J. Trump for Pres., Inc.*,
   319 F. Supp. 3d 158 (D.D.C. 2018) .........................................................................8

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*,
   941 F.2d 1220 (D.C. Cir. 1991)........................................................................27, 29

*Data East USA, Inc. v. Epyx, Inc.*,
   862 F.2d 204 (9th Cir. 1988) .................................................................................14

*Diamond Foods, Inc. v. Hottrix, LLC*,
   No. 14-3162, 2016 WL 3880797 (N.D. Cal. July 18, 2016) .......................6, 13, 15

*Door Sys., Inc. v. Overhead Door Sys., Inc.*,
   905 F. Supp. 492 (N.D. Ill. 1995)....................................................................23, 24

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
   48 F.3d 1260 (D.C. Cir. 1995)...............................................................................28

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991).....................................................................................9, 13, 16

*Fernandez v. Jones*,
   653 F. Supp. 2d 22 (D.D.C. 2009) .........................................................................25

*Frybarger v. IBM*,
   812 F.2d 525 (9th Cir. 1987) .................................................................................11

*Gaines v. D.C.*,
   961 F. Supp. 2d 218 (D.D.C. 2013)..................................................................16, 17

*Gatekeeper Inc. v. Stratec Sys.*,
   718 F. Supp. 2d 664 (E.D. Va. 2010) ......................................................................8

*Globalaw Ltd. v. Carmon & Carmon L. Off.*,
   452 F. Supp. 2d 1 (D.D.C. 2006)....................................................19, 21, 22, 23

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
   564 U.S. 915 (2011).................................................................................................7

*Google LLC v. Oracle Am., Inc.*,
  141 S. Ct. 1183 (2021) .................................................................................15, 17, 28

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
  471 U.S. 539 (1985) ..................................................................................................13

*Helicopteros Nacionales de Colombia v. Hall*,
  466 U.S. 408 (1984) ....................................................................................................7

*Jacobson v. Hofgard*,
  168 F. Supp. 3d 187 (D.D.C. 2016) ..........................................................................32

*Kaplan v. Cent. Bank of the Islamic Rep. of Iran*,
  896 F.3d 501 (2018) .....................................................................................................7

*Kowal v. MCI Communications Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) ..................................................................................28

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993) ........................................................................................29

*Luigino's, Inc. v. Stouffer Corp.*,
  170 F.3d 827 (8th Cir. 1999) .....................................................................................21

*Maio v. Aetna*,
  221 F.3d 472 (3d Cir. 2000) ...................................................................................9, 26

*McCormick & Co.*,
  217 F. Supp. 3d 124 (D.D.C. 2016) ..........................................................................30

*Moore v. Guesno*,
  485 F. Supp. 2d 300 (W.D.N.Y. 2007),
  *aff'd*, 301 F. App'x 17 (2d Cir. 2008) .......................................................................29

*Nabisco, Inc. v. Warner-Lambert Co.*,
  220 F.3d 43 (2d Cir. 2000) .........................................................................................21

*Newborn v. Yahoo!, Inc.*,
  391 F. Supp. 2d 181 (D.D.C. 2005) ...........................................................................26

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*,
  69 F. Supp. 3d 175 (D.D.C. 2014) ...............................................................19, 21, 23

*Poblete v. Rittenhouse Mortg. Brokers*,
  675 F. Supp. 2d 130 (D.D.C. 2009) ...........................................................................32

*Preferred Nutrition, Inc. v. Vanderhaeghe*,
  2010 U.S. Dist. LEXIS 153676 (W.D. Wash. Nov. 22, 2010) ..................................24

*Price v. Pinnacle Brands*,
    138 F.3d 602 (5th Cir. 1998) ...................................................................................27

*Prunte v. Universal Music Grp., Inc.*,
    699 F. Supp. 2d 15 (D.D.C. 2010),
    *aff'd*, 425 F. App'x 1 (D.C. Cir. 2011) ...................................................................14

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)................................................................................................27

*Reyher v. Children's TV Workshop & Tuesday Publs.*,
    533 F.2d 87 (2d Cir. 1976).....................................................................................11

*Royalty Network, Inc. v. Dishant.com*,
    638 F. Supp. 2d 410 (S.D.N.Y. 1999).....................................................................8

*Sears, Roebuck & Co. v. Sears Fin. Network*,
    576 F. Supp. 857 (D.D.C. 1983) ............................................................................22

*Silverman v. Weil*,
    662 F. Supp. 1195 (D.D.C. 1987) ..........................................................................32

*Southgate v. Facebook, Inc.*,
    No. 17-0648, 2017 U.S. Dist. LEXIS 217852 (E.D. Va. Nov. 14, 2017)...........9, 30

*Streetwise Maps, Inc. v. VanDam, Inc.*,
    159 F.3d 739 (2d Cir. 1998)...................................................................................24

*Sturdza v. United Arab Emirates*,
    281 F.3d 1287 (D.C. Cir. 2002)...........................................................10, 14, 16, 18

*Synergistic Int'l, Inc. v. Windshield Doctor, Inc.*,
    No. 03-0579, 2003 U.S. Dist. LEXIS 12660 (C.D. Cal. Apr. 28, 2003) ...............20

*Syntex, Inc. v. Interpharm, Inc.*,
    1993 U.S. Dist. LEXIS 10716 (N.D. Ga. June 7, 1993).........................................26

*Team Play, Inc. v. Boyer*,
    391 F. Supp. 2d 695 (N.D. Ill. 2005) .....................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................................6

*Tetris Holding, LLC v. Xio Interactive, Inc.*,
    863 F. Supp. 2d 394 (D.N.J. 2012) ........................................................................14

*Tri-State Express, Inc. v. Cummins Engine Co.*,
    No. 99-0220, 2000 U.S. Dist. LEXIS 23564 (D.D.C. Sept. 11, 2000)..........9, 12, 27

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992)......................................................................................19, 20, 21

*United States v. Turkette*,
    452 U.S. 576 (1981)......................................................................................27

*W. Assocs. L.P. v. Market Square Assocs.*,
    235 F.3d 629 (D.C. Cir. 2001)......................................................................28, 29

*Wal-Mart Stores v. Samara Bros.*,
    529 U.S. 205 (2000)......................................................................................20

*Yi v. Roberts*,
    No. 19-5014, 2019 U.S. App. LEXIS 22797 (D.C. Cir. July 31, 2019)....................2

*Zella v. E.W. Scripps Co.*,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ......................................................11, 14

**Statutes & Rules**

15 U.S.C. § 1 ......................................................................................................5

15 U.S.C. § 18 ....................................................................................................5, 8

15 U.S.C. § 1114 ................................................................................................18

15 U.S.C. § 1117 ................................................................................................19, 26

15 U.S.C. § 1125 ................................................................................................19

17 U.S.C. § 102 ..................................................................................................10, 14

17 U.S.C. § 501 ..................................................................................................5, 8, 14, 15

18 U.S.C. § 1962 ................................................................................................5

18 U.S.C. § 1964 ................................................................................................8

Fed. R. Civ. P. 9 ................................................................................................28, 32

Fed. R. Civ. P. 12 ..............................................................................................1, 6

**Other Authorities**

*McCarthy on Trademarks & Unfair Competition* (4th ed. 2009).................................25

U.S. Copyright Office, *Compendium of U.S. Copyright Office Prac.* (3d ed. 2017) ..........2, 11, 14

## INTRODUCTION

Plaintiff Joseph Stallard, appearing *pro se*, claims to be the creator of a "hyper-casual" smartphone video game called "Knocky Balls." Compl. ¶ 152. In the game, players throw a ball to "toppl[e] stacks of blocks." *Id.* at ¶ 200. In this lawsuit, Plaintiff complains that Defendant Voodoo SAS distributed another game in which players topple blocks, thus purportedly stealing his copyright over the "concept" of toppling blocks. *Id.*

Plaintiff has also sued two Goldman Sachs entities because Goldman manages an investment fund which owns a minority stake in Voodoo. Compl. ¶¶ 147–49. The Goldman Defendants' motion to dismiss was filed January 20, 2021 and is *sub judice*. *See* ECF Nos. 13, 21. Voodoo simultaneously moved to dismiss for improper service; the Court did not dismiss the case, but ordered Plaintiff to effect proper service. *See* ECF No. 25. Following Plaintiff's latest service attempts, Voodoo now joins the Goldman Defendants in moving to dismiss Plaintiff's complaint under Rule 12(b)(2) and (6) for lack of personal jurisdiction and failure to state a claim.

