**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| JOSEPH A. STALLARD |
| Plaintiff, |
| v. |
| GOLDMAN SACHS GROUP, INC., <u>et al.</u>, |
| Defendants. |

Civil Action No. 20-02703 (RBW)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**<u>MOTION BY DEFENDANT VOODOO SAS TO DISMISS THE COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... 4

1.    BACKGROUND ................................................................................................... 7

2.    STANDARD OF REVIEW .................................................................................. 8

   2.1.    Fed. R. Civ. P. 12(b)(2) Motion to Dismiss.................................................. 8

   2.2.    Fed. R. Civ. P. 12(b)(6) Motion to Dismiss.................................................. 8

3.    ANALYSIS ......................................................................................................... 11

   3.1.    The Court has personal jurisdiction over the defendant. ............................. 11

      3.1.1.    The Court has jurisdiction under Fed. R. Civ. P. 4(k)(2)...................... 11

      3.1.2.    The Court has pendent personal jurisdiction over the claims. .............. 12

   3.2.    The defendant forfeited arguments not raised in their opening brief and incorporated by reference................................................................................................... 12

   3.3.    The defendant improperly introduced inadmissible evidence into its Motion, including falsified evidence. ................................................................................................ 13

      3.3.1.    The quote from the plaintiff's website is irrelevant................................ 14

      3.3.2.    The image from the plaintiff's website is improper evidence. ............... 14

      3.3.3.    The screenshot of the defendant's game is improper evidence. ........... 15

      3.3.4.    The defendant's generally known fact is improper judicial notice........ 17

      3.3.5.    The movie evidence is improper.............................................................. 19

      3.3.6.    The Can Knockdown judicial notice is improper. .................................. 20

      3.3.7.    The plaintiff's logo image is improper evidence. ................................... 20

      3.3.8.    The defendant's logo image is improper evidence. ................................ 21

   3.4.    The plaintiff pled copyright infringement.................................................... 22

      3.4.1.    The plaintiff owns a valid copyright....................................................... 22

         3.4.1.1.    The plaintiff's copyright registration is prima facie evidence ownership of a valid copyright. ................................................................................................ 22

         3.4.1.2.    The plaintiff's work as a whole is original. ..................................... 22

            3.4.1.2.1.    The plaintiff independently created the work. ........................... 23

            3.4.1.2.2.    The work possesses at least some minimal degree of creativity. .............. 23

            3.4.1.2.3.    "Concept and feel" is a test for similarity and its use in the Complaint does not invalidate the plaintiff's copyright registration. ..................................................... 24

      3.4.2.    The defendant copied the constituent elements of the work that are original. ....... 24

         3.4.2.1.    The plaintiff pled direct evidence of actual copying of the entire game. ........ 25

3.4.2.1.1.    Source code is copyrightable as a literary work..........................................26

3.4.2.1.2.    The plaintiff pled that he wrote the source code for the game....................27

3.4.2.2.    The plaintiff pled indirect evidence of actual copying. ....................................27

3.4.2.2.1.    The defendant had access to the copyrighted work.....................................28

3.4.2.2.2.    The works are substantially (probatively) similar......................................28

3.4.2.3.    The plaintiff pled unlawful appropriation (actionable copying). ....................29

3.4.2.3.1.    The audiovisual material and source code of the plaintiff's work are protectible by copyright. .........................................................................................30

3.4.2.3.2.    The defendant's work is substantially similar to the plaintiff's work. ........30

3.5.    The plaintiff pled trademark infringement..........................................................32

3.5.1.    The plaintiff's word mark is valid. ...................................................................32

3.5.2.    The plaintiff's word mark is entitled to protection. .......................................32

3.5.2.1.    The plaintiff's trademark registration is prima facie evidence of distinctiveness. ..........................................................................................................33

3.5.3.    There is a substantial likelihood of confusion between the plaintiffs' mark and the defendant's mark.........................................................................................................34

3.5.3.1.    The plaintiff's mark is strong and inherently distinctive...............................34

3.5.3.2.    The marks are similar. ......................................................................................34

3.5.3.3.    The goods are proximate, and the markets are the same. ...............................34

3.5.3.4.    Evidence of actual confusion............................................................................35

3.5.3.5.    The defendant's intent in adopting the mark...................................................35

3.5.3.6.    The quality of the defendant's product. ..........................................................35

3.5.3.7.    The sophistication of the buyers. .....................................................................35

3.6.    The plaintiff pled RICO .......................................................................................36

3.6.1.    The plaintiff has RICO standing. ......................................................................36

3.6.2.    The plaintiff pled a RICO enterprise. ...............................................................36

3.6.3.    The plaintiff pled the defendant conducted the enterprise's affairs.......................37

3.6.4.    The plaintiff pled a pattern of racketeering activity...............................................37

3.6.4.1.    The plaintiff pled wire fraud............................................................................38

3.6.5.    The plaintiff pled RICO conspiracy...................................................................38

3.7.    The plaintiff pled antitrust claims. ......................................................................39

3.7.1.    The plaintiff pled antitrust injury. .....................................................................39

3.7.2.    The plaintiff pled a combination. ......................................................................39

3.7.3.   The plaintiff pled market power. ................................................................. 40

3.7.4.   The plaintiff pled harm to competition ................................................... 40

3.8.   The plaintiff pled common law claims (not state law claims) ...................................... 41

3.8.1.   D.C. law applies by default. Choice of law is not a pass-fail test. ........................... 41

3.8.2.   The plaintiff pled fraud with particularity. ............................................. 42

3.8.3.   Should the Court hear common law claims without federal claims? ..................... 42

4.   CONCLUSION ...................................................................................... 44

# TABLE OF AUTHORITIES

**Cases**

Al-Tamimi v. Adelson,
    916 F.3d 1 (D.C. Cir. 2019) ................................................................................... 13

American Society for Testing and Materials v. Public.Resource.Org, Inc.,
    896 F.3d 437 (D.C. Cir. 2018) ........................................................................... 32, 34

Amoco Oil Company v. United States,
    234 F.3d 1374 (Fed. Cir. 2000) ............................................................................... 13

Aref v. Lynch,
    833 F.3d 242 (D.C. Cir. 2016) ........................................................................... 41, 42

Atari Games Corporation v. Nintendo of America Inc.,
    975 F.2d 832 (Fed. Cir. 1992) ............................................................................ 23, 26

Atari Games Corporation v. Oman,
    979 F.2d 242 (D.C. Cir. 1992) ..................................................................... 16, 23, 30

Atkins v. Fischer,
    331 F.3d 988 (D.C. Cir. 2003) ........................................................................... 24, 31

Banneker Ventures, LLC v. Graham,
    798 F.3d 1119 (D.C. Cir. 2015) ................................................................................ 9

Bell Atlantic Corporation v. Twombly,
    550 U.S. 544 (2007) ................................................................................................... 9

Blinded Veterans Association v. Blinded American Veterans Foundation,
    872 F.2d 1035 (D.C. Cir. 1989) .............................................................................. 33

Brown Shoe Co. v. United States,
    370 US 294 (1962) ................................................................................................... 41

Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,
    429 U.S. 477 (1977) ..................................................................................... 39, 40, 41

Carnegie-Mellon University v. Cohill,
    484 U.S. 343 (1988) ................................................................................................. 43

Cherry v. District of Columbia,
    170 F. Supp. 3d 46 (D.D.C. 2016) .......................................................................... 43

Columbia Pictures Industries, Inc. v. Landa,
    974 F. Supp. 1 (D.D.C. 1997) ................................................................................. 28

Corson and Gruman Company v. National Labor Relations Board,
    899 F.2d 47 (D.C. Cir. 1990) .................................................................................. 12

Crane v. New York Zoological Society,
    894 F.2d 454 (D.C. Cir. 1990) .................................................................................. 8

Diamond Foods, Inc. v. Hottrix, LLC,
    No. 14-3162, 2016 WL 3880797 (N.D. Cal. July 18, 2016) ............................. 15, 16

DSMC, Inc. v. Convera Corporation,
    479 F. Supp. 68 (D.D.C. 2007) ..................................................................... 22, 26, 30

