# Exhibit B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JOSEPH A. STALLARD,

     Plaintiff,

          v.

GOLDMAN SACHS GROUP, INC.,
GOLDMAN SACHS & CO., LLC, and
VOODOO SAS,

     Defendants.

No. 1:20-cv-02703-RBW

**[CORRECTED] REPLY MEMORANDUM BY DEFENDANT VOODOO SAS
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

   I.  Plaintiff Misapplies the Jurisdictional Rules. ..................................................... 2

   II.  The Court Should Dismiss Plaintiff's  Copyright and Trademark Claims ..................... 5

      A.  The Court Is Not Barred from Looking at Material Described in the Complaint. ........................................................................................ 6

      B.  Plaintiff's Failure to Plead Copying of Any Protectible Element Requires Dismissal of His Copyright Claims. .................................................. 11

      C.  Plaintiff Cannot Bring Trademark Infringement Claims Based on a Non-Distinctive Name and Non-Existent Logo. ........................................... 16

   III.  The Court Should Dismiss Plaintiff's RICO and Antitrust Claims. ........................ ~~20~~**21**

CONCLUSION .................................................................................................... ~~23~~**24**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*,
   747 F.2d 81 (2d Cir. 1984).....................................................................................18

*Al-Tamimi v. Adelson*,
   916 F.3d 1 (D.C. Cir. 2019).............................................................................21, 22

*Alfwear, Inc. v. Mast-Jägermeister US, Inc.*,
   No. 12-0936, 2021 WL 364109 (D. Ut. Feb. 3, 2021)...........................................17

*Allen v. Russian Federation*,
   522 F. Supp. 2d 167 (D.D.C. 2007) .......................................................................4

*Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*,
   672 F.2d 607 (7th Cir. 1982) ................................................................................14

*Atkins v. Fischer*,
   331 F.3d 988 (D.C. Cir. 2003) ...............................................................................11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................... 7, 8, 9,12, 13

*Bibiyan v. Marjan TV Net., Ltd.*,
   No. 18-1866, 2019 WL 422664 (C.D. Cal. Feb. 4, 2019) .......................................3

*Brantley v. Epic Games, Inc.*,
   463 F. Supp. 3d 616 (D. Md. 2020) .........................................................................9

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977)...............................................................22, 23, 23, 24

*Buchanan v. Sony Music Entm't*,
   No. 18-3028, 2020 WL 2735592 (D.D.C. May 26, 2020)...........................8, 10–13

*Capcom Co. v. MKR Grp., Inc.*,
   No. 08-0904, 2008 U.S. Dist. LEXIS 83836 (N.D. Cal. Oct. 10, 2008) ..................9

*ConAgra, Inc. v. Geo. A. Hormel & Co.*,
   784 F. Supp. 700 (D. Neb. 1992) ...........................................................................18

*DaVinci Editrice S.R.L. v. ZiKo Games, LLC*,
   183 F. Supp. 3d 820 (S.D. Tex. 2016) .........................................................13, 15–16

*DBW Partners, LLC v. Bloomberg, L.P.*,
   No. 19-0311, 2019 WL 5892489 (D.D.C. Nov. 12, 2019) (Walton, J.) .................................8

*Diamond Foods, Inc. v. Hottrix, LLC*,
   No. 14-3162, 2016 WL 3880797 (N.D. Cal. July 18, 2016) .....................................................9

*Diaz v. Gates*,
   420 F.3d 897 (9th Cir. 2005) .................................................................................................22

*Dranoff-Perlstein Assocs. v. Sklar*,
   967 F.2d 852 (3d Cir. 1992) ...................................................................................................17

*Evox Prods., LLC v. Cal. Rent-A-Car, Inc.*,
   2016 U.S. Dist. LEXIS 19420 (C.D. Cal. July 26, 2016) .........................................................7

*Future Proof Brands, LLC v. Molson Coors Bev. Co.*,
   982 F.3d 280 (5th Cir. 2020) ...........................................................................................17, 19

*Gaines v. Dist. of Columbia*,
   961 F. Supp. 2d 218 (D.D.C. 2013) ...................................................................................8, 13

*Gottlieb Dev. LL v. Paramount Pictures Corp.*,
   59 F. Supp. 2d 625 (S.D.N.Y. 2008)........................................................................................9

*Hudson v. AFGE*,
   308 F. Supp. 3d 388 (D.D.C. 2018) .........................................................................................7

*Hungerstation LLC v. Fast Choice LLC*,
   No. 19- 5861, 2020 WL 137160 (N.D. Cal. Jan. 13, 2020) .....................................................3

*Int'l Audiotext Network v. AT&T*,
   62 F.3d 69 (2d Cir. 1995) .........................................................................................................9

*J & J Snack Foods, Corp. v. Nestle USA, Inc.*,
   149 F. Supp. 2d 136 (D.N.J. 2001) ........................................................................................18

*Leadership Studies, Inc. v. Blanchard Training & Dev., Inc.*,
   No. 15-1831, 2016 U.S. Dist. LEXIS 28 (S.D. Cal. Mar. 4, 2016) ........................................10

*Lewis v. Gov't of the D.C.*,
   No. 15-0521, 2015 WL 8577626 (D.D.C. Dec. 9, 2015)....................................................~~20~~**21**

*Lipton v. MCI Worldcom, Inc.*,
   135 F. Supp. 2d 182 (D.D.C. 2001) .........................................................................................6

*Mwani v. bin Laden*,
   417 F.3d 1 (D.C. Cir. 2005) .................................................................................................3–5

*Newborn v. Yahoo!, Inc.*,
    391 F. Supp. 2d 181 (D.D.C. 2005) (Walton, J.) ...................................................................8

*Partido Revolucionario Dominicano v. Partido Revolucionario*,
    312 F. Supp. 2d 1 (D.D.C. 2004) ..............................................................................~~21~~**22**

*Pazarlama A.S. v. SayGames LLC*,
    No. 19-7916, ECF No. 30 (N.D. Cal. May 7, 2020) ...............................................................5

*Prunte v. Universal Music Grp., Inc.*,
    699 F. Supp. 2d 15 (D.D.C. 2010) ......................................................................................10

*Prunty v. Vivendi*,
    130 F. Supp. 3d 385 (D.D.C. 2015) ....................................................................................13

*Scott v. Paramount Pictures Corp.*,
    449 F. Supp. 518 (D.D.C. 1978) .........................................................................................10

*Sturdza v. UAE*,
    281 F.3d 1287 (D.C. Cir. 2002) ....................................................................................11, 12

*Tah v. Global Witness Publ'g, Inc.*,
    991 F.3d 231 (D.C. Cir. 2021) ..............................................................................................7