Many of the arguments made by the Goldman Defendants apply here too, and Voodoo joins in them as set forth below. But the core claims of Plaintiff's lawsuit—the allegations of copyright and trademark infringement against Voodoo, on which all the other claims are predicated—were not asserted against the Goldman Defendants and are addressed here for the first time. At bottom, this case is about Plaintiff's claim to own the intellectual property to the "concept" of a game in which Plaintiffs throw a ball to knock down a stack of objects. Compl. ¶ 200. He claims a copyright over the "concept," and a trademark over his logo depicting the concept and the name of his game, "Knocky Balls."

Plaintiff does not actually have any valid copyright over the "concept" of throwing a ball at a pile of objects. As stated by the U.S. Copyright Office and applied in a wealth of precedent

case law from the U.S. Supreme Court on down, copyright does not protect concepts or ideas—only the "particular expression" of original "literary or artistic elements that the work may contain."[1] Thus, the "concept" of a game in which players knock down objects with a ball is not copyrightable. Nor is it original to Plaintiff, as any amusement-park visitor might attest. Ultimately, all the similarities between Plaintiff's game and the Voodoo-distributed game that Plaintiff complains about boil down to this uncopyrightable, unoriginal "concept," not to any artistic expression that distinguishes Plaintiff's game (or his trademarks) from any other.

Plaintiff's effort to expand this basic (but meritless) copyright and trademark grievance into twenty separate claims for relief under statutory schemes as wide-ranging as the antitrust laws and RICO is similarly unavailing. These extraneous claims fail for a variety of reasons amply addressed in the Goldman Defendants' motion and expanded on below. And *any* grounds on which the Court disposes of the antitrust and RICO claims are sufficient to dispose of this case in full, because they are the sole predicate for the Court's jurisdiction over the Defendants. More fundamentally, however, the copyright and trademark grievances are the only thing holding all the other claims together. If they fail, that, too, is enough to send the whole pile of claims toppling down like so many blocks. Voodoo respectfully submits that is the appropriate result here, and that Plaintiff's claims are due to be dismissed.

## **BACKGROUND**

"Having a bad day? Don't punch the wall. Take it out on some inanimate blocks. Just throw balls and knock down stacks of blocks. It will make you feel much better."[2] So reads the copy on

---

[1] U.S. Copyright Office, *Compendium of U.S. Copyright Office Prac.* § 714 (3d ed. 2017), *https://www.copyright.gov/comp3/docs/compendium.pdf* (last visited Jan. 13, 2022).

[2] "KNOCKY BALLS®," *osgoodemedia.com/en/knocky-balls-press-kit.html* (last visited Jan. 13, 2022). The Court may take judicial notice of statements made on a party's web site. *Yi v. Roberts*, No. 19-5014, 2019 U.S. App. LEXIS 22797, at *4 (D.C. Cir. July 31, 2019).

the website Plaintiff's company maintains to promote its game, "Knocky Balls." The site includes the following illustration of the game play:



*Id*. Plaintiff describes the game as a "hyper-casual" game, meaning that it is "free," usually installed as an "impulse download" by consumers giving "little to no scrutiny" to what they are downloading, and Plaintiff aims to make money by running advertisements. Compl. ¶ 179.

Plaintiff alleges that he created the game with an "easy to use" engine called Unity that requires no "programming skills." *Id*. at ¶ 42. Unity supplies the underlying programming code libraries behind the features Plaintiff describes like 3D graphic renderings and "realistic physical effects," as well as the code necessary to make the games made with its libraries playable on Apple iOS, Android, or other operating systems. *Id*. at ¶¶ 39–43, 200.

Voodoo is a video-game developer and publisher located and headquartered in Paris, France. *Id*. at ¶ 8. Voodoo distributes video games though mobile application stores including Google Play and Apple's App Store. *Id*. at ¶¶ 19, 28. Many of those games are made with Unity. *Id*. at ¶ 42. Most of Voodoo's games come from developers who use these tools and then connect with Voodoo for distribution.

-3-

Plaintiff alleges that Voodoo published a game on August 18, 2018 that "copied" his game's "look, concept and feel," prompting him to register a copyright for his game and a trademark for the name "Knocky Balls" on December 26, 2018 and November 5, 2019, respectively. Compl. ¶¶ 25, 28, 30, 37, 72, 76, 200. A screen capture of the Voodoo-distributed "Knock Balls" as posted on Google Play looks like this:[3]



Plaintiff complains that the Voodoo-distributed game copied his game's "look, concept and feel." Compl. ¶ 200. He also makes a series of non-sequitur allegations that have nothing to do with either of the games. He (i) accuses Voodoo of using search optimization "trick[s]" and posting phony user reviews to steer people towards its games (*id*. at ¶¶ 29, 88–100), (ii) blames Voodoo for Google's removal of Plaintiff's game from the Play store (*id*. at ¶¶ 101–03), (iii) claims that Voodoo "tricked" users into paying for premium content "in all of Voodoo's games" that it did not deliver (*id*. at ¶¶ 104–111), (iv) complains that Voodoo published nine unrelated games which

---

[3] GOOGLE PLAY, "Knock Balls," *https://play.google.com/store/apps/details?id=com.ohmgames. chambouletout* (last visited Jan. 13, 2022).

Plaintiff claims were made to look like "multiplayer games," but were not (*id.* at ¶¶ 112–14), and (v) ran satirical advertisements using images of Disney's Mickey Mouse and Donald Duck, Nickelodeon's SpongeBob SquarePants and Squidward Q. Tentacles, Warner Brothers' "Morty from the television show Rick and Morty," NBA star LeBron James, and North Korean dictator Kim Jong Un. *Id.* at ¶¶ 58–71.

Plaintiff asserts twenty causes of action, fifteen naming Voodoo.

First, Plaintiff asserts four federal copyright and trademark claims against Voodoo, consisting of claims for trademark infringement, copyright infringement, and counterfeiting under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), and 1117, and the Copyright Act, 17 U.S.C. § 501(a)–(b).

Next, Plaintiff attempts to transmogrify his copyright and trademark grievances into a trio of federal RICO claims under 18 U.S.C. § 1962 (Counts X–XII). In an effort to get around the well-established rule of law that RICO requires an "enterprise" distinct from the entity or entities named as Defendants, Plaintiff imagines an "enterprise" consisting of "Goldman, Voodoo, and [] 867 unknown [] investors" that invested in the fund that invested in Voodoo. Compl. ¶ 238.

Plaintiff also asserts two antitrust claims under the Sherman Act, 15 U.S.C. § 1 (Count XIII) and the Clayton Act, 15 U.S.C. § 18 (Count XIV), based on the theory that Goldman's minority stake in Voodoo harms or "may" harm competition in the hyper-casual smartphone-game market—because of "Goldman's size," not Voodoo's. Plaintiff has conceded Voodoo has no "market power" within the meaning of the antitrust laws in this ultra-competitive market in which Voodoo has publicly traded competitors dwarfing its market capitalization. ECF No. 18 at 20.

Lastly, Plaintiff asserts six claims against Voodoo under the common law of unspecified jurisdictions for "common law trademark infringement and unfair competition" (Count XV), fraud

(Count XVI), negligent misrepresentation (Count XVII), tortious interference (Count XVIII), unjust enrichment (Count XIX), and civil conspiracy (Count XX).