Equal Employment Opportunity Commission v. St. Francis Xavier Parochial School,
   117 F.3d 621 (D.C. Cir. 1997) ................................................................................. 10
Erie Insurance Company v. W.M. Barr & Company, Inc.,
   523 F. Supp. 3d 1 (D.D.C. 2021) ............................................................................... 8
Erie Railroad Company v. Tompkins,
   304 U.S. 64 (1938) ................................................................................................... 42
Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,
   499 U.S. 340 (1991) ........................................................................................... 22, 23
Frazier v. Consolidated Rail Corporation,
   851 F.2d 1447 (D.C. Cir. 1988) .............................................................................. 10
Garcia v. Stewart,
   531 F. Supp. 3d 194 (D.D.C. 2021) ........................................................................ 13
Geico v. Fetisoff,
   958 F.2d 1137 (D.C. Cir. 1992) ......................................................................... 41, 42
Globalaw Limited v. Carmon & Carmon Law Office,
   452 F. Supp. 2d 1 (D.D.C. 2006) ............................................................................ 35
Google LLC v. Oracle America, Inc.,
   141 S. Ct. 1183 (2021) ....................................................................................... 26, 27
H.J. Inc. v. Northwestern Bell Telephone Co.,
   492 US 229 (1989) .............................................................................................. 37, 38
Hurd v. District of Columbia,
   864 F.3d 671 (D.C. Cir. 2017) ................................................................................ 10
In re McCormick,
   217 F. Supp. 3d 124 (D.D.C. 2016) ................................................................... 39, 40
Khoja v. Orexigen Therapeutics, Inc.,
   899 F.3d 988 (9th Cir. 2018) ................................................................................... 17
Maio v. Aetna, Inc.,
   221 F.3d 472 (3d Cir. 2000) .................................................................................... 36
Malarkey-Taylor Associates, Inc. v. Cellular Telecommunication Industry Association,
   929 F. Supp. 473 (D.D.C. 1996) ............................................................................. 34
Mwani v. bin Laden,
   417 F.3d 1 (D.C. Cir. 2005) ............................................................................... 11, 12
National Information Corp. v. The Kiplinger Washington Editors, Inc.,
   771 F. Supp. 460 (D.D.C. 1991) ............................................................................. 36
Nichols v. Club for Growth Action,
   235 F. Supp. 3d 289 (D.D.C. 2017) ........................................................................ 31
Partido Revolucionario Dominicano v. Partido Revolucionario,
   312 F. Supp. 2d 1 (D.D.C. 2004) ............................................................................ 36
Prunté v. Universal Music Group,
   563 F. Supp. 2d 41 (D.D.C 2008) ...................................................................... 25, 28
Reader's Digest Association, Inc. v. Conservative Digest, Inc.,
   821 F. 2d 800 (D.C. Cir. 1987) ............................................................................... 27

Reves v. Ernst Young,
    507 U.S. 170 (1993) ........................................................................... 37
Scott-Blanton v. Universal City Studios Productions LLLP,
    539 F. Supp. 2d 191 (D.D.C. 2008) ................................................... 28
Sears, Roebuck and Co. v. Sears Financial Network, Inc.,
    576 F. Supp. 857 (D.D.C. 1983) ........................................................ 35
Second Amendment Foundation v. United States Conference of Mayors,
    274 F.3d 521 (D.C. Cir. 2001) ............................................................. 8
Smith v. Summers,
    334 F. Supp. 3d 339 (D.D.C. 2018) ................................................... 41
Sturdza v. United Arab Emirates,
    281 F.3d 1287 (D.C. Cir. 2002) ................................................... passim
Vasquez v. Whole Foods Market, Inc.,
    302 F. Supp. 3d 36 (D.D.C. 2018) ..................................................... 12
VoteVets Action Fund v. United States Department of Veterans Affairs,
    992 F.3d 1097 (D.C. Cir. 2021) ........................................................... 9
Wal-Mart Stores, Inc. v. Samara Brothers, Inc.,
    529 U.S. 205 (2000) ........................................................................... 32
Wharf, Inc. v. D.C. Wharf Horizontal Reit Leaseholder LLC,
    No. 15-cv-1198 (CKK), 2021 WL 1198143 (D.D.C. Mar. 30, 2021) ...................................... 10
Whitehead v. Paramount Pictures Corporation,
    53 F. Supp. 2d 38 (D.D.C. 1999) ....................................................... 22
Whiting v. AARP,
    637 F.3d 355 (D.C. Cir. 2011) .................................................... 14, 16
Yi v. Roberts,
    No. 19-5014, 2019 U.S. App. LEXIS 22797 (D.C. Cir. July 31, 2019) ........................... 14, 20
Zella v. E.W. Scripps Company,
    529 F. Supp. 2d 1124 (C.D. Cal. 2007) ..................................... 17, 18, 19

**Rules**

Federal Rule of Civil Procedure 12 ............................................................. 8
Federal Rule of Civil Procedure 4 ............................................................. 11
Federal Rule of Civil Procedure 8 ............................................................. 9
Federal Rule of Evidence 201 ................................................................. 10

**Statutes**

17 U.S.C. § 410 ........................................................................... 22, 23
28 U.S.C. § 1338 ............................................................................... 11

# 1. __BACKGROUND__

The plaintiff is one of many victims of a pattern of copyright infringement, trademark infringement and fraud by the defendant, Voodoo SAS. Funded by the Goldman Sachs defendants, the defendant cloned games made by small independent developers ("indies") and pushed them to the top of the charts, mostly through fraud, but also through massive funding by a criminal enterprise involving the Goldman Sachs defendants and various unknown others, whose identity is masked by the secrecy provided by the Caymans Islands. Thus, the defendant, the other defendants and others comprise a criminal enterprise with a pattern of criminal activity, in violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, as described in the Complaint ("Compl."), ECF No. 1.

As one of the largest investment banks in the world, the Goldman Sachs defendants have funding unavailable even to the largest video game companies, and they used their size, as a "deep pocket" parent in a market of "pygmies", to cause the defendant dominate the mobile video game market increasing the damage to the indies, whose games the defendant cloned, in violation of antitrust laws.  The criminal activity involved in the domination is also per se illegal under antitrust laws.

 The defendant moved to dismiss these claims *with* prejudice. See Motion by Defendant Voodoo SAS to Dismiss the Complaint ("Voodoo's Mot."), ECF No. 34.  The defendant completely ignored the plaintiff's allegations of personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2) (federal law claims outside state court jurisdiction) designed for alien defendants like the defendant. Copyright and trademark infringement involve highly subjective questions of facts that are inappropriate to decide at the motion to dismiss stage, and the defendant mostly

challenged those claims on questions of fact.  The defendant only provided a blanket accusation

of lack of particularity of fraud claims without specifically addressing the pages of fraud

allegations in the Complaint that included specific dates and quotes. The defendant similarly

addressed the RICO and antitrust claims, and the defendant barely mentioned the sufficiency of

the common law claims, except fraud.  Thus, the Court should not dismiss the claims.

## 2.  STANDARD OF REVIEW

### 2.1. Fed. R. Civ. P. 12(b)(2) Motion to Dismiss

"The plaintiff has the burden of establishing a factual basis for the exercise of personal

jurisdiction over the defendant." Crane v. New York Zoological Society, 894 F.2d 454, 456 (D.C.

Cir. 1990) (citing Reuber v. United States, 750 F.2d 1039, 1052 (D.C. Cir. 1984)). A "plaintiff

must allege specific acts connecting the defendant with the forum." Second Amendment

Foundation v. United States Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001) (quoting

First Chicago International v. United Exchange Co., Ltd., 836 F.2d 1375, 1378 (D.C. Cir. 1988)).

"In determining whether such a basis exists, factual discrepancies appearing in the record must be

resolved in favor of the plaintiff." Crane, F.2d at 456.

### 2.2. Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss is not a trial.  It is tempting for

defendants to want to prove their case on a motion to dismiss, or at least show that the plaintiff is

unlikely to succeed at trial. However, "a motion to dismiss under Rule 12(b)(6) does not test a

plaintiff's likelihood of success on the merits, but rather 'tests the legal sufficiency of a complaint'

by asking whether the plaintiff has properly stated a claim for which relief can be granted. " Erie

Insurance Company v. W.M. Barr & Company, Inc., 523 F. Supp. 3d 1, 6 (D.D.C. 2021) (quoting

Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002)).  "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555 (2007) (quotation omitted).

"A plaintiff need not make 'detailed factual allegations,' but 'to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" VoteVets Action Fund v. United States Department of Veterans Affairs, 992 F.3d 1097, 1104 (D.C. Cir. 2021) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id (quoting Iqbal, 556 U.S. at 678). "The standard requires 'more than a sheer possibility that a defendant has acted unlawfully' but 'is not akin to a "probability requirement."'" Id (quoting Iqbal, 556 U.S. at 678).

The Court should "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (citing Iqbal, 556 U.S. at 678). A "well-pleaded complaint should be allowed to proceed 'even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely.'" Id (quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 556 (2007)). "A complaint survives a motion to dismiss even if there are two alternative explanations, one advanced by the defendant and the other advanced by the plaintiff, both of which are plausible." VoteVets, 992 F.3d at 1104 (quotation omitted)

"In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice." Equal Employment Opportunity Commission v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997). Judicial notice is only for specific facts. Federal Rule of Evidence 201(a) ("This rule governs judicial notice of an adjudicative fact only.") Judicial notice is not for entire pieces of evidence, and it certainly is not for improperly introducing evidence at the motion to dismiss stage. Hurd v. District of Columbia, 864 F.3d 671, 687 (D.C. Cir. 2017) ("By casting the issue as one of the district court's authority to take judicial notice at the motion-to-dismiss stage, the [defendant] sought to have documents supportive of its view of potentially disputed issues of fact considered as if they were part of the plaintiff's own allegations."). If the judicial notice is not requested and the Court is not supplied with the necessary information, the Court is not required to take judicial notice of the fact. Frazier v. Consolidated Rail Corporation, 851 F.2d 1447, 1452 (D.C. Cir. 1988) ("the district court was not required to take notice of it; Fed. R. Evid. 201(d) ('a court shall take judicial notice if . . . supplied with the necessary information')").

"Judicial notice cannot be used to circumvent the rule against hearsay and thereby deprive a party of the right of cross-examination on a contested material issue of fact." Wharf, Inc. v. D.C. Wharf Horizontal Reit Leaseholder LLC, No. 15-cv-1198 (CKK), 2021 WL 1198143, at *23 (D.D.C. Mar. 30, 2021) (quoting 29 American Jurisprudence 2d Evidence § 140 (2020)).