*Talk to Me Prods., Inc. v. Larami Corp.*,
    992 F.2d 469 (2d Cir. 1993) ................................................................................................17

*Tetris Holding, LLC v. Xio Interactive, Inc.*,
    863 F. Supp. 2d 394 (D.N.J. 2012) .................................................................................13, 15

*Thompson Med. Co. v. Pfizer Inc.*,
    753 F.2d 208 (2d Cir. 1985) ................................................................................................18

*Triple Up Ltd. v. Youko Tudou Inc.*,
    235 F. Supp. 3d 15 (D.D.C. 2017),
    *aff'd*, No. 17-7033, 2018 WL 4440459 (D.C. Cir. July 17, 2018) ...........................................4

*Wal-Mart Stores v. Samara Bros.*,
    529 U.S. 205 (2000) ...........................................................................................................17

*Wash. Shoe Co. v. A-Z Sporting Goods Inc.*,
    704 F.3d 668 (9th Cir. 2012) ................................................................................................4

*Zaragoza v. Apple, Inc.*,
    No. 18-6139, 2019 U.S. Dist. LEXIS 40916 (N.D. Cal. Mar. 13, 2019) .................................7

## Statutes & Rules

18 U.S.C. § 1964 ....................................................................................................~~22~~**23**

FED. R. CIV. P. 1 ............................................................................................... ~~21~~22

FED. R. CIV. P. 4 ............................................................................................... 3

**Other Authorities**

J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §
    11:45(4th ed. 2006) ....................................................................................... 17

U.S. Copyright Office, FL-108, *Copyright Registration of Games* (2011) ..................................... 1

## <u>INTRODUCTION</u>

This case should be dismissed because Plaintiff cannot, as a matter of law, claim a copyright over the "concept" of a game in which players throw a ball to knock down a pile of objects. As detailed in Voodoo's motion to dismiss, the concept is neither original to Plaintiff, nor copyrightable. That's because:

> Copyright does not protect the idea for a game, its name or title, or the method or methods for playing it. . . . Once a game has been made public, nothing in the copyright law prevents others from developing another game based on similar principles. Copyright protects only the particular manner of an author's expression in literary, artistic, or musical form.

U.S. Copyright Office, FL-108, *Copyright Registration of Games* (2011).

Plaintiff's Complaint appeared to operate on a contrary assumption, pleaded as though it could hold Voodoo liable for distributing a game in which a "[a] 3D sphere (ball) is launched towards [] blocks" just because his game was also based on that very-familiar concept. Compl. ¶ 200. But now that Voodoo's motion confronted him with the need to identify particular "literary" or "artistic" elements he claims were infringed rather than the mere concept of throwing a ball, Plaintiff has nothing to offer in response. Instead of addressing the dispositive failing of his Complaint, Plaintiff urges the Court not even to look at the screen captures Voodoo submitted of the games at issue and the obviously contrasting "artistic" elements depicted therein, claiming it is outside the Court's power of judicial notice even though the games are referenced and described at length in his own Complaint. The Court's powers to take a look at the works Plaintiff's entire case is about is not, in fact, so constrained—and the permitted review mandates dismissal.

Moreover, Plaintiff's argument exposes an even more fundamental flaw: if Plaintiff's Complaint did not offer enough factual descriptions of the works at issue to permit the Court to consider them as items referenced in the Complaint, then it follows that the Complaint also did not offer enough factual descriptions of the works at issue to make out a plausible claim of

infringement under the *Twombly* standard. Indeed, the Court can scour the Complaint for any description of an artistic element bearing the stamp of his originality in his video game and come up empty. The Court will likewise come up empty scouring the Complaint for any description of an artistic element in the Voodoo-distributed game that bears a similarity to Plaintiff's. As for Plaintiff's trademark claims, his opposition brief effectively cuts them in half: after accusing Voodoo of copying his game's logo, he now confesses he doesn't even know what logo his game used. And his attempt to eke out the other part of his trademark claim based on the similarity between the non-distinctive names each game used fails with his unavailing effort to argue that an imaginative leap is necessary to connect the words "knock" and "ball" to the concept of knocking things down with a ball.

This analysis should spell the end of this case. The extraneous claims Plaintiff attempts to plead under RICO and the antitrust laws—ostensibly to crack open a "conspiracy" connecting the purported copying of Plaintiff's video game with grievances over the federal government's response to the 2008 financial crisis and other non-sequitur matters (Compl. ¶¶ 115–42), but more likely just to serve as the excuse for bringing a "deep pocket" defendant into the case (*id*. at ¶ 252)—do not warrant much attention. Their main significance to this case is that they are the only jurisdictional hook for it to be in this Court at all, and so their dismissal would warrant complete dismissal of all Plaintiffs' claims even without regard to their (dubious) merits.

## ARGUMENT

## I.

## PLAINTIFF MISAPPLIES THE JURISDICTIONAL RULES.

Plaintiff does not contest Voodoo's arguments in its motion to dismiss that it is not subject to either general or specific jurisdiction in this forum—nor could he, because there is nothing

pleaded in his Complaint that would establish that Voodoo (a Paris-based French corporation) is "at home" in the District of Columbia or that his claims "arise" from any contacts with the District. *See* Mot. at 7–8. Instead, he argues that FED. R. CIV. P. 4(k)(2) furnishes a basis for exercising personal jurisdiction *without* general or specific jurisdiction, based on Voodoo's alleged "contacts with the United States" generally. Opp. at 12. Plaintiff's argument misapplies the law.

Plaintiff relies on *Mwani v. bin Laden*, 417 F.3d 1 (D.C. Cir. 2005). Opp. at 11–12. As the case's name implies, *Mwani* is an extreme outlier of a case in which jurisdiction was exercised over notorious terrorist Osama bin Laden based on such contacts with the United States as "the 1993 World Trade Center bombing, as well as [] the plot to bomb the United Nations, Federal Plaza, and the Lincoln and Holland Tunnels in New York." *Id.* at 13. To say that the case is not analogous to a copyright dispute over a casual video game is an understatement. Regardless, even its rote recitation of the legal standard does not help Plaintiff here.