## STANDARD OF LAW

To survive a motion to dismiss, a complaint must "plead[] factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). In addition to the allegations of the complaint, the court is free to consider "sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In particular, in copyright cases involving mobile applications like this case, the court can "judicially notice[] the apps." *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-3162, 2016 WL 3880797, at *10 (N.D. Cal. July 18, 2016).

## ARGUMENT

Plaintiff does not have any legitimate claim to intellectual property rights over the "concept" of throwing a ball at a pile of blocks (Compl. ¶ 200), and the Court can dismiss his suit on the merits on that basis alone. But the Court is not obliged to reach the merits. As set forth in the Goldman Defendants' motion to dismiss, this Court's jurisdiction over Plaintiff's claims is hanging by a thread—and it is a thread easily severed. The Court should therefore address its jurisdiction first, and then it need not decide more. Regardless, however, Plaintiff's claims also fail on the merits. Neither his effort to assert a proprietary interest over the "concept" of throwing

a ball to knock things over, nor his effort to metastasize this claim into wide-ranging allegations of criminal conspiracies and market monopolization, should be indulged.

## I.

### THE COURT SHOULD DISMISS THIS CASE FOR LACK OF JURISDICTION.

"[W]hen personal jurisdiction is in question, a court must first determine that it possesses personal jurisdiction over the defendants before it can address the merits of a claim." *Kaplan v. Cent. Bank of the Islamic Rep. of Iran*, 896 F.3d 501, 510 (2018) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) *and the parties (personal jurisdiction)*") (emphasis supplied by *Kaplan*)).

The jurisdictional problem here is that Plaintiff does not, and cannot base personal jurisdiction on traditional principles of general or specific jurisdiction. General jurisdiction exists only where the defendant is "at home," and Plaintiff makes no claim, nor could he, that Voodoo, a French corporation, is "at home" in the District of Columbia. *BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). Specific jurisdiction covers claims that "aris[e] out of or relate[] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n.8 (1984); *see also, e.g., Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (requiring an "affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum") (brackets and internal quotation marks omitted). And Plaintiff does not allege that Voodoo had any contacts at all with the District of Columbia, much less contacts out of which his claims arise. Plaintiff cannot even allege that his own purported injuries were felt in the District of Columbia. He is a resident of Virginia. Compl.

¶ 5. Thus, lacking any grounds for personal jurisdiction under the traditional alternatives of general or specific jurisdiction, Plaintiff argues that personal jurisdiction exists based on the "nationwide service of process" provisions of RICO and the Clayton Act. *Id*. at ¶ 16.

There are two fatal problems with this theory. The first is that personal jurisdiction could only ever be established through those nationwide service-of-process provisions for Plaintiff's specific RICO and antitrust claims. "[N]either the Copyright Act nor the Lanham Act," which furnish the purported causes of action for Plaintiff's primary claims against Voodoo, "provides for nationwide service of process." *Royalty Network, Inc. v. Dishant.com*, 638 F. Supp. 2d 410, 417 (S.D.N.Y. 1999). But personal jurisdiction "is tied to . . . each claim" and must be independently satisfied for each claim. *Cockrum v. Donald J. Trump for Pres., Inc.*, 319 F. Supp. 3d 158, 175 (D.D.C. 2018). "[P]ersonal jurisdiction over a defendant with respect to one cause of action" does not establish personal jurisdiction with respect to "a series of other claims." *Gatekeeper Inc. v. Stratec Sys.*, 718 F. Supp. 2d 664, 667 (E.D. Va. 2010).

The second fatal problem is that even if the RICO and antitrust claims *could* be used as the jurisdictional Trojan horse to sneak Plaintiff's remaining claims through the courthouse door, the effort fails if the RICO and antitrust claims fail. The Goldman Defendants have raised meritorious challenges to Plaintiff's standing to sue under both statutes, as he lacks, *inter alia*, the injury to "business or property" required to sue under civil RICO, 18 U.S.C. § 1964(c), and the "antitrust injury" required to sue under the Sherman and Clayton Acts. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Voodoo will not rehash those arguments, but incorporates them by reference, as most of them apply equally to both Defendants. *See infra* Parts IV–V; ECF No. 13 at 10–13, 21–23; ECF No. 21 at 7–8, 15–16. Among the dispositive principles are that Plaintiff alleges no out-of-pocket loss, merely speculation about the potential for future profits that

fall short of the requisite concrete financial injury to "business or property." *See* ECF No. 13 at 12–13 (citing, *e.g.*, *Tri-State Express, Inc. v. Cummins Engine Co.*, No. 99-0220, 2000 U.S. Dist. LEXIS 23564, at *16 (D.D.C. Sept. 11, 2000); *Maio v. Aetna*, 221 F.3d 472, 483 (3d Cir. 2000)). And Plaintiff alleges no "injury of the type the antitrust laws were intended to prevent" required for his antitrust claims, because he claims only "individual harms" to himself personally, not any harms to consumer welfare. *Id*. at 21–22 (quoting *Brunswick*, *supra*; *Southgate v. Facebook, Inc.*, No. 17-0648, 2017 U.S. Dist. LEXIS 217852, at *11–12 (E.D. Va. Nov. 14, 2017)).

And there are myriad other reasons Plaintiff's RICO and antitrust claims fail on the merits, even apart from the standing defects. *See* ECF No. 13 at 14–20, 23–26. Voodoo incorporates those arguments raised by Goldman, and addresses other grounds unique to Plaintiff's claims against Voodoo *infra* Parts IV–V. But any one of the numerous grounds for dismissal of Plaintiffs' RICO and antitrust claims is sufficient to dispose of this lawsuit in full. There is no other basis alleged, even in passing, for the Court to exercise personal jurisdiction over the Defendants on any other claim.

## II.

### THE COURT SHOULD DISMISS PLAINTIFF'S COPYRIGHT CLAIMS.

A viable copyright infringement claim requires "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff does not plead facts capable of satisfying either element.

### A.   Plaintiff Has No Valid Copyright Over the "Concept" of Throwing Balls at a Stack of Blocks.

Plaintiff claims a copyright over the "concept" of "launch[ing]" a "3D sphere (ball)" at "stacks of 3D blocks," whereupon "[t]he ball topples the blocks with realistic physics effects."

Compl. ¶ 200. He further claims that his version of throwing balls at blocks has a distinctive "look" and "feel" because it has features like "a blue-sky background," "a reddish sky background," and a "dark blue starry sky/space background," and because sometimes the blocks are stacked in a "pyramid with 1 block stacked on 2 blocks stacked on 3 blocks." *Id*.

Copyright protects artistic "expression," but "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(a)–(b). In other words, "no author may copyright facts or ideas. The copyright is limited to those aspects of the work—termed 'expression'—that display the stamp of the author's originality." *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1295 (D.C. Cir. 2002). With respect to games in particular, the Copyright Office instructs:

> ***[C]opyright does not protect the idea for a game***, the name or title of a game, or the procedure, process, or method of operation for playing a game. Nor does copyright protect any idea, system, method, or device involved in developing or marketing a game. ***Once a game has been made available to the public, the copyright law cannot be used to prevent others from developing another game based on similar principles***. Copyright protects only the particular expression that appears in the literary or artistic elements that the work may contain.

U.S. Copyright Office, *Compendium of U.S. Copyright Office Prac.* § 714 (3d ed. 2017), *https://www.copyright.gov/comp3/docs/compendium.pdf* (hereinafter "*Copyright Office Prac.*," last visited Jan. 13, 2022); *Reyher v. Children's TV Workshop & Tuesday Publs.*, 533 F.2d 87, 90 (2d Cir. 1976) ("It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself.") (citing *Mazer v. Stein*, 347 U.S. 201, 217 (1954)).