### 3.   ANALYSIS

**3.1. The Court has personal jurisdiction over the defendant.**

The Court has personal jurisdiction over the defendant under Fed. R. Civ. P 4(k)(2) (federal law claims outside state court jurisdiction) for all federal law claims. See Compl. ¶¶ 17-19. The defendant did not contest.  The Court also has original jurisdiction over the unfair competition claim and possibly the entire action, 28 U.S.C. § 1338 ("The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws."), so those claim(s) fall under Fed. R. Civ. P 4(k)(2) at least as long as a federal statute copyright or trademark claim remains.

The Court also has pendent personal jurisdiction over the common law claims.  The defendant did not contest, but it pointed out that the Court could decline to exercise pendent jurisdiction if the federal law claims are dismissed. See Voodoo's Mot. at 8-9.  The plaintiff agrees but urges the Court to consider personal jurisdiction based on the same balance of factors as subject matter jurisdiction discussed below.

**3.1.1.   The Court has jurisdiction under Fed. R. Civ. P. 4(k)(2).**

This Court has personal jurisdiction over the defendant under Fed. R. Civ. P. 4(k)(2).  Fed. R. Civ. P. 4(k)(2) provides personal jurisdiction over the defendant "(1) for a claim arising under federal law, (2) where a summons has been served, (3) if the defendant is not subject to the jurisdiction of any single state court, (4) provided that the exercise of federal jurisdiction is consistent with the Constitution (and laws) of the United States."  Mwani v. bin Laden, 417 F.3d 1, 10 (D.C. Cir. 2005).

The federal law claims arise under federal copyright, trademark, RICO, and antitrust laws.  The plaintiff served the defendant.  <u>See</u> ECF No. 30.  The defendant did not name another state where the suit could proceed.  <u>Mwani v. bin Laden</u>, 417 F.3d 1, 11 (D.C. Cir. 2005) ("If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).")  The defendant has sufficient contacts with the United States for this case, <u>Id</u> ("Whether the exercise of jurisdiction is consistent with the Constitution turns on whether a defendant has sufficient contacts with the nation as a whole to satisfy due process."), because the plaintiff and the other defendants are from the United States, <u>See</u> Compl. ¶¶ 5-7, and the defendant copied the plaintiff's U.S. copyrighted and trademarked material and distributed it through U.S. companies (Apple and Google) to people in the United States. <u>See</u> Compl. ¶ 19.

### 3.1.2.   The Court has pendent personal jurisdiction over the claims.

"So long as Plaintiffs obtain personal jurisdiction as to one claim [] the doctrine of pendent personal jurisdiction permits the court to exercise personal jurisdiction over Defendants as to other 'claims that arose out of the same core operative fact[s].'" <u>Vasquez v. Whole Foods Market, Inc.</u>, 302 F. Supp. 3d 36, 48 n.2 (D.D.C. 2018) (citing <u>Oetiker v. Jurid Werke GmbH</u>, 556 F.2d 1, 4 (D.C. Cir. 1977))

### 3.2. The defendant forfeited arguments not raised in their opening brief and incorporated by reference.

The defendant must raise all their arguments in their opening brief to provide the plaintiff the chance to respond. <u>Corson and Gruman Company v. National Labor Relations Board</u>, 899 F.2d 47, 51 n.4 (D.C. Cir. 1990) ("We require petitioners and appellants to raise all of their arguments in the opening brief to prevent 'sandbagging' of appellees and respondents and to provide opposing

counsel the chance to respond.")  The defendant should not rely on the plaintiff to raise the arguments. <u>Amoco Oil Company v. United States</u>, 234 F.3d 1374, 1377 (Fed. Cir. 2000) ("However, a party must raise in its opening brief all issues it wishes to challenge and should not rely on an opponent to raise them.").

It is deceptive for the defendant to hide detrimental arguments hoping the *pro se* plaintiff will fail to raise them.  By using this deceptive tactic, the defendant forfeits any arguments not raised in their opening brief. <u>Al-Tamimi v. Adelson</u>, 916 F.3d 1, 6 (D.C. Cir. 2019)( "A party forfeits an argument by failing to raise it in his opening brief.")(citing <u>Herron v. Fannie Mae</u>, 861 F.3d 160, 165 (D.C. Cir. 2017)); <u>Garcia v. Stewart</u>, 531 F. Supp. 3d 194, 208 n.4 (D.D.C. 2021) ("Defendants have forfeited their zone-of-interests argument by not raising it in their opening brief, and thus, the Court need not consider it.")(collecting cases).

Incorporation by reference cannot be used to evade page limit requirements for briefs. <u>Al-Tamimi v. Adelson</u>, 916 F.3d at 6 ("rejecting incorporation of argument made in district court on basis it 'would circumvent the court's rules ... regarding the length of briefs'") (collecting cases). The defendant should have moved the Court to allow them to exceed the page limits rather than incorporating by reference another motion.  Thus, the defendant forfeited any arguments not made in its opening brief.

### 3.3. The defendant improperly introduced inadmissible evidence into its Motion, including falsified evidence.

The defendant introduced various evidence without a separate motion or even a formal request for judicial notice, in an attempt to turn this into a trial instead of testing the sufficiency of the claims.

### 3.3.1.   The quote from the plaintiff's website is irrelevant.

The Court cannot judicially notice the defendant's quote from the plaintiff's website, <u>See</u> Voodoo's Mot. at 2, because "the matters to be noticed must be relevant." <u>Whiting v. AARP</u>, 637 F.3d 355, 364 (D.C. Cir. 2011).  The quote is irrelevant.  The defendant used the judicial notice of the quote to insert a screenshot into its motion without requesting judicial notice of the image itself. <u>See</u> <u>Id</u> at 3.

### 3.3.2.   The image from the plaintiff's website is improper evidence.

The defendant did not request judicial notice of the screenshot included in the motion. <u>See</u> <u>Id</u>. The defendant did not specify the necessary information of what facts the Court should notice from the image, the source of those facts, why the source is accurate nor why those facts are not subject to dispute.

The defendant used this rationale, "The Court may take judicial notice of statements made on a party's web site." <u>Id</u> at 2 n.2. The defendant took the citation out of context.  The actual cited unpublished opinion states, "With respect to materials from the records of other federal courts, and materials from appellees' website, the motion for judicial notice is granted to the extent that the court takes notice only of the existence of the records, and not the accuracy of any legal or factual assertions made therein." <u>Yi v. Roberts</u>, No. 19-5014, 2019 U.S. App. LEXIS 22797, at *4 (D.C. Cir. July 31, 2019). In that case, Roberts is John Roberts, Chief Justice of the Supreme Court, and the website is the Supreme Court website – a public government website. Even though the website was the Supreme Court website, the D.C. Circuit could only judicially notice the existence of the records, but not any factual assertions.

14

At best, the Court can only judicially notice the existence of the screenshot, not any factual assertions from it, and, at this stage, any assertions must be in favor of the plaintiff.  The existence of the screenshot is irrelevant to a motion to dismiss, so the Court cannot judicially notice it.  At this stage, any factual assertions from it are also irrelevant because the assertions must be made in favor of the plaintiff.  Furthermore, the image is from the Microsoft Windows version of the game, not the Android version that the defendant infringed, so the image is irrelevant and improper for judicial notice.  This type of issue is why the images should be introduced through the standard evidence process and not judicial notice.  Also, images are not facts.  Judicial notice is for facts.

### 3.3.3.   The screenshot of the defendant's game is improper evidence.

Later, the defendant also included a screenshot from its own game. See Voodoo's Mot. at 4. Again, the defendant did not formally request judicial notice nor provide any information, except a link to the game on Google Play.

The defendant did request judicial notice in a roundabout way. The defendant said, "in copyright cases involving mobile applications like this case, the court can 'judicially notice[] the apps.'" Id at 16.  Again, the defendant took the quote out of context.  The full quote was "Though the Court has judicially noticed the apps, it cannot base any ruling on subjective determinations regarding its experience of the apps…As a result, the Court DENIES Plaintiff's motion to dismiss the copyright claim." Diamond Foods, Inc. v. Hottrix, LLC, No. 14-3162, 2016 WL 3880797, at *10 (N.D. Cal. July 18, 2016).  Furthermore, in that case, the other party did not contest the judicial notice, Id at *5 ("Defendant does not object."), and the party actually downloaded both entire apps to an iPhone deposited with the court. Id ("the Court GRANTS Plaintiff's RJN of the two apps as downloaded to the iPhone lodged with the Court.").  The court did not grant the motion to dismiss based on the apps.  In fact, the court denied the motion to dismiss.

15

That ruling was in the Ninth Circuit.  In the D.C. Circuit, the judicially noticed fact must be relevant.  A court could not make any subjective factual determinations of the apps.  A court only judicially noticed the existence of the apps, but, in the D.C. Circuit, the existence of the apps would be irrelevant to a motion to dismiss.  Any facts from the apps would also be irrelevant at the motion to dismiss stage. <u>Whiting v. AARP</u>, 637 F.3d 355, 364 (D.C. Cir. 2011) ("the matters to be noticed must be relevant, and the Senate Finance Committee materials are irrelevant to disposition of the motion to dismiss, which turns on the adequacy of the well-pleaded factual allegations in the complaint, which are assumed to be true, ")

The accuracy of the source of the image can certainly be questioned because the defendant uploaded the image, and it is an image from January 2022.  The accuracy of the image itself can be questioned because the defendant created it.