First, *Mwani* states the requirement that jurisdiction under Rule 4(k)(2) requires "that the exercise of federal jurisdiction is consistent with the Constitution (and laws) of the United States," which involves addressing "whether a defendant has sufficient contacts with the nation as a whole to satisfy due process." *Id.* at 10–11. Plaintiff argues that Voodoo has such contacts because it distributed a game "through U.S. companies (Apple and Google) to people in the United States." Opp. at 12. This is not sufficient. *See*, *e.g.*, *Bibiyan v. Marjan TV Net., Ltd.*, No. 18-1866, 2019 WL 422664, at *4-6 (C.D. Cal. Feb. 4, 2019) (contention that "Defendant's mobile application is available on Google Play and Apple, Inc.'s 'App Store'" insufficient to confer jurisdiction under FED. R. CIV. P. 4(k)(2)); *Hungerstation LLC v. Fast Choice LLC*, No. 19-5861, 2020 WL 137160 (N.D. Cal. Jan. 13, 2020) ("apps . . . available for download in the United States on Apple's

AppStore and GooglePlay" do not establish "purposeful[] avail[ment] . . . of the jurisdiction of the United States"), *aff'd*, 857 F. App'x 349 (9th Cir. 2021).[1]

Further, it's not enough merely for the defendant to have contacts with the jurisdiction—it's also necessary for the plaintiff's claims to "arise out of" those contacts. *Mwani*, 417 F.3d at 13. But Plaintiff's claims do not "arise out of" the fact that Voodoo games are available from Google. They arise from his claim that one particular game infringed his copyright. And "copyright infringement is always 'expressly aimed' at 'the place where the copyright is held,'" *Triple Up*, 235 F. Supp. 3d at 29–30, which is where the copyright holder "is located." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 678 (9th Cir. 2012). Here, that place is alleged to be Virginia. Compl. ¶ 6.

Plaintiff thus fails to explain how he proposes to satisfy the requirement stated in *Mwani* that Rule 4(k)(2) only applies where "the defendant is not subject to the jurisdiction of any single state court." 417 F.3d at 10. Plaintiff contends that Voodoo "did not name another state where the suit could proceed." Opp. at 12. That overlooks Voodoo's argument that Plaintiff's choice of forum was inexplicable because, as a "resident of Virginia," he could not "allege that his [] purported injuries were felt in the District of Columbia." Mot. at 7. Plaintiff's ability to sue based on purported injuries felt in Virginia distinguishes this case from *Mwani*, whose plaintiffs had no option of suing in their home states because they were "all Kenyan," complaining about injuries

---

[1] *See also generally Allen v. Russian Federation*, 522 F. Supp. 2d 167, 195 (D.D.C. 2007) ("mere shipment of products to the United States is not a substantial contact with the forum."); *Triple Up Ltd. v. Youko Tudou Inc.*, 235 F. Supp. 3d 15, 23–26 (D.D.C. 2017) (no jurisdiction under Rule 4(k)(2) merely because Internet users could access defendant's allegedly copyright-infringing videos in the United States) (citing, *e.g.*, *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) ("mere accessibility of the defendants' websites" in the forum does not "establish[] the necessary 'minimum contacts'" because "under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country")), *aff'd*, No. 17-7033, 2018 WL 4440459 (D.C. Cir. July 17, 2018).

suffered "in Nairobi, Kenya." 417 F.3d at 4. Thus, *Mwani* does not help him, even beyond all the obvious reasons.

Plaintiff alternatively argues that this Court can exercise jurisdiction under principles of "pendent personal jurisdiction," "[s]o long as Plaintiff[] obtain[s] personal jurisdiction as to one claim." Opp. at 12 (quoting *Vasquez v. Whole Foods Mkt., Inc.*, 302 F. Supp. 3d 36, 48 n.2 (D.D.C. 2018)). But the only ground for the exercise of personal jurisdiction on that "one claim" where (as here) general and specific jurisdiction are lacking is through a statute authorizing nationwide service of process. *See* Mot. at 8. Only Plaintiff's RICO and antitrust claims are brought under such a statute. *See id.* Thus, if those claims are dismissed, there is no longer any "one claim" that can serve as a hook for asserting personal jurisdiction over the others. *See* Mot. at 8–9.

Nor would "pendent personal jurisdiction" apply even if the RICO and antitrust claims survive, because Plaintiff's copyright and trademark grievances do not "ar[i]se from the same . . . event" as his RICO and antitrust grievances. *See* ECF No. 21 at 18–19. The former are based on alleged copying of his video game. The latter are based on non-sequitur alleged malfeasances by Goldman Sachs in connection with the 2008 financial crisis, a Malaysian investment fund, and its acquisition of a minority stake in Voodoo. *See id.*; *see also* ECF No. 18 at 34 (Plaintiff's opposition to Goldman's motion to dismiss brief calling "the bribery of U.S. officials in The White House and D.C." "the root of all the claims"). None of those alleged events have anything to do with whether Voodoo distributed a block-toppling video game too similar to Plaintiff's.

## II.
## THE COURT SHOULD DISMISS PLAINTIFF'S
## COPYRIGHT AND TRADEMARK CLAIMS.

Plaintiffs' copyright claims rest on his allegation that the Voodoo-distributed game copied "the overall look, concept and feel" of his video game, while his trademark claims rest on his allegation that they have "similar" logos and titles. Compl. ¶¶ 199–200. Both claims are meritless,

so it is not surprising that Plaintiff devotes the heart of his brief to an extended argument that the Court should stick its head in the sand and not even look at the respective games and logos. But the Court is not obliged to ignore the material at the heart of the Complaint in assessing whether Plaintiff has asserted a plausible claim—and, indeed, he has not.

**A.      The Court Is Not Barred from Looking at Material Described in the Complaint.**

Whether Plaintiff's claims can survive this motion to dismiss depends on whether (among other things) he plausibly alleges that "the particular manner" of the "artistic" expressions is similar. *Copyright Registration of Games*, *supra*. Plaintiff's complaint includes descriptions (albeit highly generalized) of the "look" of his game and its logo. *See id*. (describing logos of "a ball hitting 3D blocks with a cartoon splat effect" and gameplay screens where a "ball[] is launched towards [] blocks" "with realistic physics effects," various "background[s]," and displays of the score and an "exit" button). But Plaintiff is offended that Voodoo's motion put in front of the Court screen captures of the game screens and logos he described (including from Plaintiff's own web site), to assist the Court in assessing for itself the plausibility of Plaintiff's claims that his creative expression was infringed. Plaintiff calls the screen captures "improper" and "inadmissible evidence" that the Court is barred from consulting on a motion to dismiss. Opp. at 13–21.

Plaintiff first argues this on a technicality—that for the Court to exercise its inherent powers of judicial notice, Voodoo was obliged to file "a separate motion" with "a formal request for judicial notice." Opp. at 13. There is no such requirement in this jurisdiction. *See*, *e.g.*, *Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182, 186 (D.D.C. 2001) (taking judicial notice of documents where defendant "attached copies . . . to its Motion to Dismiss").