Here, however, Plaintiff pleads himself out of court by claiming infringement of his "concept," an uncopyrightable idea. Compl. ¶ 200  Plaintiff's own pleading is thus fatal to his claim, since "***ideas, such as game concept, cannot be copyrighted***." *Anti- Monopoly, Inc. v. Gen'l Mills Fun Grp.*, 611 F.2d 296, 300 n.1 (9th Cir. 1979) (emphasis added); *see also*, *e.g.*, *Copyright Office Prac.*, *supra*. What Plaintiff alleges virtually nothing about is "the particular expression that appears in the literary or artistic elements" of his game. *Copyright Office Prac.*, *supra*. Plaintiff does not, and cannot, have any valid copyright over the "concept" of "launch[ing] a "ball" to "topple[] blocks." Compl. ¶ 200. That is an idea, not a particular expression, and thus "not protected . . . against even directly copied identical ideas." *Frybarger v. IBM*, 812 F.2d 525, 529 (9th Cir. 1987); *see also*, *e.g.*, *Affiliated Hosp. Prods., Inc. v. Merdel Game Mfg. Co.*, 513 F.2d 1183, 1189 (2d Cir. 1975) (copyright protects only "the manner of [] presentation" of a game," not "the game itself").

What's more, the idea is not even original to Plaintiff. The Court may take judicial notice of the fact that the alleged elements of Plaintiff's "concept" are "common and prevalent." *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1129 (C.D. Cal. 2007). Every carnival game in which players are challenged to throw a ball at a pyramid of milk bottles—and the myriad films with stock scenes depicting the same—reenacts the same "concept":



*The Natural* (Tri-Star Pictures 1984). The "concept" is not even original within the realm of smartphone video games:



GOOGLE PLAY, "Can Knockdown," *https://play.google.com/store/apps/details?id=pl.idreams. CanKnockdown* (last visited Jan. 13, 2022). The Court can take judicial notice of this game being published as far back as 2011.[4] If this "concept" were copyrightable, *Plaintiff's* product would be the infringing one.

"The *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author." *Feist,* 499 U.S. at 345. "[C]opyright does not prevent subsequent users from copying from a prior author's work those constituent elements that are not original— for example, . . . materials in the public domain." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 548 (1985). Plaintiff's purportedly copyrighted "concept" is just such an unoriginal, public-domain idea not entitled to any copyright protection. *See*, *e.g.*, *Team Play, Inc. v. Boyer*, 391 F. Supp. 2d 695, 702 (N.D. Ill. 2005) ("shooting challenge in which targets float out of a cylindrical opening" or "are randomly arranged" is "the embodiment of an uncopyrightable

---

[4] "Can Knockdown 2 Trailer HD by iDreams - a game for iOS and Android" (2011), *https://www.youtube.com/watch?v=B9RnTud0Rhs* (last visited Jan. 13, 2022).

idea"); *Diamond Foods, Inc.*, 2016 WL 3880797, at *5 ("no copyright protection may be afforded to the idea of producing an app with popcorn popping on a mobile device screen").

The other elements Plaintiff alleges about his game are also unoriginal, or not actually alleged to be infringed, or both. For example, Plaintiff says of his game, "One level has a blue-sky background. Another level has a reddish sky background. Another level has dark blue starry sky/space background." Compl. ¶ 200. But Plaintiff cannot copyright the night sky, only a particular, original expression of it, and nowhere alleges that his blue or starry skies, or any particular artistic elements of them, were copied even in a generalized fashion, much less a particularized one. *See Atari Games Corp. v. Oman*, 979 F.2d 242, 244 (D.C. Cir. 1992) (Ginsburg, J.) ("individual graphic elements of each screen" in a video game "are not copyrightable"); *Diamond Foods*, 2016 WL 3880797, at *6 n.5 (rejecting copyright claim over "approximately white" graphics elements as "a troublingly broad description—or no description at all. For example, one popular paint store, Benjamin Moore, offers more than 177 shades of 'white.' As a result, it is not clear which color Defendant claims for itself, or that Plaintiff has used that exact color.") (citation omitted).

Plaintiff fares no better with his description of other purportedly copyrighted elements of his game—that the game has "multiple levels," with "[t]he current level" and "score" "displayed at the top of the screen"; that "[a]t the top of the screen, there is a button to exit the game"; and that "[t]he ball topples the blocks with realistic physics effects." Compl. ¶ 200.

Levels, scores, and buttons to exit the game are far too "common and prevalent" for copyright protection. *Zella*, 529 F. Supp. 2d at 1129; *see also*, *e.g.*, *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 209 (9th Cir. 1988) ("method of scorekeeping" too "inconsequential" to be infringed); *Capcom U.S.A., Inc. v. Data East Corp.*, No. 93-3259, 1994 WL 1751482, at *8–9

(N.D. Cal. Mar. 16, 1994) ("vitality bar" in fighting games too "commonplace" for copyright protection).

Moreover, no significance can be attached to Plaintiff's use of "blocks" in lieu of any other toppling objects. "The Copyright Act does not protect common geometric shapes, either in two-dimensional or three-dimensional form." *Copyright Office Prac.*, *supra*, § 906.1. That they topple when struck by a ball is just "game mechanics," which "are not entitled to protection." *Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 404 (D.N.J. 2012). It also constitutes uncopyrightable "*scènes à faire*"—"incidents . . . which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." *Sturdza*, 281 F.3d at 1295; *see also*, *e.g.*, *Prunte v. Universal Music Grp., Inc.*, 699 F. Supp. 2d 15, 23 (D.D.C. 2010) ("sequences of events that 'necessarily result from the choice of setting or situations,' known as *scènes à faire*, . . . are not protected"), *aff'd*, 425 F. App'x 1 (D.C. Cir. 2011). When a projectile is launched at a pile of blocks, the blocks toppling down is the "standard" result. This is not an original expression.

Likewise, the "realistic physics effects" are, at best, a "process" or "method of operation" (17 U.S.C. § 102(b)), not an original expression, either. Plaintiff holds no copyright over the laws of physics. In *Atari*, the D.C. Circuit found the mechanics of a game potentially copyrightable only because they *deviated* from the laws of physics. 979 F.2d at 246 ("Undisputably, the ball's path in BREAKOUT varies depending on which of four sections of the paddle it hits. Its trajectory does not follow from the laws of physics. Atari created this motion. . . ."). In *Diamond Foods*, the court found that a depiction of popcorn consistent with "the physical reality of popcorn" was not copyrightable, as distinct from if a party had copyrighted, "for example, magenta popcorn with arms and legs." 2016 WL 3880797, at *6.

The complaint makes several other allegations which also appear intended to assert copyright interests over uncopyrightable processes and methods. For example, Plaintiff claims (incorrectly, though Voodoo will assume it true for purposes of this motion) that the Knock Balls game somehow accessed his original source code, and copied it. Compl. ¶¶ 39–43, 74, 197. Even if that were so, it gives rise to no copyright claim. The Copyright Act "is intended . . . to make clear that the *expression* adopted by the programmer is the copyrightable element in a computer program, and that the actual *processes or methods* embodied in the program are not within the scope of the copyright law." *Atari Games Corp. v. Nintendo of Am., Inc.*, 975 F.2d 832, 838 (Fed. Cir. 1992) (quoting H.R. Rep. No. 1476, 94th Cong., 2d Sess. 57 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5670) (emphasis added). Patent law, not copyright law, furnishes the means to assert rights over "process[es] or method[s] performed by a computer in accordance with a program," and "when that process "is embodied inextricably in the line-by-line instructions of the computer program, . . . then the process merges with the expression and precludes copyright protection." *Id.* at 839–40; *see also Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1204–05 (2021) (rejecting copyright challenge to defendant's copying of "11,500 lines of code" because "the material copied captures little of the material's creative expression").

Plaintiff thus cannot support his claims with allegations of copied source code (even assuming, for purposes of this motion to dismiss, that such allegations could ultimately be proven true). He must confine his allegations to the particular "creative expression" he adopted. *Id*. Unfortunately for Plaintiff, this is the one feature of his game about which he alleges nothing.