The court in <u>Hottrix</u> said it "cannot base any ruling on subjective determinations regarding its experience of the apps." However, apparently, the defendant wants the Court to compare two cherrypicked, out of context and possibly doctored, and singular screenshots of audiovisual works; then make subjective determinations that the works are not substantially similar; and dismiss the copyright claims.  That would be inappropriate at a jury trial, let alone a motion to dismiss. Audiovisual works must be compared as audio and video, and the plaintiff also copyrighted the computer code as a literary work, as is required by the U.S. Copyright Office.  The Court would also need to compare the code before dismissal.  The D.C. Circuit rejected the idea of comparing video games based only on their screenshots. <u>Atari Games Corporation v. Oman</u>, 979 F.2d 242, 245 (D.C. Cir. 1992) ("Our first problem with the Register's Letter rejecting BREAKOUT for a

second time is its apparent focus on the individual screens, rather than the flow of the game as a whole.")

If the defendant wants to quote Ninth Circuit courts, "[the defendant] improperly asked the district court to engage in fact-finding in the course of deciding the sufficiency of the Complaint." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1006 (9th Cir. 2018) "The overuse and improper application of judicial notice and the incorporation-by-reference doctrine, however, can lead to unintended and harmful results." Id at 998. "If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." Id at 999. "Such undermining of the usual pleading burdens is not the purpose of judicial notice." Id. "It is improper to judicially notice a transcript when the substance of the transcript 'is subject to varying interpretations, and there is a reasonable dispute as to what the [transcript] establishes.'" Id. "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." Id at 999.

### 3.3.4.   The defendant's generally known fact is improper judicial notice.

The defendant almost made a proper request for judicial notice of a fact.  The defendant said, "The Court may take judicial notice of the fact that the alleged elements of Plaintiff's 'concept' are 'common and prevalent.'"  Voodoo's Mot. at 11.  Again, the defendant took the quote out of context.  The full quote is "The CBS Defendants ask the Court to take judicial notice that the following elements of a television show are common and prevalent in public works: (a) a host; (b) guest celebrities, (c) an interview; and (d) a cooking segment. (Request for Judicial Notice ('RJN') at 1:7-13.)" Zella v. E.W. Scripps Company, 529 F. Supp. 2d 1124, 1129 (C.D. Cal. 2007).

17

In <u>Zella</u>, the request for judicial notice was a separate document, and there was a specific list of the facts for the court to judicially notice.  The defendant's fact for judicial notice is "the alleged elements of Plaintiff's concept are common and prevalent."  The plaintiff's "concept" is not generally known or known at all outside of the people who read the defendant's brief, so it cannot be generally known whether the elements are common and prevalent.  There might be something there, but the defendant needs to be more specific.  Unfortunately, the defendant will likely introduce new judicially noticed facts in its reply brief where the plaintiff cannot respond, so the plaintiff needs to anticipate them here.

The reference to the word "concept" is that the plaintiff used "overall concept and feel" in the Complaint.  The copyright infringement section of this brief describes this in detail, but "total concept and feel" is a test for substantial similarity.  Again, the defendant took the quote out of context.  The defendant latched on to the word "concept" and went on a lengthy rant about how a "concept" is not copyrightable. The plaintiff did not copyright a concept.  The plaintiff copyrighted the game as an audiovisual work and the computer code as a literary work.  The plaintiff's copyright registration is sufficient at this stage to prove validity.  If the judicial noticed facts are only to show that the "concept" is not copyrightable, then those facts are irrelevant.

As will be described later, defendant wanted to break down the plaintiff's work into uncopyrightable pieces, and then claim the work cannot be copyrighted, or that it does not have any protectable parts to compare substantial similarity.  Any work would fail that test.  A book is simply a series of uncopyrightable works.  A song is a series of uncopyrightable sounds.  The expression is copyrightable.  The judicially noticed facts are irrelevant if they are used to dissect the plaintiff's work and declare those parts as unprotectable.

The <u>Zella</u> case is from the Ninth Circuit.  In the D.C. Circuit, substantial similarity is a question of fact. <u>Sturdza v. United Arab Emirates</u>, 281 F.3d 1287, 1296 (D.C. Cir. 2002) ("substantial similarity is customarily an extremely close question of fact.") (collecting cases).  Apparently, in the Ninth Circuit, substantial similarity can be a question of law. <u>Zella</u>, 529 F. Supp. 2d at 1131 ("a court in the Northern District of California found no obstacle to addressing substantial similarity as a matter of law").  <u>Zella</u> compared a single page television show treatment, <u>Id</u> at 1126 ("a copy of a one-page treatment"), to an actual broadcast television series. <u>Id</u> at 1127 ("Rachael Ray is a talk-style show that featured some episodes with celebrities.") The treatment is copyrightable, but it mostly can only be infringed by another treatment. The expression of a treatment (words on a page) is very different from the expression of a television show (audiovisual).  Also, <u>Zella</u> dealt with substantial similarity in terms of probative similarity (proving copying) rather than actionable copying. <u>Id</u> at 1133 ("CBS Defendants do not meaningfully challenge Plaintiffs' allegations of access because, even if access is present, Plaintiffs cannot state a claim if substantial similarity is lacking.").  Even in the Ninth Circuit, <u>Zella</u> does not stand for the proposition that a court can decide the substantial similarity as a matter of law for two video games where there was direct evidence of actual copying.

### 3.3.5.   The movie evidence is improper.

The defendant did not even attempt to request judicial notice for the purported screenshots of the movie The Natural. <u>See</u> Voodoo's Mot. at 11.  It simply included the movie pictures.  The relevance seems to be that the plaintiff's "concept" is not copyrightable.  Again, the plaintiff copyrighted a video game (audiovisual work) and computer code (literary work), not a concept, so the fact is not relevant to a motion to dismiss.

Also, the screenshots seem to be something that should be introduced through the regular evidence process rather than judicial notice.  The defendant did not provide a source for the images, so the plaintiff cannot access them to verify that the facts are indisputable.

### 3.3.6.   The Can Knockdown judicial notice is improper.

The defendant requested judicial notice that "The Court can take judicial notice of this game being published as far back as 2011." Voodoo's Mot. at 12.  The source of the fact is a YouTube video link, but the link does not show what video existed at the link in 2011. The title and/or contents of the video could have changed.  The defendant did not request judicial notice of the image nor the game title.  The image and title are from January 2022, after the events in the Complaint.  The plaintiff cannot verify any facts about this game during the period in the Complaint.  Again, the plaintiff did not copyright a "concept", nor did he allege the defendant copied his concept, so these facts are also irrelevant at this stage.  The facts should be construed in favor of the plaintiff and his valid copyright registration.

### 3.3.7.   The plaintiff's logo image is improper evidence.

The defendant introduced a purported image of the logo for the plaintiff's game. <u>See</u> Voodoo's Mot. at 20.  The defendant did not request judicial notice nor specifically state the facts that it wanted the Court to notice from the image.

The caption for the purported image of the plaintiff's logo was "'Knocky Balls' (*see supra* n.2)". <u>Id</u>.  The related footnote gave a link to the plaintiff's website, stated "The Court may take judicial notice of statements made on a party's web site", and cited <u>Yi v. Roberts</u>, as described above.  As described above, the Court could only notice the existence of the image, but the Court could not draw any factual assertions from it.  It does seem likely that the logo is the same logo from the Google Play version (the relevant logo to this case), but the Court could not readily verify

the accuracy from the website.  Even the plaintiff would need some outside research to verify the accuracy.  Thus, the image is disputed and irrelevant, so the Court cannot take judicial notice of it.

### 3.3.8.   The defendant's logo image is improper evidence.

The defendant introduced a purported image of the logo for the defendant's game. <u>See</u> Voodoo's Mot. at 20.  The defendant did not request judicial notice nor specifically state the facts that it wanted the Court to notice from the image.

The caption for the image of the defendant's logo was "'Knock Balls' (*see supra* n. 3)." <u>Id</u>. The corresponding footnote was simply the title and link to the game's website on Google Play with a January 13, 2022 date.

The Complaint stated, "Both logos are similar. (a ball hitting 3D blocks with a cartoon splat effect.)" Compl. ¶ 99.  In other words, the defendant's logo only showed 3D blocks, but the defendant's Motion to Dismiss added 3D cans to the logo.  <u>See</u> Voodoo's Mot. at 20.  The defendant clarified, "The allegedly infringing logo depicts a yellow ball, from a three-quarters perspective, striking a stack of two blue tin cans…" <u>Id</u>.  The additional cans are likely related to the Can Knockdown game referenced in the brief. <u>Id</u> at 12.

Apparently, the defendant wanted the Court to compare the logo images and declare them unlikely to cause confusion.  The Court cannot draw and factual assertions from the image, so the image is relevant to the motion to dismiss.  The defendant's own website is not an accurate source, so the image is reasonably disputed.

**3.4. The plaintiff pled copyright infringement.**

The elements of copyright infringement are "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 361 (1991).

### 3.4.1.   The plaintiff owns a valid copyright.

The elements of proving ownership of a valid copyright are that (1) the plaintiff complied with applicable statutory formalities and (2) the work as a whole is original.  DSMC, Inc. v. Convera Corporation, 479 F. Supp. 2d 68, 81 (D.D.C. 2007) ("To show ownership of a valid copyright and therefore satisfy the first Feist prong, a plaintiff must prove that the work as a whole is original and that the plaintiff complied with applicable statutory formalities."). The defendant did not challenge that the plaintiff complied with "applicable statutory formalities."