Next, Plaintiff argues that the Court's power is limited to "notic[ing] the existence of the screenshot[s]," but not anything "factual" about them. Opp. at 15. "[A]ny factual assertions," he continues, "must be made in favor of the plaintiff." *Id*. Here, Plaintiff misunderstands both the

standards for judicial notice *and* the standards for considering a Rule 12(b)(6) motion. On the former, Plaintiff appears to be confusing the situation here with cases where notice is taken of "the existence" of a document but not "the truth of the facts recited therein." *Hudson v. AFGE*, 308 F. Supp. 3d 388, 391 (D.D.C. 2018) (quoting *Lee v. City of L.A.*, 250 F.3d 668, 689-690 (9th Cir. 2001). But none of the screen captures presented here contain "factual assertions" that can be true or false. They are all just pictures of balls knocking down objects. The issue before the Court is whether Plaintiff describes any "artistic" elements in those pictures that are original to him. That question does not turn on any "factual assertions" in the pictures; it just turns on what the pictures themselves depict, which is well within the Court's power of judicial notice as it doesn't require the Court to do anything with the pictures beyond looking at them. *See, e.g.*, *Evox Prods., LLC v. Cal. Rent-A-Car, Inc.*, 2016 U.S. Dist. LEXIS 194720, at *4 (C.D. Cal. July 26, 2016) (granting "request to judicially notice [] the fact that the logos of certain car brands appear in the Photographs"). Regardless, Plaintiff is *not* entitled to have every "factual assertion[]" made in his favor. The only inferences Plaintiff is entitled to have drawn in his favor are those rooted in plausible, "well-pleaded factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Tah v. Global Witness Publ'g, Inc.*, 991 F.3d 231, 239 (D.C. Cir. 2021).

The problem for Plaintiff is that if there are "well-pleaded factual allegations" about what the games at issue look like, then the underlying imagery is manifestly incorporated by reference in the Complaint and Plaintiff cannot validly protest the Court's reference to it on a motion to dismiss. *See, e.g.*, *Zaragoza v. Apple, Inc.*, No. 18-6139, 2019 U.S. Dist. LEXIS 40916, at *25–26 (N.D. Cal. Mar. 13, 2019) (material that "forms the basis of the plaintiff's claim" or which "the plaintiff refers extensively to" may be considered on a motion to dismiss, "in order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which

their claims are based"). Alternatively, if Plaintiff is telling the Court his Complaint is *devoid* of "well-pleaded factual allegations" about what the games at issue look like, then the Court can dismiss the Complaint on that basis alone for lack of "allegations plausibly suggesting (not merely consistent with)" the alleged copyright and trademark violations. *Twombly*, 550 U.S. at 557. The games at issue and their logos are either referenced in the Complaint or not. If referenced, the Court can look at them, and if not, there is not enough "factual matter" in the Complaint to plead a plausible claim. *Id.* at 556; *see, e.g.*, *DBW Partners, LLC v. Bloomberg, L.P.*, No. 19-0311, 2019 WL 5892489, at *3 (D.D.C. Nov. 12, 2019) (Walton, J.) (dismissing copyright claims because plaintiff's failure to identify the copyrighted works that form the basis of its claims "makes it 'virtually impossible to determine what materials have allegedly been infringed'"); *Buchanan v. Sony Music Entm't*, No. 18-3028, 2020 WL 2735592, at *8 (D.D.C. May 26, 2020) (finding court unable to judge "substantial similarity" without the works in the record, but dismissing infringement claims anyway "given the lack of sufficient allegations" of similarity).

Given that motions to dismiss copyright and trademark infringement claims are hardly unprecedented, there is, unsurprisingly, ample case law in this jurisdiction and elsewhere in which courts have examined the works at issue in ruling on a motion to dismiss. *E.g.*, *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 188 & n.6 (D.D.C. 2005) (Walton, J.) (considering documents outside the complaint "to identify the [allegedly] infringed materials" because they were "specifically referenced and incorporated into the complaint, even though [] not filed contemporaneously therewith"); *Gaines v. Dist. of Columbia*, 961 F. Supp. 2d 218, 221 (D.D.C. 2013) (finding images attached to the complaint "sufficient evidence to the Court to determine that there was no copyright

infringement" at the Rule 12(b)(6) stage, while noting that "a court may take into consideration any documents either attached to or incorporated into the complaint").[2]

Recognizing this, Plaintiff latches on to the only remaining ground on which he could possibly prevent the Court from looking at the works at issue: by challenging their authenticity. Without explication or identification of a single fact on which the speculation could be based, he calls the screen snapshot from Voodoo's game "possibly doctored." Opp. at 16.   Relatedly, Plaintiff protests that the Court should not consider the allegedly infringed game logo from *Plaintiff's own web site* because, although "[i]t does seem likely," he can't say for sure "that the logo is the same logo" he claims was infringed in this case; "Even the plaintiff would need some outside research to verify the accuracy."  Opp. at 20–21.   But the time for Plaintiff to "research" his own logo was before filing his Complaint, not afterwards. If Plaintiff cannot even identify the logo at issue, then his Complaint by definition lacks the facts necessary to "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Certainly, Plaintiff

---

[2] *Accord*, *e.g.*, *Brantley v. Epic Games, Inc.*, 463 F. Supp. 3d 616, n.3 (D. Md. 2020) ("tak[ing] judicial notice" of allegedly infringing video segment "without converting the motion to one for summary judgment, as the video is central to Plaintiffs' claims, was incorporated by reference in the Complaint, and its authenticity is not in dispute"); *Gottlieb Dev. LL v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 629 n.1 (S.D.N.Y. 2008) (considering "[a] DVD copy" of the allegedly infringing work on a motion to dismiss as it "is integral to [Plainttiff]'s claims" and thus "deemed incorporated into the complaint by reference") (citing *Int'l Audiotext Network v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.")); *Diamond Foods, Inc. v. Hottrix, LLC*, No. 14-3162, 2016 WL 3880797, at 10 (N.D. Cal. July 18, 2016) (taking judicial notice of iPhone apps on motion to dismiss); *Capcom Co. v. MKR Grp., Inc.*, No. 08-0904, 2008 U.S. Dist. LEXIS 83836, at *9–10 (N.D. Cal. Oct. 10, 2008) (taking judicial notice of the allegedly infringed and infringing works because "[w]hile generally a court cannot consider material outside of the complaint when deciding a motion to dismiss under Rule 12(b)(6), a court may consider . . . documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

cannot survive a motion to dismiss through artful pleading that deliberately avoids attaching the "integral" material. *Audiotext*, *supra*. At that point, this case ceases to be about his game of throwing a ball, and becomes a game of hide-the-ball. The Court is not obliged to indulge this type of gamesmanship, even from a *pro se* litigant.