**B.   Even If There Were Some Validly Copyrighted Elements of "Knocky Balls," They Were Not Infringed.**

If the Court were to find some validly copyrighted content in Plaintiff's game, the next step of the analysis would be to determine whether there was any "copying of constituent elements of

the work that are original." *Feist*, *supra*; *see also Sturdza*, 281 F.3d at 1296 ("Once unprotectible elements such as ideas and *scenes à faire* are excluded, the next step of the inquiry involves determining whether the allegedly infringing work is 'substantially similar' to protectible elements of the artist's work."). As set forth above, however, the Court can scour the Complaint in search of allegations describing some aspect of Plaintiff's game that was both (i) original and (ii) copied, and find none. For example, the "concept" (Compl. ¶ 200), even if shown to be copied, was not original. The "background[s]" (*id.*), even if shown to be original, were not copied. So,"[o]nce unprotectible elements such as ideas and *scenes à faire* are excluded" (*Sturdza*, *supra*), it is not apparent what's actually left.

Whatever it is, Plaintiff can establish this element only through pleaded facts that constitute either (i) direct evidence of copying, or (ii) indirect evidence such as that "the alleged infringer had access to the protected work and that the works are substantially similar." *Gaines v. D.C.*, 961 F. Supp. 2d 218, 223 (D.D.C. 2013). But Plaintiff plainly fails this test.

Plaintiff's sole claim of "direct evidence" is his allegation of copied source code. But as already explained, claims of copied source code do not establish any copying of "creative expression." *Google*, 141 S. Ct. at 1204–05. More fundamentally, since the code is alleged to be generated by the Unity engine and not by the game developers (Compl. ¶¶ 39–43), allegations that one Unity-made game shares code with other Unity-made games cannot serve as direct evidence that one game copied another. It merely evidences, as Plaintiff says in his own words, that "Stallard made Knocky Balls with Unity, and Voodoo made Knock Balls with Unity." *Id.* at ¶ 72.[5]

---

[5] Voodoo did not actually "ma[k]e" the game—it merely distributed it—but this fact is not material for purposes of the present motion.

Plaintiff also fails to plead even indirect evidence of copying. To plead the requisite "access to the protected work" (*Gaines*, *supra*), Plaintiff must plead "(1) a particular chain of events . . . between the plaintiff's work and the defendant's access to that work . . . or (2) the plaintiff's work has been widely disseminated." *Buchanan v. Sony Music Ent.*, No. 18-3028, 2020 WL 2735592, at *6 (D.D.C. May 26, 2020), *aff'd*, 836 F. App'x 16 (D.C. Cir. 2021). Plaintiff has no allegations addressed to the former, but attempts to plead the latter by alleging that his game "was available worldwide for digital download on major video game marketplaces." Compl. ¶ 198. But that is not enough. Pleading access requires facts "that suggest 'a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work.'" *Buchanan*, 2020 WL 2735592, at *6. Saying that Plaintiff's game was merely *available* for download does not make the likelihood that anyone affiliated with Voodoo *actually* downloaded it more than a bare possibility. As Judge Jackson summarized in *Buchanan*:

> Widespread dissemination centers on the degree of a work's commercial success and on its distribution. . . . [W]idespread dissemination of the type that gives rise to an inference of access in support of a copyright infringement claim generally requires a significant showing of ubiquity. Indeed, it is quite well established that the mere fact that [plaintiff's] work was posted on the internet . . . is insufficient by itself to demonstrate wide dissemination. [S]ufficiently pleading wide dissemination requires facts concerning the alleged breadth of that distribution (*e.g.*, the number of views, subscribers, traffic, etc.).

*Id.* (citations omitted). Here, Plaintiff alleges *no* facts about the breadth of his game's distribution, much less facts capable of making "a significant showing of ubiquity." *Id.*

Lastly, as already shown, Plaintiff wholly fails to plead any "substantial[] similar[ity]" in the "*protectible elements*" of his game. *Sturdza*, *supra* (emphasis added). Plaintiff's problem is twofold. First, none of the features Plaintiff describes about his game are "protectible." Second, he also falls short of alleging specific facts about the purported similarity. For example, merely

alleging that both games have "sky background[s]" falls short of establishing any similarity in the actual, creative expression of those backgrounds.

If the Court concludes that "no reasonable jury could find that the works are substantially similar, or if it concludes that the similarities pertain only to unprotected elements of the work, it is appropriate for the court to dismiss the action because, as a matter of law, there is no copyright infringement." *Bell v. Blaze Magazine*, No. 99-12342, 2001 WL 262718, at *3 (S.D.N.Y. Mar. 16, 2001). That is the situation and appropriate result here.

## III.

## THE COURT SHOULD DISMISS PLAINTIFF'S TRADEMARK CLAIMS.

Plaintiff asserts three purported claims for trademark infringement of the "Knocky Balls®" name and its logo "showing a ball knocking down blocks with a cartoon effect." Compl. ¶¶ 177, 182. Count I of Plaintiff's Complaint, alleging willful trademark infringement under 15 U.S.C. § 1114(1), requires Plaintiff to show "(1) that [he] has a protectable ownership interest in a mark; and (2) that the alleged infringer's use of the mark is likely to cause consumer confusion." *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. de C.V.*, 69 F. Supp. 3d 175, 197 (D.D.C. 2014). Count II, alleging willful infringement under 15 U.S.C. § 1125(a), similarly requires "the plaintiff [to] show (1) that [he] owns a valid trademark, (2) that [his] trademark is distinctive or has acquired a secondary meaning, and (3) that there is a substantial likelihood of confusion between the plaintiffs' mark and the alleged infringer's mark." *Globalaw Ltd. v. Carmon & Carmon L. Off.*, 452 F. Supp. 2d 1, 26 (D.D.C. 2006). Count III, purportedly under 15 U.S.C. § 1117, does not actually furnish a third substantive claim; it is merely the provision furnishing the cause of action for alleged violations of § 1125.

-18-

**A.      Voodoo's Plainly Dissimilar Logo Gives Plaintiff No Valid Claim for Infringement of His Generic Logo.**

The validity of a trademark turns on its distinctiveness. *See*, *e.g.*, *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). "The general rule regarding distinctiveness is clear: An identifying mark is distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." *Id.* at 769. "Marks are often classified in categories of generally increasing distinctiveness. . . . [T]hey may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Id.* at 768; *accord*, *e.g.*, *Blinded Veterans Ass'n v. Blinded Am. Veterans Foundation*, 872 F.2d 1035, 1039 (D.C. Cir. 1989).

A "generic" mark is one that "does not merely identify a particular characteristic or quality of some thing; it connotes the basic nature of that thing," and is therefore "not afforded trademark protection." *Blinded Veterans*, 872 F.2d at 1039. Next on the scale, "descriptive" marks "convey[] an immediate idea of the ingredients, qualities or characteristics of the goods." *Id.* at 1040. "Marks which are merely descriptive of a product are not inherently distinctive . . . and hence cannot be protected" unless they have a secondary meaning that "has become distinctive of the [claimant's] goods in commerce." *Two Pesos*, 505 U.S. at 768–69. "Suggestive" marks are those that "require[] imagination, thought and perception to reach a conclusion as to the nature of goods." *Blinded Veterans*, 872 F.2d at 1040. Lastly, "arbitrary" or "fanciful" marks are those that "ha[ve] no intrinsic connection to the product." *Id.* In the former category are existing concepts with an arbitrary connection to the product (the classic example is a camel selling cigarettes); the "fanciful" category describes the "wholly made-up." *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 210 (2000); *Synergistic Int'l, Inc. v. Windshield Doctor, Inc.*, No. 03-0579, 2003 U.S. Dist. LEXIS 12660, at *12 n.8 (C.D. Cal. Apr. 28, 2003). If the mark is not distinctive, the court's inquiry can

end there. If there are protectible, distinctive elements, the court then turns to address the "likelihood of confusion." *Two Pesos*, 505 U.S. at 769.