#### 3.4.1.1.  The plaintiff's copyright registration is prima facie evidence ownership of a valid copyright.

"[A] certificate of copyright constitutes prima facie evidence of ownership of a valid copyright."  Whitehead v. Paramount Pictures Corporation, 53 F. Supp. 2d 38, 46 (D.D.C. 1999) (citing Stenograph LLC v. Bossard Associates, Inc., 144 F. 3d 96, 99 (D.C. Cir. 1998)); See 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.").

#### 3.4.1.2.  The plaintiff's work as a whole is original.

The elements of proving a work is "original" are that (1) the work was independently created by the author (as opposed to copied from other works), and (2) the work possesses at least some minimal degree of creativity. Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499

U.S. 340, 345 (1991) ("Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.").

### 3.4.1.2.1.   The plaintiff independently created the work.

The plaintiff is the author of the work, as stated in the copyright certificate. See Compl. ¶¶ 76,196. The copyright registration is *prima facie* evidence that the plaintiff independently created the video game. See 17 U.S.C. § 410(c).  Thus, the plaintiff pled independent creation.

### 3.4.1.2.2.   The work possesses at least some minimal degree of creativity.

"To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious' it might be."  Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 345 (1991) (quotations omitted).

All works can be dissected into unprotectible elements.  Books are a series of unprotectible words. The D.C. Circuit rebuked the Copyright Office for refusing the old video game Breakout because they broke the game down into uncopyrightable pieces. Audiovisual works, like video games, are a selection and arrangement of elements in a creative way, even if some elements, by themselves, do not qualify for copyright protection.  Atari Games Corporation v. Oman, 979 F.2d 242, 245 (D.C. Cir. 1992) ("An audiovisual work is analogous to the compilation of facts discussed in Feist in this critical respect: both involve a choice and ordering of elements that, in themselves, may not qualify for copyright protection; the author's *selection* and *arrangement*, however, may 'entail [the] minimal degree of creativity' needed to bring the work within the protection of the copyright laws.").  Source code is also creative as lines of computer instruction as literary text. Atari Games Corporation v. Nintendo of America Inc., 975 F.2d 832, 840 (Fed. Cir. 1992)

("Nintendo independently created the 10NES program and exercised creativity in the selection and arrangement of its instruction lines.")

### 3.4.1.2.3. "Concept and feel" is a test for similarity and its use in the Complaint does not invalidate the plaintiff's copyright registration.

The defendant spent many pages complaining that the plaintiff's copyright is invalid because he used the phrase "overall …concept and feel" to describe the substantial similarities between the works, and the plaintiff cannot copyright a "concept."  See Voodoo's Mot. Section II.A. However, "concept and feel" is part of the test for substantial similarity.   Atkins v. Fischer, 331 F.3d 988, 993 (D.C. Cir. 2003)("When determining similarity, courts are to look at the 'total concept and feel' of the" works)(quoting Hamil America, Inc. v. GFI, 193 F.3d 92, 102 (2d Cir. 1999)); Id at 993-94 ("it is the similarities, rather than the differences, that inform whether the 'total concept and feel' of the works and their 'aesthetic appeal' is the same.").  "Concept and feel" is the same phrase the plaintiff used in the Complaint. See Compl. ¶ 200 ("the overall look, concept and feel of the games are the same.").  Neither the D.C. Circuit Court nor the plaintiff implied that concepts alone can be copyrighted, and the use of the phrase in the Complaint does not invalidate the plaintiff's copyright registration.

### 3.4.2. The defendant copied the constituent elements of the work that are original.

Copying is proved by showing (1) the defendants actually copied the plaintiff's work (actual copying) and (2) the defendant's work is "substantially similar" to protectible elements of the plaintiff's work (actionable copying). Sturdza v. United Arab Emirates, 281 F. 3d 1287, 1295 (D.C. Cir. 2002) ("The plaintiff must show not only that the defendant actually copied the plaintiff's work, but also that the defendant's work is 'substantially similar' to protectible elements of the plaintiff's work.").  "The first sub-element is generally referred to as 'actual' or 'factual' copying

and the second is generally referred to as 'improper' or 'actionable' copying." Prunté v. Universal Music Group, 563 F. Supp. 2d 41, 43 (D.D.C 2008).

### 3.4.2.1. The plaintiff pled direct evidence of actual copying of the entire game.

The plaintiff pled that it is possible for the defendant to unpack the plaintiff's video game and retrieve the original source code and game files. See Compl. ¶ 43 ("Software can unpack an Android APK or Tizen TPK....A developer can easily get the original source code and all the other files from a Unity game built for Android, Tizen or Windows.").  In a section of the Complaint called, "Direct evidence Knock Balls copied Knocky Balls", the plaintiff pled that he found remnants of this unpacking process in the defendant's game, which directly proves the defendant copied his video game. See Id ¶ 74 ("Stallard unpacked Voodoo's APK for Knock Balls and found a Tizen.dll. The Tizen.dll file is only needed for Tizen development. This file would not be there for Voodoo"). Then, the plaintiff pled that the defendant used this process to unpack the plaintiff's video game, and the defendant used the original source code and files to make its infringing video game with a nearly identical title. See Id ¶ 75 ("Knock Balls copied Stallard's Knocky Balls game, using the methods described above. The Tizen.dll was a leftover remnant of the copying process.")

The defendant admits that the plaintiff pled direct evidence of copying, but the defendant claims the plaintiff only pled direct evidence of copying source code. See Voodoo's Mot. at 16 ("Plaintiff's sole claim of 'direct evidence' is his allegation of copied source code.").  However, the plaintiff pled the defendant copied "the original source code and all the other files". Compl. ¶ 43.  That is all of the files needed to build the game, so the plaintiff pled direct evidence that the defendant copied the entire game, not just the computer code.

### 3.4.2.1.1.  Source code is copyrightable as a literary work.

The defendant claimed that copying the source code is legal because the plaintiff cannot copyright source code. <u>See</u> Voodoo's Mot. at 16. However, source code is copyrightable as a literary work. <u>DSMC, Inc. v. Convera Corporation</u>, 479 F. Supp. 2d 68, 81 (D.D.C. 2007) ("Copyright protection extends not only to the literal elements of a computer program — source code and object code").  Again, the defendant cited case law out of context in the <u>Atari</u> case, <u>see</u> Voodoo's Mot. at 15, but, in the <u>Atari</u> case, the Federal Circuit determined that Atari infringed Nintendo's copyrights by copying the source code deposited with the Copyright Office. <u>Atari Games Corporation v. Nintendo of America Inc.</u>, 975 F.2d 832, 847 (Fed. Cir. 1992) ("the district court did not err in determining that Nintendo is likely to show successfully that Atari infringed the 10NES copyright by obtaining and copying the source code from the Copyright Office."). Ironically, that is very similar to what the defendant did to the plaintiff, and Atari and Nintendo are also both video game developers.  Lines of code, as literary text, are the protectable creative expression, and that is what the defendant extracted and copied. <u>Id</u> at 840 ("this court finds no error in the district court's conclusion that 10NES contains protectable expression. Nintendo independently created the 10NES program and exercised creativity in the selection and arrangement of its instruction lines.")

Again, the defendant took case law out of context. The defendant said, in <u>Google v. Oracle</u>, the Supreme Court said source code is not a creative expression, but <u>Google</u> was primary a case of fair use. <u>Google LLC v. Oracle America, Inc.</u>, 141 S. Ct. 1183, 1200-1201 (2021) ("We turn now to the basic legal question before us: Was Google's copying of the Sun Java API, specifically its use of the declaring code and organizational structure for 37 packages of that API, a 'fair use.'") Thus, the Supreme Court already agreed there was copying.  One of the factors the Supreme Court

used to determine fair use was "The Amount and Substantiality of the Portion Used." Id at 1204. Fair use is the context of the quote "the material copied captures little of the material's creative expression." Id at 1205. The defendant did not claim fair use, nor should it.

### 3.4.2.1.2.   The plaintiff pled that he wrote the source code for the game.

The defendant and the plaintiff used the same game creation software called Unity, so the defendant claimed that the plaintiff pled that Unity wrote the source code, not the plaintiff. See Voodoo's Mot. at 16 ("the code is alleged to be generated by the Unity engine and not by the game developers"). The plaintiff did not plead that Unity generates C# code. The plaintiff pled that "Unity uses the C# programming language." Compl. ¶ 43. In other words, programmers write games using C#. "Compilers compile C# code into apps" Id ¶ 39. Thus, the plaintiff wrote his game with C#, Unity's compiler compiled it into the plaintiff's game, and the defendant unpacked the plaintiff's game and obtained the plaintiff's C# code and game files. Then the defendant copied the plaintiff's C# code and game files to make an infringing game with a nearly identical title, but the defendant accidentally left some remnants of the copying that proves the copying. See Id ¶ 75. The plaintiff did not plead that it is possible to obtain Unity's source code or that the Unity generates source code. Unity is not a codeless game creator, but even codeless game engines need creative inputs.

### 3.4.2.2.  The plaintiff pled indirect evidence of actual copying.

Indirect evidence of actual copying can be proved by showing (1) the defendant had access to the plaintiff's work and (2) the defendant's work is substantially (probatively) similar to the plaintiff's work. Reader's Digest Association, Inc. v. Conservative Digest, Inc., 821 F. 2d 800, 806 (D.C. Cir. 1987)("A court may find copying in a copyright infringement action if the defendant's

work is substantially similar to the plaintiff's work and the defendant had access to the plaintiff's work.")