This same treatment should be afforded to the works Voodoo cited *other* than Plaintiff's game and the Voodoo-distributed game. A court considering a motion to dismiss in a copyright case can take judicial notice of "what works . . . were in the public realm"; doing so does not involve "consider[ing] the truth of the facts therein." *Leadership Studies, Inc. v. Blanchard Training & Dev., Inc.*, No. 15-1831, 2016 U.S. Dist. LEXIS 28930, at *16–19 (S.D. Cal. Mar. 4, 2016). Voodoo, likewise, cited this material—images from another game in which players throw a ball to knock down objects, and images from a movie showing a character playing such a game at a carnival—merely to establish the existence of those works, not for the truth of any factual matters.[3] But the Court doesn't *need* a bevy of concrete examples of gameplayers throwing balls at stacks of objects to address the plausibility of Plaintiff's claim that the concept is original to him, just as Judge Jackson didn't need any prior works in the record in *Buchanan* to reject the plaintiff's claim in that case to a copyright over the concept of a car speeding down a highway. 2020 WL 2735592, at *8 ("the mere idea of cars speeding down a highway is not copyrightable"); *see also*, *e.g.*, *Prunte v. Universal Music Grp., Inc.*, 699 F. Supp. 2d 15, 23 (D.D.C. 2010) ("familiar scenes and themes" are not protected); *Scott v. Paramount Pictures Corp.*, 449 F. Supp. 518, 519–20 (D.D.C. 1978) ("there is no copyright violation" when both works "derive[] from a common source in the public domain").

---

[3] For example, Roy Hobbs, protagonist of *The Natural* portrayed by actor Robert Redford, is a fictional character, and the scene in which he throws a ball at a stack of cans in a carnival game is part of the story and not claimed as a truthful historical event.

**B.     Plaintiff's Failure to Plead Copying of Any Protectible Element Requires Dismissal of His Copyright Claims.**

As set forth in Voodoo's opening brief, Plaintiff's copyright-infringement claims fail at each step of the analysis: (i) he cannot claim a "valid copyright" in a mere "concept," much less an unoriginal concept like throwing a ball at a pile of objects, and (ii) he pleads no *copyrightable* elements of his game that were actually copied, as opposed to the uncopyrightable concepts. Mot. at 9–18 (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Failure to "identif[y] protectible elements" in his work and "fail[ure] to allege a substantial similarity between those protectible elements and the allegedly infringing work[]" each require dismissal at the Rule 12(b)(6) stage. *Buchanan*, 2020 WL 2735592, at *7.

In response, Plaintiff tries to defend his claim to have copyrighted a concept by arguing that "'total concept and feel' is a test for substantial similarity." Opp. at 18, 24. But, as Plaintiff proceeds to recognize in developing that argument (and as the D.C. Circuit case he relies on stated expressly), references to "total concept and feel" do not relieve the plaintiff of having to show similarity "as to protectable elements" to have a claim. *Atkins v. Fischer*, 331 F.3d 988, 994-995 (D.C. Cir. 2003) (quoting *Sturdza v. UAE*, 281 F.3d 1287, 1296 (D.C. Cir. 2002)). That is where Plaintiff's claim breaks down, because neither in his Complaint nor his opposition brief does he come right out and say what he claims the "protectable elements" to be. Indeed, even as he urges the Court that "[t]he original way that the author 'selected, coordinated, and arranged the elements' of her work is the focus of the court" (Opp. at 31 (quoting *Atkins*), he does not say anything about how *he* "selected, coordinated, and arranged the elements" of *his* work in a protectible fashion.

Since Plaintiff can claim no copyright in the "idea" or "principles" of a game "or the method or methods for playing it," he must ground his claims on "the particular manner" of his "expression in literary" or "artistic" form. *Copyright Registration of Games*, *supra*. "The copyright

is limited to those aspects of the work—termed 'expression'—that display the stamp of the author's originality." *Sturdza*, 281 F.3d at 1295. As to what those aspects might be here, we can all only guess because Plaintiff does not say. The only descriptions in the Complaint of any elements of the games that are "similar" belong to the "idea" or "methods for playing" categories: "A 3D sphere (ball) is launched towards the blocks. The ball topples the blocks with realistic physics effects. . . ." Compl. ¶ 200. The elements that might qualify as "artistic" are described only in the vaguest of terms ("One level has a blue-sky background.") with no allegations about (i) what aspects of elements like a blue sky "display the stamp of the author's originality" or (ii) how those elements are actually similar as between the two games. *Strudza*, *supra*. "Courts have consistently held that the bare assertion that a work 'steals from' a plaintiff's work is insufficient to state a claim of copyright infringement." *Buchanan*, 2020 WL 2735592, at *7.

Plaintiff relies on *Sturdza* in arguing that his claim satisfies the "ordinary reasonable person test," which provides that "'[s]ubstantial similarity' exists where 'the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." Opp. at 30; 281 F.3d at 1296. Left unstated is what specific facts pled in the Complaint plausibly suggest an appropriation of protectible elements, as opposed to the unprotectible ones (or why Plaintiff regards it as "improper" to look at the actual game screens, if he is so confident a reasonable person would find their artistic expression similar).

Instead, Plaintiff thinks it sufficient to rest on the contention that "substantial similarity is a question of fact" in the D.C. Circuit. Opp. at 19. This contention omits the key word "customarily" from *Sturdza*, the pre-*Twombly* case Plaintiff cites for the point. Whether a claim *customarily* presents a question of fact contributes nothing to an analysis of whether the specific

facts necessary to plead that claim with the requisite plausibility in fact appear in a particular complaint. Courts in this Circuit—especially post-*Twombly*—have no issue dismissing infringement claims at the Rule 12(b)(6) stage when similarity is not sufficiently alleged or shown in exhibited material. *E.g.*, *Buchanan*, 2020 WL 2735592, at *8 (copyright claims "must be dismissed" "given the lack of . . . any allegation that the works are so strikingly similar so as to 'preclude the possibility of independent creation'"); *Gaines*, 961 F. Supp. 2d at 223–24 (dismissing infringement claim because "a comparison of the [works] . . . reveals absolutely no similarity between the illustrations"); *Prunty v. Vivendi*, 130 F. Supp. 3d 385, 390–91 (D.D.C. 2015) ("Plaintiff's copyright infringement claim [] is dismissed" because "as a matter of law, . . . the [works] . . . are not substantially similar").