Here, Plaintiff alleges that the logos of the two games "are almost the same" (Compl. ¶ 182), yet offers only a vague description of them ("a ball knocking down blocks with a cartoon effect"), rather than showing the Court what the logos actually look like or what he considers the protected, distinctive elements in his logo to be. The logos at issue are below:





"Knocky Balls" (*see supra* n.2)        "Knock Balls" (*see supra* n. 3)

Plaintiff's logo depicts a red ball, from a first-person perspective, surrounded by nine purple floating blocks in the style of a plain 3D computer rendering, on a blank white background. The allegedly infringing logo depicts a yellow ball, from a three-quarters perspective, striking a stack of two blue tin cans and four wooden blocks rested on a wooden shelf, drawn in the style of a hand-illustrated cartoon, against a blue, cloudy-sky background.

Plainly, there is nothing suggestive, arbitrary, or fanciful about Plaintiff's logo. Plaintiff uses it in connection with a game in which a player uses a ball to knock down blocks, and the logo depicts a ball knocking down blocks. There is an "intrinsic connection" to the product that requires no "imagination, thought or perception" from the consumer to surmise what the product involves. *Blinded Veterans*, 872 F.2d at 1040. So Plaintiff's logo, at most, mixes generic elements with descriptive ones—in other words, elements "not afforded trademark protection" at all and elements

protectible only if they convey a secondary meaning "distinctive" of Plaintiff's product. *Id.*; *Two Pesos*, 505 U.S. at 768–69. The fatal problem for Plaintiff is that the similarity between the logos only goes so far as the generic elements—a ball, and objects hit by the ball. Trademark law "does not extend protection to a generic component of a trademark." *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 18 (1st Cir. 2008). Beyond the generic elements, the colors, art style, perspective, background, arrangement, and nature of the objects are all different. The Court can end its inquiry with "the simple fact that the marks in dispute share little visual resemblance with each other." *Paleteria la Michoacana*, 69 F. Supp. 3d at 199.

The differences between the logos are dispositive. Marks "may be distinguished" by "dissimilar modes of presentation." *Globalaw Ltd.*, 452 F. Supp. 2d at 49. For example, the use of different "shades and patterns" and the use of a "light-blue background broken by a thick, dark-blue band and two smaller white bands" vis-à-vis a "homogenous, metallic-blue background" defeated the trademark infringement claim in *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 47 (2d Cir. 2000); *see also*, *e.g.*, *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 831 (8th Cir. 1999) (no infringement due to "use of different colors and typefaces"). Thus, none of the elements of Plaintiff's mark "descriptive" of his game—such as the visual appearance of his blocks—actually appear in the Voodoo game logo.

Independently, Plaintiff fails to plead the requisite "secondary meaning" necessary to give these elements trademark protection. Since the "enactment of the Lanham Act in 1946, descriptive terms . . . are given protection where the mark has a secondary meaning; that is, where the relevant class of consumers has come to associate the mark with a specific seller or source, however anonymous." *Am. Ass'n for Advancement of Sci. v. Hearst Corp.*, 498 F. Supp. 244, 255 (D.D.C. 1980). Plaintiff does not allege anything about the associations drawn by "the relevant class of

consumers"—not even in conclusory terms. To the contrary, he pleads himself out of court by affirmatively alleging the opposite—that "consumers do not shop for games," much less seek out particular games based on their associated marks; they just "download what they see on the front page" on "impulse," "with little to no scrutiny." Compl. ¶¶ 158, 179. Consumers making "impulse downloads" "with little to no scrutiny" (*id.*) are manifestly not relying on any "associations" between a logo and Plaintiff's particular product.

For the same reason, Plaintiff does not—and cannot—plead the other essential element of his claims, "that the defendants' use of the [] mark . . . creates a 'likelihood of confusion.'" *Sears, Roebuck & Co. v. Sears Fin. Network*, 576 F. Supp. 857, 861 (D.D.C. 1983). This element is based on seven factors: "(1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) evidence of actual confusion; (5) the defendant's purpose or reciprocal good faith in adopting its own mark; (6) the quality of defendant's product; and (7) the sophistication of the buyers." *Globalaw*, 452 F. Supp. 2d at 48.

Plaintiff's case falters right out of the gate because "[m]arks falling within the descriptive category are considered to be non-distinctive and weak under trademark law." *Id.* at 48–49. Next, the "degree of similarity between the two marks," as already shown, extends only to their barest generic elements, while the rest "share little visual resemblance with each other." *Paleteria*, 69 F. Supp. 3d at 199. And Plaintiff alleges nothing about "the proximity of the products" or any "evidence of actual confusion." Nor does he allege anything about Voodoo's "purpose" or lack of "good faith in adopting its own mark." He alleges that "Voodoo . . . knew about the Knocky Balls mark" (Compl. ¶ 181), but that is insufficient; "an inference of 'bad faith' requires something more than mere knowledge of a prior similar mark." *Globalaw*, 452 F. Supp. 2d at 53. But, most fundamentally, there can be no "consumer confusion" without consumers purposefully shopping

for Plaintiff's product and finding something else. And Plaintiff concedes nobody is doing that. *See* Compl. ¶¶ 158, 179.

**B.    Plaintiff Has No Claim for Infringement of His Generic Name.**

With respect to the product names, Plaintiff at least has the claim to similarity that is lacking in his challenge to the logos. But he pretends this is the end of the legal inquiry, when it is just the beginning. *See Paleteria*, 69 F. Supp. 3d at 199–200 (collecting cases holding that "[t]he use of the same words . . . is far from dispositive" and that "no protection is available against confusion generated by mere similarity of names"). If, as in one of the cases cited in *Paleteria*, the name "Overhead Door Systems" does not infringe the trademark of "Door Systems," and if the name "Super Duck Tours" does not infringe on "Boston Duck Tours," and if the "Blinded American Veterans Foundation" does not infringe on the "Blinded Veterans Association," then there is no manifest infringement between "Knock Balls" and "Knocky Balls," either. *Door Sys., Inc. v. Overhead Door Sys., Inc.*, 905 F. Supp. 492 (N.D. Ill. 1995); *Boston Duck Tours*, *supra*; *Blinded Veterans*, *supra*; *see also*, *e.g.*, *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998) ("Streetwise" and "StreetSmart" "not confusingly similar").

Plaintiff calls "Knocky Balls" "a fanciful term that does not appear in the dictionary." Compl. ¶ 179. That is incorrect. The word *knock* of course appears in the dictionary and is a generic or, at most, descriptive term in connection with a game in which players knock down objects; the only thing that makes Plaintiff's use of it the least bit fanciful is the "-y" suffix. *Cf. Preferred Nutrition, Inc. v. Vanderhaeghe*, 2010 U.S. Dist. LEXIS 153676, at *31–32 (W.D. Wash. Nov. 22, 2010) (describing "marks [] indistinguishable in their prefixes . . . but distinguishable in their suffixes"; "the prefixes of the parties' marks are descriptive or suggestive, and it is only these

descriptive or suggestive elements that make the marks similar"). In other words, the only fanciful and distinctive part of Plaintiff's name is the part he does *not* accuse Voodoo of copying.

The D.C. Circuit in *Blinded Veterans* held that one organization benefiting "blinded veterans" could not prevent another organization benefiting "blinded veterans" from using the term in its name because, "[j]ust as 'blinded' would be generic when used with 'the blinded persons association,' or 'veterans' with 'the veterans association,'" the term "'blinded veterans' simply designates the twice-circumscribed category of people who are both blinded and veterans." 872 F.2d at 1041–42. Likewise, the terms "knock" and "balls" simply designate the action inherent in a game in which balls knock things down, and are equally generic. Such generic terms are "consistent with an inference that the [alleged] copier merely wanted to inform consumers about properties of its own product," *Door Systems*, 905 F. Supp. at 495, just like the "Can Knockdown" game that also uses a descriptive name based on the word "knock." *See supra* Part III.A.