### 3.4.2.2.1.  The defendant had access to the copyrighted work.

"Access to copyrighted work may exist when the defendant had an opportunity to view the item protected by the copyright." Columbia Pictures Industries, Inc. v. Landa, 974 F. Supp. 1, 11 (D.D.C. 1997) (citing Wildlife Express Corporation v. Carol Wright Sales, Inc., 18 F. 3d 502, 508 n. 5 (7th Cir. 1994)).  A "bare possibility of access is not enough; rather [the plaintiff] must prove that the defendants had a reasonable possibility of viewing his work". Scott-Blanton v. Universal City Studios Productions LLLP, 539 F. Supp. 2d 191, 200 (D.D.C. 2008) (quoting Moore v. Columbia Pictures Industries, Inc., 972 F.2d 939, 942 (8th Cir. 1992))

Knocky Balls was available worldwide for digital download on major video game marketplaces, including Android (Google Play, Amazon Appstore), Tizen (Tizen Store) and Windows (Microsoft Store, itch.io, Game Jolt).  See Compl. ¶ 198.  The defendant also distributed their game on Google Play. Id Compl. ¶ 73.  The plaintiff distributed his game on the same marketplace, Google Play, that the defendant distributes their games, so that is sufficient to plead that the defendant had "a reasonable possibility of viewing" the game.  Also, there are the allegations of direct evidence of actual copying that prove access.

### 3.4.2.2.2.  The works are substantially (probatively) similar.

This test has also been called "probative similarity."  "Probative similarities are similarities that 'would not be expected to arise independently' in the normal course of events, and thus 'give rise to an inference of actual copying' on the part of the defendant." Prunté v. Universal Music Group, 563 F. Supp. 2d 41, 43 (D.D.C. 2008) (quoting Johnson v. Gordon, 409 F. 3d 12, 18 (1st

Cir. 2005) and 4 Melville B. Nimmer & David Nimmer, Nimmer On Copyright § 13.01[B] at 13-13 (2008))

The fact that the title of the game differs by only 1 letter - Knock Balls and Knocky Balls is a probative similarity.  The logos are also similar (See Compl. ¶ 199), and they are both sold in the same Google Play marketplace.  See Id ¶¶ 73, 198.   The plaintiff pled various substantial similarities between the games. See Id ¶¶ 198-201.

A game, in the same marketplace, with a similar logo, an almost identical title, and similar audiovisual material would not be expected to arise independently.  The title, Knocky Balls, is fanciful, and would not be expected to arise independently, especially when attached to such a similar game.  Thus, the plaintiff pled sufficient probative similarities.

### 3.4.2.3. The plaintiff pled unlawful appropriation (actionable copying).

"The substantial similarity inquiry consists of two steps. The first requires identifying which aspects of the artist's work, if any, are protectible by copyright." Sturdza v. United Arab Emirates, 281 F. 3d 1287, 1295 (D.C. Cir. 2002) (quoting Feist Publications, Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 350 (1991)).   "Once unprotectible elements such as ideas and scènes à faire are excluded, the next step of the inquiry involves determining whether the allegedly infringing work is 'substantially similar' to protectible elements of the artist's work." Id at 1296 (quoting Country Kids 'N Slicks, Inc. v. Sheen, 77 F. 3d 1280, 1288 (10th Cir. 1996))

Thus, the elements of substantial similarity are (1) identifying which aspects of the plaintiff's work are protectible by copyright. (2) determining whether the allegedly infringing work is "substantially similar" to protectible elements of the plaintiff's work.

### 3.4.2.3.1.   The audiovisual material and source code of the plaintiff's work are protectible by copyright.

"Video games, case law confirms, rank as 'audiovisual works' that may qualify for copyright protection."  Atari Games Corporation v. Oman, 888 F. 2d 878, 882 (D.C. Cir. 1989).  "Copyright protection extends not only to the literal elements of a computer program — source code and object code — but also to the program's nonliteral elements, which are 'the products that are generated by the code's interaction with the computer hardware and operating program(s).'" DSMC, Inc. v. Convera Corporation, 479 F. Supp. 2d 68, 81 (D.D.C. 2007). "Source code is a symbolic language that humans can read, whereas object code is the translation of the source code into a series of zeros and ones that is readable by a computer." Id at 81 n.11 (quoting Mitek Holdings, Inc. v. Arce Engineering Company, Inc., 89 F.3d 1548, 1555 n. 15 (11th Cir. 1996)).  Thus, the audiovisual material and the source code are protectible by copyright.

### 3.4.2.3.2.   The defendant's work is substantially similar to the plaintiff's work.

"'Substantial similarity' exists where 'the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value.'" Sturdza v. United Arab Emirates, 281 F. 3d 1287, 1296 (D.C. Cir. 2002) (quoting Country Kids 'N Slicks, Inc. v. Sheen, 77 F. 3d 1280, 1288 (10th Cir. 1996)).  "Substantial similarity turns on the perception of the 'ordinary reasonable person' or 'ordinary observer,'" Id.   "The substantial similarity determination requires comparison not only of the two works' individual elements in isolation, but also of their 'overall look and feel.'" Id (quoting Boisson v. Banian, Ltd., 273 F.3d 262, 272 (2d Cir.2001)). "An allegedly infringing work is considered substantially similar to a copyrighted work if the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook

them, and regard their aesthetic appeal as the same. Put another way, the touchstone of the analysis is the overall similarities rather than the minute differences between the two works." Id (quotations omitted).

"The question is whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" Atkins v. Fischer, 331 F.3d 988, 993 (D.C. Cir. 2003) (quoting Hamil America, Inc. v. GFI, 193 F.3d 92, 100 (2d Cir. 1999)).  "When comparing the designs, it is not sufficient to dissect separate components and dissimilarities. The original way that the author 'selected, coordinated, and arranged the elements' of her work is the focus of the court." Id.

To perform this analysis in a motion to dismiss, the Court would need to compare the audio and visuals of the two games and also their source code.  This seems inappropriate for a motion to dismiss, which merely tests the sufficiency of the Complaint.  The analysis should not be made based on single cherrypicked unsubstantiated screenshots improperly introduced into the record without even a formal request for judicial notice.

Substantial similarity is a highly subjective question of fact for the jury to decide, so it is inappropriate for the Court to determine it even at the summary judgment stage, let alone the motion to dismiss stage.  Sturdza v. United Arab Emirates, 281 F.3d 1287, 1296 (D.C. Cir. 2002) ("substantial similarity is customarily an extremely close question of fact, summary judgment has traditionally been frowned upon in copyright litigation.") (collecting cases); Nichols v. Club for Growth Action, 235 F. Supp. 3d 289, 294 (D.D.C. 2017) ("Substantial similarity is a question that should be decided either by a factfinder at trial or, in some cases, in the context of a motion for

summary judgment, not on a motion to dismiss for failure to state a claim under Rule 12(b)(6).")(quoting <u>Prunté v. Universal Music Group</u>, 484 F. Supp. 2d 32, 41 (D.D.C. 2007)).

As described above, the plaintiff pled direct evidence of copying.  Then the plaintiff pled "Just like Knock Balls is still a counterfeit of Knocky Balls even with a trivial change to the title (removing the "y"), Knock Balls is Knocky Balls with some trivial changes. Knock Balls and Knocky Balls are still substantially similar enough to rise to the level of actionable copyright infringement." Compl ¶ 203.  The plaintiff also pled that an "ordinary reasonable person" (Google employee) removed the plaintiff's game from Google Play for impersonation of the defendant's game. Compl ¶ 219. That should be enough to sufficiently plead substantial similarity.

## 3.5. The plaintiff pled trademark infringement.

 "To establish a trademark infringement claim under the Lanham Act … This inquiry boils down to two questions: (1) does [the plaintiff] own 'a valid mark entitled to protection' and (2) is [the defendant]'s 'use of it ... likely to cause confusion.'" <u>American Society for Testing and Materials v. Public.Resource.Org, Inc.</u>, 896 F.3d 437, 455-56 (D.C. Cir. 2018) (quoting <u>Gruner + Jahr USA Publishing v. Meredith Corporation</u>, 991 F.2d 1072, 1075 (2d Cir. 1993))

### 3.5.1.   The plaintiff's word mark is valid.

"Registration of a mark under § 2 of the Lanham Act, 15 U.S.C. § 1052… entitles the owner to a presumption that its mark is valid." <u>Wal-Mart Stores, Inc. v. Samara Brothers, Inc.</u>, 529 U.S. 205, 209 (2000) (citing 15 U.S.C. § 1057(b))

### 3.5.2.   The plaintiff's word mark is entitled to protection.

"The existence and extent of trademark protection for a particular term depends on that term's inherent distinctiveness. Courts have identified four general categories of terms: (1) generic, (2)

descriptive, (3) suggestive, and (4) arbitrary or fanciful." Blinded Veterans Association v. Blinded American Veterans Foundation, 872 F.2d 1035, 1039 (D.C. Cir. 1989).

The defendant thinks the term Knocky Balls is generic, and it did not dispute that "knocky" is not in the dictionary. Rather, the defendant said that "knock" is in the dictionary, and "knock balls" is a generic term for knocking things down with balls. The plaintiff thinks it requires imagination to conclude that "knocky balls" describes "knocking things down with balls." "A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods." Id at 1040 (quoting Stix Products, Inc. v. United Merchants & Manufacturers, Inc., 295 F. Supp. 479, 488 (S.D.N.Y. 1968)). According to the defendant's logic, Knock Balls is suggestive. "Because suggestive terms only indirectly convey an impression of the products or services, they are considered inherently distinctive; suggestive terms therefore are protectable without proof of secondary meaning." Id.