Copyright lawsuits over games are not an uncommon occurrence. It is perhaps more productive to examine how courts have actually decided such claims than to dwell further on pleading standards. Juxtaposing cases in which plaintiffs were found to have viable claims and those in which they were not is particularly instructive. Compare, for example, *Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394 (D.N.J. 2012), and *DaVinci Editrice S.R.L. v. ZiKo Games, LLC*, 183 F. Supp. 3d 820 (S.D. Tex. 2016):

In *Tetris*, the court considered a lawsuit against a Tetris knockoff "wholesale cop[ied]" from the original. 863 F. Supp. 2d at 412–13. It began by identifying the "general, abstract ideas underlying *Tetris* [which] cannot be protected"—the gameplay in which the "user rotates" falling blocks "to fit [them] in with the accumulated pieces," with the object of "fill[ing] all spaces along a horizontal line" and erasing the line. *Id*. at 408–09. Then it distinguished these unprotectible elements from protectible artistic expression such as "the style of the [blocks]," "the use of bright colors, the individually delineated squares within the pieces, . . . the dimensions of the playing

field, . . . the change in color of the pieces when they lock with the accumulated pieces, and the appearance of squares automatically filling in the game board when the game is over." *Id.* at 410–13. To make the similarities and differences clear, the Court reviewed "links to uploaded videos at www.youtube.com" and "screen shots of the individual game screens." *Id.* at 409. The opinion includes screen shots of the original (left) and the copy (right):



*Id.* at 410. The court ruled that "there are almost unlimited options" for designing "the same game" in a way that would not infringe the copyright (*e.g.*, by using "different styles" for the art, or a game board "15 units high" instead of "20 units high"), but because the defendant's copy had used "the exact same" elements as the plaintiff's at every step, the "protectible expression" was infringed. *Id.* at 410–13; *see also*, *e.g.*, *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614–18 (7th Cir. 1982) (finding PAC-MAN "primarily an unprotectible game" with "standard game devices," but finding some protectible expression in "features" of the character, like "the relative size and shape of the 'body,' the V-shaped 'mouth,' its distinctive gobbling action (with appropriate sounds), and especially the way in which it disappears upon being captured").

*DaVinci* involved a lawsuit over two "role-playing card game[s]." 183 F. Supp. 3d at 823. The plaintiff was the publisher of *Bang!*, a game "using wild-West themes" with characters assigned to "one of four roles: 'Sheriff,' 'Deputy,' 'Outlaw,' or 'Renegade.'" *Id*. The defendant was a Chinese company that developed a game with "nearly identical rules," substituting "ancient China" for the "wild west" and assigning characters to the roles of "the Monarch, his Minister, the Rebels, and the Turncoat," which "have the same functions and goals as the Sheriff, Deputies, Outlaws, and Renegade in *Bang!*." *Id*. at 825. The court applied the familiar legal standard that "[g]ame mechanics and the rules are not entitled to protection," only the "expressive elements" like "graphical works" and "design of game boards." *Id*. at 830 (quoting *Tetris*, 863 F. Supp. 2d at 404). The court found the game characters and their abilities "largely drawn from stock-character abilities," "[l]ike a punch or kick in a karate game," and "not expressive because they are essentially rules of game play." *Id*. at 833–34. For example, a character with "the ability to strike opponents from a longer distance than other characters . . . is no more expressive than the ability of a rook in a chess game. . . . [T]his special ability is neither literary nor artistic. It is an aspect of game play, a subset of the rules that make up the game system." *Id*. at 834. On those grounds, the court ruled the protectible elements in the games "not substantially similar" and entered judgment for the defendant. *Id*. at 835.

None of the factors that supported the plaintiff in *Tetris* are alleged in this case, while all of the factors that supported the defendant in *DaVinci* are admitted on the face of Plaintiff's Complaint. Plaintiff's claim that Voodoo copied his concept of "[a] 3D sphere (ball) . . . launched towards the blocks" to "topple[]" them is analogous to the *unprotected* concept in *Tetris* of rotating a falling block. What made the difference in *Tetris* (and the PAC-MAN case) was copying the artistic elements like the graphical style, the color scheme, and the visual arrangement of the game

-15-

board. That is precisely the type of claim Plaintiff does not even *attempt* to allege here, beyond his vague claim to have the stamp of his originality on a "blue-sky background" or a "starry sky/space background." Compl. ¶ 200. Meanwhile, the screen captures show that the graphical designs are not even remotely comparable. *See* Mot. at 3–4. The only elements the games have in common are the unprotectible "aspect[s] of game play," the "rules that make up the game system." *DaVinci*, 183 F. Supp. 3d at 834. A "ball toppl[ing] the blocks with realistic physics effects" (Compl. ¶ 200) is not artistic expression. It's the same stock result that happens any time a ball is thrown at a pile of blocks (or milk cans at a carnival, or pins in a bowling alley). The ball certainly does not rise to the level of a "character" with a "delineated personalit[y]" or distinctive look. *Id*. at 835. It is just a ball. *See id*. ("The less developed the characters, the less they can be copyrighted; that is the penalty an author must bear for marking them too indistinctly.") (quoting *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930)).

There is no need to permit Plaintiff discovery to develop a record on what he has already admitted in the Complaint. Without an *allegation* of any specific protectible element infringed, his claims should not proceed past the pleading stage.

## C.    Plaintiff Cannot Bring Trademark Infringement Claims Based on a Non-Distinctive Name and Non-Existent Logo.

Plaintiff also asserts trademark infringement claims based on his game's name and logo (while professing ignorance on what the logo at issue specifically looks like, claiming it would require him to conduct "outside research"). Opp. at 21. In its motion to dismiss, Voodoo showed that these were at the weakest end of the spectrum of distinctiveness that determines how much protection a mark is warranted—likely "generic," and "descriptive" at most, with the only distinctive elements being those aspects he does *not* accuse Voodoo of copying (like the "-y" suffix in "Knocky"). Mot. at 19.

Plaintiff responds that the name of his game crosses the line from "descriptive" to "suggestive" because "it requires imagination to conclude that 'knocky balls' describes 'knocking things down with balls.'" Opp. at 33. The bar for suggestiveness is not nearly so low as Plaintiff imagines. A suggestive mark is a mark like the word "tide" in connection with laundry detergent. *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 210 (2000). Other examples include "BRIZZY" for a hard seltzer, *Future Proof Brands, LLC v. Molson Coors Bev. Co.*, 982 F.3d 280 (5th Cir. 2020), and "KÜHL" in reference to a clothing line. *Alfwear, Inc. v. Mast-Jägermeister US, Inc.*, No. 12-0936, 2021 WL 364109, at *8 (D. Ut. Feb. 3, 2021). The imaginative work necessary to associate the word "tide" with laundry detergent entails many more boxes and arrows on the mental flowchart than the deduction necessary to associate the descriptive words "knock" and "balls" with a game of knocking things down with balls.