Even if Plaintiff's claim does not fail on account of the generic or descriptive nature of the name, it should be dismissed for failure to plead "that the trade name [is] either inherently distinctive or [has] acquired a secondary meaning." *Fernandez v. Jones*, 653 F. Supp. 2d 22, 29 (D.D.C. 2009). That case involved a trademark dispute between competing businesses calling themselves "MCM Parking" and "MCM Parking Solutions," whose similarities are obvious. The plaintiff made a conclusory allegation that "its trade name . . . ha[s] developed a secondary meaning within the minds of the relevant public," but the legal standard, the court held, was that a "term has acquired secondary meaning when the primary significance of the term in the minds of the consuming public is not the product but the producer"—"a *mental association* in buyers' minds between the alleged mark and a single source of the product." *Id*. at 29–30 (internal quotation marks omitted). In other words, "[t]o acquire a secondary meaning in the minds of the buying

-24-

public, a labelled product, when shown to a prospective customer, must prompt the reaction, 'That is the product I want because I know that all products with that label come from a single source and have the same level of quality." *Id*. at 30 (quoting 2 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 15:5 (4th ed. 2009)).

The *Fernandez* plaintiff had nothing to satisfy this standard for a variety of reasons, but most fundamentally because "the product here is a parking garage, not a consumer product or service which competes on factors other than location and price." *Id*. There was simply no basis to presume any consumers looking for a parking spot were motivated by brand loyalty to the plaintiff's trade name. The same problem dooms Plaintiff's claim based on what he has affirmatively alleged in the complaint: that the consumers in the relevant market make "hyper-casual" "impulse downloads" "with little to no scrutiny" of what they are getting. Compl. ¶ 179. By Plaintiffs' own concession, these are not consumers saying, "That is the product I want because I know that all products with that label come from a single source and have the same level of quality." McCarthy, *supra*. The Court need go no further than these concessions to hold that Plaintiff's trade name is not entitled to protection under the Lanham Act and dismiss the claim.

## C.   Plaintiff's Third Trademark Claim Just Rehashes His First Two.

Count III of the Complaint is asserted under 15 U.S.C. § 1117. "15 U.S.C. § 1117 is not a statute that confers substantive rights, rather, it provides a basis for recovery if an individual's trademark rights are violated." *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 190, n.9 (D.D.C. 2005). Thus, "[t]here is no basis" for a claim under § 1117 independent of Plaintiff's other trademark claims. *Id*. Dismissal of Counts I and II thus mandates dismissal of Count III.[6]

---

[6] Further, Plaintiff labels Count III a claim for "counterfeiting." Insofar as Plaintiff intends Count III to be read to pursue such a claim as distinct from his infringement claims in Counts I and II (albeit without invoking the right statute), it fails on the merits because "this is simply not a

## IV.

## THE COURT SHOULD DISMISS PLAINTIFF'S RICO CLAIMS.

As noted *supra* Part I, the Goldman Defendants have already briefed myriad defects with Plaintiff's RICO claims, most of which apply equally to his claims against Voodoo, and Voodoo joins in those arguments rather than repeating them. More specifically, Voodoo joins in the following arguments of the Goldman Defendants, subject to additional points applicable to Plaintiff's allegations against Voodoo as set forth below:

**1. Plaintiff lacks standing to sue under RICO,** because he alleges no "actual monetary loss, *i.e.*, an out-of-pocket loss," as necessary to plead an injury to "business or property." *Maio*, 221 F.3d at 483. His unsupported contention that if more users had downloaded his game, he could have made "money on advertisements and in-game purchases" (Compl. ¶ 179), merely describes a "speculative," "expectancy interest[]" that falls short of a concrete financial injury. *Tri-State*, 2000 U.S. Dist. LEXIS 23564, at *16; *Price v. Pinnacle Brands*, 138 F.3d 602, 607 (5th Cir. 1998). (*See* ECF No. 13 at 12–13, ECF No. 21 at 7–8.)

**2. Plaintiff fails to plead a RICO "enterprise,"** because there are no facts pled, nor could there be, to indicate that Voodoo, the two Goldman Defendants, and "867 unknown [] investors" constitute an "ongoing organization" that "function[s] as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). (*See* ECF No. 13 at 18–19.)

**3. Plaintiff fails to plead the Defendants' "conduct" of the (non-existent) enterprise.** "Conduct" entails a "part in directing" "the enterprise's affairs," not merely the defendant's "own

---

counterfeiting case." *Syntex, Inc. v. Interpharm, Inc.*, 1993 U.S. Dist. LEXIS 10716, at *12 (N.D. Ga. June 7, 1993). A claim that a trademark is infringed by elements that "copy the appearance" of the plaintiff's mark, even if such a claim could be asserted here, is a different animal from a claim that the defendant "use[d] plaintiffs' mark on its products" to pass one thing off as another one. *Id*. at *11–*12.

affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). (*See* ECF No. 13 at 16–18.)

By alleging that the purported enterprise "is involved in the same interstate and foreign commerce as Voodoo" (Compl. ¶ 238), Plaintiff concedes that Voodoo didn't "direct" anything beyond its "own affairs." *Reves*, *supra*. Plaintiff underscores the point by adding: "The rest of [the enterprise's] activities are cloaked in secrecy through the Cayman Islands." Compl. ¶ 238. The reference to the Cayman Islands refers to Plaintiff's allegations that the Goldman Defendants' investment fund is registered there. *Id*. at ¶¶ 145–46. Voodoo is not alleged to have any role whatsoever "directing" the Goldman Defendants' investment funds. *Reves*, *supra*. It is, of course, impossible to plead facts about how a defendant directed an enterprise when there is no enterprise to direct. But even setting that separate defect aside, Plaintiff's inability to allege Voodoo's "operation or management" of anything other than its own business is fatal. *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1231 (D.C. Cir. 1991).

**4. Plaintiff pleads no "pattern of racketeering activity."** Plaintiff accuses Voodoo of three predicate acts—copyright infringement (Compl. ¶ 211–13), trademark infringement (Compl. ¶ 214), and wire fraud (Compl. ¶ 215–21). Since the first two claims lack merit for the reasons addressed *supra* Parts II and III, Plaintiff's effort to turn them into RICO predicate acts also lacks merit. That just leaves the wire-fraud claim, which can end the Court's inquiry because "[a] 'pattern of racketeering activity' requires commission of at least two predicate offenses on a specified list," and wire fraud is only one of them. *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995).

The wire-fraud claim is also meritless. There, Plaintiff first speculates that Voodoo "posted fake [] reviews" of video games in violation of Google and Apple policies. Compl. ¶¶ 217–18. "A RICO claim based on mail and wire fraud receives careful scrutiny 'because of the relative ease

with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.'" *Adler v. Loyd*, 496 F. Supp. 3d 269, 279 (D.C. Cir. 2020) (*quoting W. Assocs. L.P. v. Market Square Assocs.*, 235 F.3d 629, 637 (D.C. Cir. 2001)). But Plaintiff expressly admits he cannot plead this alleged "fraud" with the particularity required by FED. R. CIV. P. 9(b). No effort is made to "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994) (quoting *United States v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)). No effort is made to explain how a "review" of a video game can constitute a misrepresentation of fact, either. And no effort is made to establish that a single review of Plaintiff's game and an unspecified number of reviews of other games—even if there were any basis to attribute any of this to Voodoo—amounts to the requisite "pattern." *See Adler*, 496 F. Supp. 3d at 280 (citing D.C. Circuit precedent establishing that "fifteen" and even "dozens of predicate acts" were "inadequate to state a RICO pattern").