"A fanciful term is one coined for the purpose of serving as a trademark." Id. The plaintiff's word mark, Knocky Balls, "was coined for the specific purpose of being used as a trademark for the video game." Compl. ¶ 179. The plaintiff's mark is distinctive whether it is suggestive or fanciful.

### 3.5.2.1. The plaintiff's trademark registration is prima facie evidence of distinctiveness.

A trademark registration with the United States Patent and Trademark Office ("USPTO") "is prima facie evidence of the plaintiff's exclusive right to use the mark for the services described in the registration statement and that the 'mark is distinctive of [the plaintiff's] products in commerce.'" Malarkey-Taylor Associates, Inc. v. Cellular Telecommunication Industry

<u>Association</u>, 929 F. Supp. 473, 476 (D.D.C. 1996) (quoting <u>American Association for the</u>
<u>Advancement of Science v. The Hearst Corporation</u>, 498 F. Supp. 244, 254 (D.D.C. 1980)).

### 3.5.3. There is a substantial likelihood of confusion between the plaintiffs' mark and the defendant's mark.

In determining likelihood of confusion, "[f]actors considered include the [1]strength of the
mark, [2]the similarity of the marks, [3]the proximity of the goods, [4]the similarity of the parties'
marketing channels, [5]evidence of actual confusion, [6]the defendant's intent in adopting the
mark, [7]the quality of the defendant's product, and [8]the sophistication of the buyers." <u>American</u>
<u>Society for Testing and Materials v. Public.Resource.Org, Inc.</u>, 896 F. 3d 437, 456 (D.C. Cir. 2018)
(citing 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §§ 24:31-24:43
(5th ed. 2018))(numbers added).

#### 3.5.3.1. The plaintiff's mark is strong and inherently distinctive.

"The plaintiff's mark is fanciful or at least suggestive, so it is strong and distinctive.

#### 3.5.3.2. The marks are similar.

Knock Balls is Knocky Balls, but without the "y".  The marks are strikingly similar.  They are
both displayed in the same font in the same manner in the same store (Google Play). <u>See</u> Compl.
¶ 262.

#### 3.5.3.3. The goods are proximate, and the markets are the same.

The defendant claimed that the plaintiff did not allege proximity of products.  The plaintiff's
video game and the defendant's game are both mobile video games distributed in Google Play.
<u>See </u>Compl. ¶¶ 26-27.

### 3.5.3.4.  Evidence of actual confusion.

The defendant claimed that the plaintiff did not allege proximity of products.  Google removed the plaintiff's game for impersonating the defendant's game. See Compl. ¶ 102.

### 3.5.3.5.  The defendant's intent in adopting the mark.

"This factor considers whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." Globalaw Limited v. Carmon & Carmon Law Office, 452 F. Supp. 2d 1, 53 (D.D.C. 2006) (quoting Arrow Fastener Co., Inc. v. The Stanley Works, 59 F. 3d 384, 397 (2nd Cir. 1995)).  "The intent of the junior user in choosing his mark and name is an important factor in determining the likelihood of confusion if it is wrongful on the part of the defendants." Sears, Roebuck and Co. v. Sears Financial Network, Inc., 576 F. Supp. 857, 863 (D.D.C. 1983). The defendant adopted the mark when it copied the plaintiff's game to publish it in the same marketplace (Google Play).

### 3.5.3.6.  The quality of the defendant's product.

"This factor is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." Globalaw Limited v. Carmon & Carmon Law Office, 452 F. Supp. 2d 1, 55 (D.D.C. 2006) (quoting Arrow Fastener Co., Inc. v. The Stanley Works, 59 F. 3d 384, 398 (2nd Cir. 1995)). The plaintiff pled the defendant's game was poor quality because it was bloated with intrusive ads. See Compl. ¶ 180.

### 3.5.3.7. The sophistication of the buyers.

"In assessing this factor, one must look to the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." Globalaw Limited v. Carmon & Carmon Law Office, 452 F. Supp. 2d 1, 55 (D.D.C. 2006) (quoting Merriam-Webster, Inc. v. Random

House, Inc., 35 F. 3d 65, 72 (2nd Cir. 1994)). "The more sophisticated the consumers of the relevant products, the less likely it is that a court will find likelihood of confusion." National Information Corp. v. The Kiplinger Washington Editors, Inc., 771 F. Supp. 460, 465 (D.D.C. 1991). The plaintiff pled that the buyers are not sophisticated. See Compl. ¶ 179.

### 3.6. The plaintiff pled RICO

#### 3.6.1.   The plaintiff has RICO standing.

The defendant claimed the plaintiff did not plead damage to business or property because he did not plead monetary loss.  The defendant's quote only states "the injury to business or property element of section 1964(c) can be satisfied by allegations and proof of actual monetary loss." Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000).  The quote says "can be" satisfied, not "must be" satisfied.  The statute does not require monetary loss, or it would say monetary loss.  Copyrighted works are property, and copyright infringement damages the intellectual property and the business that owns that property.  "Trademark infringement 'by its very nature causes irreparable injury.'" Partido Revolucionario Dominicano v. Partido Revolucionario, 312 F. Supp. 2d 1, 15 (D.D.C. 2004).  The defendant also damaged the plaintiff by removing his game from Google Play and giving his developer account a "strike" that could cause termination.

#### 3.6.2.   The plaintiff pled a RICO enterprise.

The defendant agreed that the plaintiff pled an enterprise including the defendant and the Goldman defendants, but the defendant claimed the plaintiff's alleged enterprise did not "constitute an ongoing organization that functions as a continuing unit.."  Voodoo's Mot. at 26. The plaintiff pled the enterprise "is involved in the same interstate and foreign commerce as Voodoo." Compl. ¶ 238. The defendants "continue to maintain this criminal enterprise through criminal copyright infringement, trafficking in goods with a counterfeit mark, and wire fraud." Id

¶ 239.  This is a point of contention between the parties.  The defendant claims that the Goldman defendants were naive innocent "minority" shareholders, who did nothing more than give the defendant $200 million, but the plaintiff claims the Goldman defendants were sophisticated active participants, who hid and downplayed their true involvement.  The plaintiff's claim is plausible.

### 3.6.3.   The plaintiff pled the defendant conducted the enterprise's affairs.

Again, the defendant took a quote out of context.  The defendant said "'Conduct' entails a 'part in directing' 'the enterprise's affairs,' not merely the defendant's 'own affairs.'"  Voodoo's Mot. at 26-27 (quoting Reves v. Ernst & Young, 507 U.S. 170, 179 (1993)).  The full quote is "§ 1962(c) cannot be interpreted to reach complete 'outsiders,' because liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." Reves v. Ernst Young, 507 U.S. 170, 185 (1993).  The defendant claimed that the Supreme Court said there cannot be an overlap between the enterprise's affairs and the defendant's affairs.  In fact, the Supreme Court said the opposite.  The test is whether the defendant participated in the enterprise's affairs, so the defendant's own affairs must be part of the enterprise's affairs.  Otherwise, the defendant is a complete outsider to the enterprise.  The statement that "enterprise is involved in the same interstate and foreign commerce as" the defendant, see Voodoo's Mot. at 27, is necessary to the claim, not fatal to it.

### 3.6.4.   The plaintiff pled a pattern of racketeering activity.

"To prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Telephone Co., 492 US 229, 239 (1989).  The defendant claimed that the plaintiff could not plead a pattern of racketeering if he only pled wire fraud because the statute requires "at least two predicate offenses."  "Two offenses" does not mean two

types of offenses.  It means two acts, but the plaintiff pled a pattern of criminal copyright infringement, Compl. ¶¶ 44-71, 79-80 and wire fraud Compl. ¶¶ 82-114.

### 3.6.4.1. The plaintiff pled wire fraud.

Again, the plaintiff misquoted the Complaint. The defendant said, "But Plaintiff expressly admits he cannot plead this alleged 'fraud' with the particularity required." Voodoo's Mot. at 28. The plaintiff said "it is not practical to list each fake review of the millions of reviews for Voodoo's games. [The plaintiff] included the contents and date of a fake review in the Wire Fraud." Compl. ¶ 218.  In other words, the plaintiff had potentially millions of fake reviews, but only listed a few example fake reviews at the pleading stage to give the defendant notice. The plaintiff pled two other fake reviews, as examples. See Compl. ¶ 97. At trial, "the liability will be determined by grouping the Internet Protocol ("IP") addresses of the ratings, reviews and installs by Google and Apple to detect unusual patterns from possible click farm and/or bot locations." Id.  The plaintiff pled the proper pattern and continuing activity by alleging that the defendant uses click farms and bots to post fake ratings and reviews.  In other words, "the predicates themselves involve a distinct threat of such activity; because they are part of the regular way of doing business for an ongoing entity such as a criminal association or legitimate business" H. J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 230 (1989).

The plaintiff pled the fake review with particularity. See Compl. ¶ 29 ("On December 12, 2018, Voodoo used a sock puppet account called "Mildred Mullings" to give Knocky Balls a 2 out of 5 rating").