It is true that one might conceive of other activities that involve both (i) a ball and (ii) knocking. But just because a generic or descriptive term can describe more than one literal thing does not make it cross the line separating the literal from the imaginative. It is still descriptive so long as it gives consumers some "tolerably distinct knowledge of the characteristics of a product," which Plaintiff's mark does. J. Thomas McCarthy, MᴄCᴀʀᴛʜʏ ᴏɴ Tʀᴀᴅᴇᴍᴀʀᴋs ᴀɴᴅ Uɴғᴀɪʀ Cᴏᴍᴘᴇᴛɪᴛɪᴏɴ, § 11:19 at 11-45 (4th ed. 2006). Thus, for example, "Soaker" is descriptive, not suggestive, in reference to a toy water gun (even though numerous other activities involve the act of soaking). *Talk to Me Prods., Inc. v. Larami Corp.*, 992 F.2d 469, 469 (2d Cir. 1993). "INJURY-1" is "descriptive (or generic)," not suggestive, in reference to a personal-injury law firm, because it "conveys an immediate idea of the characteristic of the services provided" (even though it could just as easily describe other services, like a doctor's). *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 858 (3d Cir. 1992). As one court helpfully put it in rejecting an argument just like Plaintiff's:

ConAgra seems to believe that since the mark HEALTHY CHOICE does not immediately bring to mind a food product that the mark is therefore suggestive. It is true that the mark HEALTHY CHOICE does not directly suggest the product with which the mark is associated, but the suggestive/descriptive dichotomy has not, as I have understood it, been limited in such a fashion. Rather, the question is whether the term "directly and clearly conveys information about the ingredients, qualities or characteristics of the product or service."

*ConAgra, Inc. v. Geo. A. Hormel & Co.*, 784 F. Supp. 700, 708 (D. Neb. 1992) (quoting

McCARTHY, *supra*).[4] "Knock Balls" satisfies that test.

And there is an obvious reason for this, as Plaintiff himself describes in his Complaint. These games "are impulse downloads." Compl. ¶ 179. They are almost *always* titled with generic or descriptive names, so they show up "at the top of [] search results" when users are seeking that type of game. *Id*. at ¶ 93. At this writing, searching Google Play for "Knocky Balls" or "Knock Balls" reveals a bevy of similarly generic names for similar kinds of games, like "Throw Ball: Knock Balls Can Knockdown," "Knock Blocks—Ball Shooting," "Knock ball," "DJ Knock Balls," and "Knock Ball Shooting Down" (*see https://play.google.com/store*):

---

[4] *See also*, *e.g.*, *20th Century Wear, Inc. v. Sanmark-Stardust, Inc*., 747 F.2d 81, 87 (2d Cir. 1984) ("Cozy Warm ENERGY-SAVERS" descriptive, not suggestive, in reference to flannel pajamas); *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 216 (2d Cir. 1985) (rejecting argument "that an imaginative link is necessary to connect the concept of a topical analgesic used in connection with sports activities to the name 'Sportscreme,'" and holding the term descriptive); *J & J Snack Foods, Corp. v. Nestle USA, Inc*., 149 F. Supp. 2d 136, 151 (D.N.J. 2001) ("Break & Bake" "not sufficiently imaginative to conclude that this mark is suggestive" in reference to cookie dough).



Knock Balls
VOODOO

Throw Ball: Knock B
Dopamine Games

knock blocks balls
KILO

Cannon Balls : Shoo
Gametoon Labs

Knock Blocks - Ball
Player Duo

Knock ball
Grown Games

DJ Knock Balls
Porcupine games

Knock Blocks -Ball
Asolo Plays

Knock Ball Shooting
KAKAK Game

Color ball blast : m
newest casual game

The line between the descriptive and the suggestive matters because calling his name suggestive is the only way Plaintiff can avoid inquiry into whether his name carries a "secondary meaning" in the minds of the buying public—an inquiry Plaintiff cannot survive because he concedes the buying public is indifferent to his trade dress, rather than using his trade dress to identify the products they want. *See* Mot. at 24–25. At the end of the day, however, avoiding this inquiry still cannot save Plaintiff's claims. He is still obliged to plead a substantial likelihood of customer confusion between the two products as a core element of his claim, which requires inquiries into the strength of the mark, evidence of actual confusion, and other factors that weigh against Plaintiff. *See* Mot. at 18, 22–23. Calling Plaintiff's name suggestive does not add much to its strength. *See Future Proof*, 982 F.3d at 292 ("suggestive marks—like descriptive marks—are 'comparably weak'"). And Plaintiff's brief confirms he cannot allege any actual confusion or ill intent. *See* Opp. at 35 (pretending to address actual confusion, but just repeating his claim that the

products were on the same app store). By Plaintiff's own account, nobody is shopping for his product and finding something else. That should end the inquiry.

The Court's trademark inquiry with respect to Plaintiff's logo can be even briefer. Plaintiff does not address the logo at all in his trademark arguments. *See* Opp. at 32–36. Elsewhere, he concedes he can't even tell the Court what logo he is suing over without doing further "research." Opp. at 20–21. If Plaintiff cannot even identify the logo at issue, he has no plausible claim that it was infringed.

**One point, however, warrants clarification. Although not mentioned in his opposition, after Voodoo's motion was fully briefed, Plaintiff threatened Voodoo with a sanctions motion on the asserted ground that the "Knock Balls" logo shown in Voodoo's opening brief, taken from the Google Play store, was different from the one in use several years ago that Plaintiff asserts as the basis for his claims. Voodoo will accept that contention as true for purposes of this motion to dismiss, so, in evaluating Plaintiff's trademark claims (insofar as they warrant consideration given the doubts about what *Plaintiff's* logo looks like), the Court should compare Plaintiff's logo (left) to this one he claims as infringing (right) :**



(Added)



(Added)

**Voodoo submits that this does not change the substance of any of the arguments previously made.**

## III.

## THE COURT SHOULD DISMISS PLAINTIFF'S RICO AND ANTITRUST CLAIMS.

Once again, Plaintiff's primary response to Voodoo's dismissal arguments on his RICO and antitrust claims is not to engage them on their merits, but to urge the Court not to consider them at all. Plaintiff argues that Voodoo "forfeited" arguments briefed by the Goldman Defendants which Voodoo summarized in its brief and joined in by reference. Opp. at 12; *see* Mot. at 26–30. But there is in fact nothing that precludes a party from joining in another party's arguments rather than burdening the Court with duplicative briefing. *See, e.g.*, *Lewis v. Gov't of the D.C.*, No. 15-0521, 2015 WL 8577626, at *3 (D.D.C. Dec. 9, 2015) (approving incorporation by reference of arguments on motion to dismiss and holding that the party "who incorporated the District's arguments in his Motion[] also benefits from th[e] ruling"). And nothing cited in Plaintiff's brief establishes otherwise.