Plaintiff tries to cobble together assorted other grievances with Voodoo having nothing to do with him into additional claims of "wire fraud"—for example, complaints that "Voodoo's games are bloated with ads" and that it has "fraudulently market[ed]" games as multiplayer "when they were not." Compl. ¶¶ 220–21. These allegations are both fatally unparticularized and irrelevant. To comprise a "pattern," predicate acts must have "relatedness and continuity." *W. Assocs.*, 235 F.3d at 633. There is no "relatedness and continuity" between Plaintiff's grievances with Voodoo's treatment of his game and his wholly separate accusations about Voodoo's advertising policies and marketing of other games.

Likewise, the various acts of wire fraud Plaintiff attributes to the Goldman Defendants cannot be used as a predicate for holding *Voodoo* liable under RICO, and they have no

"relatedness" or "continuity" to his claims against Voodoo, either. Accusing Goldman Sachs of paying bribes to Malaysian officials (Compl. ¶¶ 223–26, ¶¶ 229–30) or to the former Treasury Secretary to influence the 2008 "bail out [of] AIG" (*id*. at ¶¶ 227–28) have no nexus to Plaintiff's grievances against Voodoo and cannot form part of a single "pattern." (*See* ECF No. 13 at 19–20, ECF No. 21 at 3–7.) Yet Plaintiff calls these allegations "the root of all [his] claims." ECF No. 18 at 34. If that claim is true, then "the root of all [Plaintiff's] claims" has nothing to do with Voodoo. Alternatively, if Plaintiff's claims are rooted in his copyright and trademark grievances, then unrelated allegations about Malaysia and the 2008 financial crisis get him nowhere.

**5. The RICO "conspiracy" claim fails,** because it requires a meritorious underlying claim as well as well-pleaded allegations of a "conscious agreement" to "commit at least two predicate acts." *Moore v. Guesno*, 485 F. Supp. 2d 300, 309 (W.D.N.Y. 2007), *aff'd*, 301 F. App'x 17 (2d Cir. 2008); *Danielsen*, 941 F.2d at 1224; *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993). Plaintiff has neither. (*See* ECF No. 13 at 20; ECF No. 21 at 13–14.)

## V.

### THE COURT SHOULD DISMISS PLAINTIFF'S ANTITRUST CLAIMS.

Again, there is no reason to retread the same ground the Goldman Defendants have already briefed. Voodoo joins those arguments:

**1. Plaintiff's antitrust claims fail for lack of an antitrust injury.** Copyright and trademark claims allege harms to the Plaintiff personally, not to competition in general, and are not injuries of "the type the antitrust laws were intended to prevent." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977); *accord*, *e.g.*, *Southgate v. Facebook, Inc.*, No. 17-0648, 2017 U.S. Dist. LEXIS 217852, at *11–12 (E.D. Va. Nov. 14, 2017) ("[M]erely repeat[ing] allegations of the individual harms [plaintiff] has suffered as a result of defendants' infringing his

trademark and copyright . . . do not establish an antitrust injury."). (*See* ECF No. 13 at 21–23; ECF No. 21 at 15–16.)

    **2. Plaintiff pleads no contract, combination, or conspiracy.** The only contract or agreement of any kind alleged in the complaint is the agreement by which the Goldman Defendants' investment fund acquired its minority stake in Voodoo. This is a routine transaction with "an independent business justification," not a restraint of trade. *In re McCormick & Co.*, 217 F. Supp. 3d 124, 132 (D.D.C. 2016). (*See* ECF No. 13 at 23–24.)

    **3. Plaintiff fails to plead Voodoo had any "market power."** In fact, Plaintiff expressly concedes otherwise. He opposed the Goldman Defendants' motion to dismiss by telling the Court: "[T]he [Goldman] defendants have the market power, not Defendant Voodoo." ECF No. 18 at 20. That suffices to extinguish Plaintiff's antitrust claims against Voodoo. Market power is an essential element of the claims, and Plaintiff has said expressly that Voodoo has none. *McCormick*, 217 F. Supp. 3d at 137. (*See* ECF No. 13 at 24–25, ECF No. 21 at 17–18.)

    **4. Plaintiff pleads no current or future harm to competition.** Instead, once again, Plaintiff negates his claim by alleging a market in robust competition and awash in consumer choice, in which Voodoo competes against several far larger and better-capitalized game producers Plaintiff calls "titan[s] in the industry." Compl. ¶¶ 166, 253. *See* ECF No. 13 at 24–26.

## VI.

## THE COURT SHOULD DISMISS PLAINTIFF'S REMAINING STATE-LAW CLAIMS.

    As Plaintiff's federal claims lack merit, there is no good reason for this Court to exercise its discretion to hear Plaintiff's remaining state-law claims. "[I]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point

toward declining to exercise jurisdiction over the remaining state-law claims." *Cherry v. Dist. of Columbia*, 170 F. Supp. 3d 46, 51 (D.D.C. 2016) (Walton, J.) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)).

Plaintiff's state law claims suffer from numerous additional fatal defects. The first is that Voodoo can hardly even respond to them, because Plaintiff pleads these as common-law claims under state law without even specifying which state. In his response to the Goldman Defendants' motion to dismiss, Plaintiff urged the court to apply "D.C. common law." ECF No. 18 at 24. But the District's common law *can't* apply, because its choice-of-law rules base the applicable state law on such factors as: "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile . . . of the parties; and (4) the place where the relationship is centered." *Aref v. Lynch*, 833 F.3d 242, 261–62 (D.C. Cir. 2016). *None* of these factors support the application of D.C. law to Plaintiff's claims. He does not claim to be injured here, does not allege any conduct here, and does not allege that any party is domiciled here. Since D.C. law cannot apply and D.C. is the only jurisdiction whose law Plaintiff invokes, none of these claims can proceed.

Regardless, the deficiencies in Plaintiff's allegations make these claims readily dismissible regardless of the jurisdiction under whose laws they are asserted. Counts XVI through XVIII are, respectively, claims for fraud, misrepresentation, and a claim for "tortious interference" grounded on the prior claims of fraud and misrepresentation. None of these claims plead the underlying alleged misrepresentations with the particularity required by FED. R. CIV. P. 9(b).[7] The requisite

---

[7] *See*, *e.g.*, *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 206 (D.D.C. 2016) ("Rule 9(b)'s particularity requirements apply to claims for negligent misrepresentation"); *Silverman v. Weil*, 662 F. Supp. 1195 (D.D.C. 1987) (any claims "sounding in fraud" must "be stated with particularity").

particularity "include[s] matters such as the time, place, and content of the false misrepresentations, the misrepresented fact and what the opponent retained or the claimant lost as a consequence of the alleged fraud." *Poblete v. Rittenhouse Mortg. Brokers*, 675 F. Supp. 2d 130, 133–34 (D.D.C. 2009). But here, Plaintiff's claims are all based on unspecified statements Voodoo is accused of making to *third parties* with no facts pled about their time, place, or content, or even any facts pled to substantiate how Plaintiff would be privy to these statements at all.

<u>**CONCLUSION**</u>

For the reasons set forth above, Voodoo respectfully moves that the Court dismiss Plaintiff's claims with prejudice.

Respectfully submitted this 14th day of January, 2022.

/s/ Keith Levenberg
Keith Levenberg (#1007558)
GOODWIN PROCTER LLP
1900 N St., N.W.
Washington, D.C. 20036
Tel.: (202) 346-4000
Fax: (202) 346-4444
klevenberg@goodwinlaw.com

Douglas H. Flaum (#NY0363)
GOODWIN PROCTER LLP
620 Eighth Ave.
New York, N.Y. 10018
Tel.: 212 813-8800
Fax: 212 355-3333
DFlaum@goodwinlaw.com

Alicia Rubio-Spring (#1018198)
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, Mass. 02210
Tel.: 617 570-1000
Fax: 617 523-1231
ARubio-Spring@goodwinlaw.com

*Counsel for Defendant Voodoo SAS*

## **CERTIFICATE OF SERVICE**

I hereby certify that this 14th day of January, 2022, I caused a copy of the foregoing document to be served on all counsel of record via ECF.

/s/ Keith Levenberg