### 3.6.5.  The plaintiff pled RICO conspiracy.

The defendant only contested the RICO conspiracy in that the plaintiff failed to plead it if he failed to plead the other RICO claims.  The plaintiff pled the RICO claims, as described above.

### 3.7. The plaintiff pled antitrust claims.

#### 3.7.1.   The plaintiff pled antitrust injury.

"Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). "If the acquisitions here were unlawful, it is because they brought a 'deep pocket' parent into a market of 'pygmies.'" Id at 487.  In Brunswick, the injury "bears no relationship to the size of either the acquiring company or its competitors." Id at 487.

In the Complaint, the plaintiff actually referenced the "deep pocket parent" in a "market of pygmies" analogy and showed how this analogy fit the Goldman Sachs defendants. See Compl. ¶¶ 163-166.  In Brunswick, Pueblo "would have suffered the identical 'loss'" if Brunswick was a "'shallow pocket' parent." Brunswick, 429 U.S. at 487.  In this case, an infringing game funded by a shallow pocket parent might not even be discoverable in Google Play and might not do any damage to the plaintiff. Thus, the plaintiff pled that the size increased the damage to the plaintiff. See Compl. ¶ 238.

#### 3.7.2.   The plaintiff pled a combination.

Again, the defendant quoted a case out of context when the case had the words the defendant liked. The defendant said acquiring stake in a company cannot be anticompetitive because it is "a routine transaction with 'an independent business justification,' not a restraint of trade". Voodoo's Mot at 30; In re McCormick, 217 F. Supp. 3d 124, 132 (D.D.C. 2016).  The full quote is "courts dismiss Section 1 complaints when there is an independent business justification for the observed conduct and no basis for rejecting it as the explanation for the conduct" Id.  The "independent business justification" is a test for determining "conduct that could just as well be independent

39

action." Id (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007)).  In other words, it is used to determine whether the conduct was part of a combination or simply independent action without a combination.

A company acquiring a stake in a company is not independent action.  It is two companies combining.   The test does not apply.   In this case, there clearly is a combination and not "independent action."  The Goldman defendants without question have a stake in the defendant. The question is whether that combination restrains trade.  The "independent business justification" evaluates the existence of a combination, not restraint of trade. The defendant did not state why it thinks there is not a restraint of trade.  Investments (mergers and acquisitions) can restrain trade.

### 3.7.3.   The plaintiff pled market power.

The defendant cited a case to show the plaintiff needed to plead market power. Voodoo's Mot. at 30; In re McCormick, 217 F. Supp. 3d 124, 137 (D.D.C. 2016). The actual quote is the plaintiff needs to "show that the defendants have market power in that market." Id.  In this case, the market power comes the over trillion dollars in assets from the Goldman defendants. Compl. ¶ 163.  Both parties do not need to have dominant market power when the combination involves a "deep pocket" parent in a market of "pygmies." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 478 (1977). The plaintiff described how the defendant dominated the market through the market power of its deep pocket parent. Compl. ¶¶ 167-175. The defendant "obtained a roughly 25 percent concentration in a highly fragmented and difficult to enter market, and 50 to 60 percent concentration of the top games in that market." Compl. ¶ 179.

### 3.7.4.   The plaintiff pled harm to competition

"Taken as a whole, the legislative history illuminates congressional concern with the protection of competition, not competitors, and its desire to restrain mergers only to the extent that such

combinations may tend to lessen competition." <u>Brown Shoe Co. v. United States</u>, 370 US 294, 320 (1962).  The combination is only illegal if it damages competition rather than competitors, like the plaintiff.  An example of this is that the Supreme Court said a deep pocket parent (Goldman Sachs) in a market of pygmies is illegal antitrust behavior.  <u>Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.</u>, 429 U.S. 477, 487 (1977) ("If the acquisitions here were unlawful, it is because they brought a "deep pocket" parent into a market of 'pygmies.'").  That is what the plaintiff pled, even using the same analogy. <u>See</u> Compl. ¶¶ 163-166**.**

### 3.8. The plaintiff pled common law claims (not state law claims)

#### 3.8.1.   D.C. law applies by default. Choice of law is not a pass-fail test.

Again, the defendant took case law regarding choice of law out of context. <u>See</u> Voodoo's Mot at 31.  "[A] court need not determine which of the competing jurisdiction's law to apply unless it first determines that a relevant conflict in fact exists." <u>Smith v. Summers</u>, 334 F. Supp. 3d 339, 342 (D.D.C. 2018). In determining choice of law, "the first step is to determine whether a 'true conflict' exists — that is, whether more than one jurisdiction has a potential interest in having its law applied and, if so, whether the law of the competing jurisdictions is different." <u>Geico v. Fetisoff</u>, 958 F.2d 1137, 1141 (D.C. Cir. 1992) (collecting cases). If there is not a "true conflict" of law, then D.C. law applies. <u>Id</u> ("Thus, there is no 'true conflict' and we apply the law of the District of Columbia by default.") (collecting citations).

Then, if there is a "true conflict", the Court applies the choice of law test quoted by the defendant. <u>Aref v. Lynch</u>, 833 F.3d 242, 261–62 (D.C. Cir. 2016). In <u>Aref</u>, the parties raised of conflict of law issue. <u>Id</u> at 261 ("They do not agree, however, about which state's law should govern."). However, there was not a "true conflict" of laws because the laws were the same. <u>Id</u> at

262 ("We need not determine which state's law applies with respect to survivorship, however, because the result is the same under all three").

In this case, the defendant did not allege a conflict of laws.  Instead, the defendant said no laws apply.  This cannot happen because D.C. law applies by default.  Erie Railroad Company v. Tompkins, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State."); Geico v. Fetisoff, 958 F.2d at 1141 ("we apply the law of the District of Columbia by default").  The choice of law test is not a pass-fail test. The common law claims are typical claims (fraud/misrepresentation, tortious interference, unjust enrichment, conspiracy) that are likely the same in any jurisdiction, so there is not a "true conflict" of law.

### 3.8.2.   The plaintiff pled fraud with particularity.

The defendant claimed the plaintiff did not plead fraud with particularity. This is not true. The plaintiff pled the date, webpage, content, and damage of the defendant's false review of the plaintiff's game.  See Compl. ¶¶ 88-90, 271-22. The plaintiff pled the dates and places that the defendant falsely uploaded their infringing game to Google Play and the App Store in violation of their policies on infringement, allowing the defendant to distribute infringing material through legitimate marketplaces.  Id ¶¶ 82-87, 269-270.  The plaintiff pled the approximate date (within 1 to 2 days) that the defendant falsely reported the plaintiff's game to Google for impersonation causing removal of the plaintiff's game and risking permanent loss of his developer account. Id ¶¶ 101-103, 273-274.

### 3.8.3.   Should the Court hear common law claims without federal claims?

The defendant quoted, "[I]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—

judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Cherry v. District of Columbia, 170 F. Supp. 3d 46, 51 (D.D.C. 2016) (quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988). The Court in Cherry tolled the statute of limitations, so Cherry could file the state claims in state court, after the D.C. defendants removed the case from state to federal court. Id ("the period of limitations for any of these District of Columbia law claims "shall be tolled while the claim is pending and for a period of 30 days"). That possibility was "critical to the Court's decision to dismiss the non-federal claims." Id.  In Cohill, the court also remanded the case to state court. Carnegie-Mellon University v. Cohill, 484 U.S. 343, 345 (1988) ("remand a properly removed case to state court").

In most cases of dismissal of federal claims, the state court can hear the state law and common law claims. When a court remands (or dismisses without prejudice) the state and common law claims, the claims do not go away.  The state court tries the claims.  The defendant has a one-track mind and only considered dismissal at all costs. The rest of us actually need to consider where the claims belong using the "balance of factors" test. The defendant does not care, so it moved that the Court dismiss the common law claims "with prejudice." Voodoo's Mot. at 32.  Obviously, if the Court based the dismissal on lack of jurisdiction, the Court would dismiss the common law claims without prejudice because the Court would not have jurisdiction to dispose the claims on the merits.

It seems unlikely that the defendant would want to hear the foreign commerce common law claims in local state court.  If the plaintiff filed the claims in state court, the defendant would want to remove the claims to federal court because corporations tend to favor federal over state

court. Also, in the "choice of law" section, the defendant said that no state law applies to this case. If state laws cannot apply, then state court cannot hear the claims, and it would be inappropriate to dismiss them.

The plaintiff will allow the defendant to decide where it wants to hear the common law claims if the Court dismisses the federal statute claims.  If that forum is a viable option, the plaintiff will file the claims there.  Otherwise, this Court is an appropriate forum because, like most foreign corporations, the defendant did not specifically target any particular state, but rather the United States as a whole (hence the use of Fed. R. Civ. P 4(k)(2) for personal jurisdiction). The defendant learned this lesson, when it tried to sue SayGames (from Belarus) in United States courts, but had its case dismissed for lack of personal jurisdiction. Voodoo SAS v. SayGames LLC, Case No. 19-cv-07480-BLF, (N.D. Cal. Jul. 7, 2020). It is also relevant that most state courts do not allow *pro se* plaintiffs to file electronically.

### 4.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the defendant's Motion to Dismiss.

Dated: February 14, 2022                          Respectfully submitted,


/s/ Joseph A. Stallard

Joseph A. Stallard
13450 Farmcrest Ct. Apt 636
Herndon, VA 20171
(703) 310-7049
AndyStallard@outlook.com
*Pro se Plaintiff*