It is totally false to contend, as Plaintiff does, that Voodoo "fail[ed] to raise" the arguments it joined in. Opp. at 12–13. Voodoo discussed each such argument, provided further explication of how they apply to Voodoo in circumstances where the arguments applied differently to each defendant, and cited the exact page numbers in the Goldman Defendants' brief it was referencing. *See* Mot. at 26–30. This is more than most parties offer when they join in another party's arguments, and the notion that doing so was to "hide" the arguments and somehow prevent Plaintiff from noticing them cannot be taken seriously. Opp. at 13. *Al-Tamimi v. Adelson*, 916 F.3d 1 (D.C. Cir. 2019), which Plaintiff cites for the proposition that "[a] party forfeits an argument by failing

to raise it in his opening brief," does not support Plaintiff's arguments at all, as it actually reached the opposite result, "find[ing] the plaintiffs' incorporation by reference unobjectionable." *Id.* at 7.

It is equally false to contend that summarizing the arguments the Defendants have in common, rather than repeating them word-for-word in both briefs, represents some effort "to evade page limit requirements." *Id.* Voodoo's opening brief was thirteen pages under this Court's generous page limitations. Relieving the Court of the burden of reading the same material twice was about helping the Court "secure the just, speedy, and inexpensive determination of every action" (FED. R. CIV. P. 1), not about squeezing more material in the brief. *See Al-Tamimi*, *supra*, 916 F.3d at 7 ("[B]efore merits briefing was due, we warned the parties that we look with extreme disfavor on repetitious submissions. . . . Further, the plaintiffs' opening brief was concise enough that they could have inserted their entire [incorporated argument] into it without exceeding the word limit. In other words, they were not seeking to, and did not, evade the word limit. Moreover, the defendants[] . . . had a fair opportunity to respond.") (internal quotation marks and brackets omitted).

Plaintiff, too, has had a fair opportunity to respond to Defendants' RICO and antitrust arguments, and his responses are sorely lacking.

Plaintiff concedes that he needs to plead an injury "to business or property" to have standing under RICO, and further concedes he has not pled any "monetary loss." Opp. at 36. Instead, he quotes *Partido Revolucionario Dominicano v. Partido Revolucionario*, 312 F. Supp. 2d 1, 15 (D.D.C. 2004), for the proposition that "[t]rademark infringement 'by its very nature causes irreparable injury,'" but the issue here is not whether Plaintiff has pleaded an *injury* but whether he has pleaded an injury to "business or property." He has not. *See*, *e.g.*, *Diaz v. Gates*,

420 F.3d 897, 909 (9th Cir. 2005) ("It is well-established that not all injuries are compensable under RICO.") (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

Plaintiff also fails to plead a RICO enterprise, conduct of the enterprise by Voodoo, or the requisite pattern of racketeering. Plaintiff's enterprise arguments (Opp. at 36–37) are wholly non-responsive to the applicable legal standard, which requires Plaintiff to plead facts showing that his imagined enterprise of Voodoo, the Goldman Defendants, and hundreds of third-party investors in a fund that holds some Voodoo shares functions is an actual, unitary entity with an ongoing organization. *See* Mot. at 26. As there is no such enterprise, there is no enterprise activity Voodoo could have "conducted" or "directed," but in any event Plaintiff's invitation to the Court effectively to overrule Supreme Court precedent holding that conduct of the defendant's "own affairs" does not amount to conduct of the enterprise's affairs (Opp. at 37) should be rejected. Lastly, accusing Voodoo of wire fraud by contending it uses a "click farm" to post positive reviews of its games (Opp. at 38; Compl. ¶¶ 91–100) does not actually plead any "wire fraud" (*see* Mot. at 28) and, even if it did, does not articulate any theory of how Plaintiff was injured "by reason of" those reviews. 18 U.S.C. § 1964(c).

Plaintiff's antitrust arguments basically repeat the same arguments he lodged in opposition to the Goldman Defendants' motion to dismiss, and are subject to the same responses. For example, he leads off claiming antitrust injury and market power in reliance on the reference in *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 487-489 (1977), to "a 'deep pocket parent in[] a market of 'pygmies.'" Opp. at 39. As the Goldman Defendants' brief already pointed out, the Supreme Court used this language in explaining why there was *no* antitrust injury because the size of the "parent" was irrelevant to the plaintiff's claimed loss. *See* ECF No. 21 at 17–18 (quoting *Brunswick*, 429 U.S. at 487–88). (And Goldman Sachs is not Voodoo's "parent," either—their

fund is just a minority stockholder. Compl. ¶ 149.) Simply put, this is a copyright and trademark case, not an antitrust case, and copyright and trademark injuries are not injuries of "the type the antitrust laws were intended to prevent." Mot. at 29–30 (quoting *Brunswick*, 429 U.S. at 489).

In any event, Plaintiff already pleaded himself out of court on his antitrust claims by conceding Voodoo has no market power. ECF No. 18 at 20. Calling the Goldman fund's minority investment a "combination" (Opp. at 39–40) falls woefully short of turning a company with no market power into a monopoly. If it were necessary to belabor the point, the Court may take note that one of the multiple companies Plaintiff pleads as Voodoo's competition (Compl. ¶ 171) was just acquired by none other than Microsoft.[5]

## CONCLUSION

For the reasons set forth above and in Voodoo's opening brief, Voodoo respectfully moves that the Court dismiss each of Plaintiff's claims.

Respectfully submitted this 7th **11th** day of March, 2022.

/s/ Keith Levenberg
Keith Levenberg (#1007558)                  Douglas H. Flaum (#NY0363)
GOODWIN PROCTER LLP                          GOODWIN PROCTER LLP
1900 N St., N.W.                             620 Eighth Ave.
Washington, D.C. 20036                       New York, N.Y. 10018
Tel.: (202) 346-4000                         Tel.: 212 813-8800
Fax: (202) 346-4444                          Fax: 212 355-3333
klevenberg@goodwinlaw.com                    DFlaum@goodwinlaw.com

*Counsel for Defendant Voodoo SAS*

---

[5] Steve Kovach, "Microsoft to buy Activision in $68.7 billion all-cash deal," CNBC (Jan. 18, 2022), *available at https://cnbc.com/2022/01/18/microsoft-to-buy-activison.html*.

**CERTIFICATE OF SERVICE**

I hereby certify that this 7th**11th** day of March, 2022, I caused a copy of the foregoing document to be served on all counsel of record via ECF.

/s/ Keith Levenberg