# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| JOSEPH A. STALLARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-2703 (RBW) |
| | ) | |
| GOLDMAN SACHS GROUP, INC., <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |

---

## <u>MEMORANDUM OPINION</u>

The <u>pro se</u> plaintiff, Joseph A. Stallard, brings this civil action against the defendants, Goldman Sachs Group Inc., Goldman Sachs & Co. LLC (collectively "the Goldman defendants"), and Voodoo SAS ("Voodoo"), alleging violations of 15 U.S.C. §§ 1, 18, 1114(1), 1117, 1125(a); 17 U.S.C. §§ 501(a)–(b), 506(a); and 18 U.S.C. §§ 201, 1952(a), 1956, 1961, 2320(a), as well as common law claims of trademark infringement, unfair competition, fraud, negligent misrepresentation, tortious interference, unjust enrichment, and civil conspiracy.  <u>See generally</u> Complaint ("Compl."), ECF No. 1.  Currently pending before the Court are (1) the Goldman defendants' motion to dismiss the Complaint, <u>see</u> Motion by Defendants Goldman Sachs Group, Inc. and Goldman Sachs & Co., LLC to Dismiss the Complaint ("Goldman Defs.' Mot."), ECF No. 13; (2) Voodoo's motion to dismiss the Complaint, <u>see</u> Motion by Defendant Voodoo SAS to Dismiss the Complaint ("Voodoo's Mot."), ECF No. 34; and the plaintiff's motion for sanctions against Voodoo, <u>see</u> Plaintiff's Motion for Sanctions ("Pl.'s Mot. for

Sanctions"), ECF No. 39.  Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant in part and deny without prejudice in part the defendants' motions to dismiss.  Specifically, the Court grants in part the Goldman defendants' motion to dismiss in regard to the plaintiff's Racketeer Influenced and Corrupt Organizations Act ("RICO") and antitrust claims because the plaintiff lacks Article III standing to bring RICO and antitrust claims against the Goldman defendants.  The Court grants in part Voodoo's motion to dismiss because the plaintiff lacks statutory standing to bring RICO and antitrust claims against Voodoo.  The Court will deny without prejudice both motions to dismiss in all other respects.  And, because the District of Columbia is not the proper venue for the plaintiff's claims that survive the defendants' motions, the Court will transfer the plaintiff's remaining claims to the Eastern District of Virginia and deny without prejudice the plaintiff's motion for sanctions.

## I.      BACKGROUND

### A.     Factual Background

The following allegations are derived from the plaintiff's Complaint unless otherwise specified.

---

[1] In addition to the filings already referenced, the Court also considered the following submissions in rendering its decision: (1) the Plaintiff's Memorandum in Opposition to Motion by Defendants Goldman Sachs Group, Inc. and Goldman Sachs & Co., LLC to Dismiss the Complaint ("Pl.'s Opp'n to Goldman Defs.' Mot."), ECF No. 18; (2) the Reply Brief of Defendants The Goldman Sachs Group, Inc. and Goldman Sachs & Co. LLC in Support of Their Motion to Dismiss the Complaint ("Goldman Defs.' Reply"), ECF No. 21; (3) the Plaintiff's Memorandum in Opposition to Motion by Defendant Voodoo SAS to Dismiss the Complaint ("Pl.'s Opp'n to Voodoo's Mot."), ECF No. 36; (4) the Reply Memorandum by Defendant Voodoo SAS in Support of Its Motion to Dismiss the Complaint ("Voodoo's Reply"), ECF No. 37; (5) defendant Voodoo's Notice of Erratum, Exhibit ("Ex.") A (Corrected Reply Memorandum by Defendant Voodoo SAS in Support of Its Motion to Dismiss the Complaint ("Corrected Voodoo Reply")), ECF No. 38-1; (6) the Opposition of Voodoo SAS to Plaintiff's Motion for Sanctions ("Voodoo's Opp'n"), ECF No. 40; and (7) the Reply Memorandum in Support of Plaintiff's Motion for Sanctions ("Pl.'s Reply"), ECF No. 41.

1. **Alleged Racketeering Activity by the Defendants**

The plaintiff alleges that on "May 28, 2018[, a] press release issued by [the] Goldman and Voodoo [defendants] stated, 'Goldman Sachs – through its West Street Capital Partners VII fund – becomes Voodoo's reference shareholder alongside the Founders who remain majority owners of the company." Compl. ¶ 149.  According to the plaintiff, "[the] Goldman [defendants] funded Voodoo with at least $200 million," id. ¶ 4, which was allegedly "laundered . . . through the Cayman Islands using a $7 billion vehicle called West Street Capital Partners VII[,]" id.  The plaintiff claims that "West Street Capital Partners VII is funded by 867 unknown investors[,]" id. ¶ 147, and is "directed by Maples Fiduciary Services (Delaware), who also has a Cayman Islands company, Maples Fiduciary Services (Cayman)[,]" id. ¶ 146.  The plaintiff also claims that "[c]ompensation from West Street Capital Partners VII goes to [the] Goldman [defendants.]" Id. ¶ 148.

The plaintiff makes several allegations against the Goldman defendants for alleged racketeering activity and laundering money to Voodoo.  Specifically, the plaintiff points to previous criminal violations allegedly committed by employees of the Goldman defendants.  See Compl. ¶¶ 115–42.  The plaintiff alleges that "Timothy Leissner [("Leissner")] pleaded guilty [in 2018] to conspiracy to violate the Foreign Corrupt Practices Act [] and conspiracy to commit money laundering."  Id. ¶ 141.  The plaintiff claims that "Leissner admitted that [the] Goldman [defendants] used the U[nited] S[tates] banking system to send money to bribe Malaysian officials . . . between January [ ] 2009 and October [ ] 2014."  Id. ¶ 142.  Furthermore, the plaintiff alleges the commission of "[b]ribery of U[nited] S[tates] [p]ublic [o]fficials[,]" id. at 26, by "Hank Paulson[, the former Chairman and Chief Executive Officer of Goldman Sachs and the former United States Secretary of the Department of the Treasury,]" see id. ¶¶ 123–39.  More specifically, he contends that Paulson "ran the show as Treasury Secretary" and "caus[ed]

A[merican] I[nternational] G[roup] [("AIG")] to fail and trigger[] highly leveraged payouts by AIG to [the] Goldman [defendants]." Id. ¶ 136.

The plaintiff also alleges that "[the] Goldman[] [defendants'] racketeering activity funded Voodoo's racketeering activity. [Specifically, he contends that t]he influx of funds from [the] Goldman [defendants] caused Voodoo to dominate the mobile video game market in a way that violates [federal] antitrust laws[,]" id. ¶ 4, and "infring[es] the [trademark and] copyrights of [the p]laintiff['s] [ ] Knocky Balls video game," id. ¶ 2.

**2. The plaintiff's intellectual property**

The plaintiff states that "[o]n November 5, 2019, [he] obtained a trademark registration[, Registration No. 5,900,923,] with the U[nited] S[tates] P[atent and] T[rademark] O[ffice] [("USPTO")] for the mark, Knocky Balls, for use on video games." Id. ¶ 25. Further, the plaintiff states that "[o]n June 24, 2019, [he] filed with the [United States Patent and Trademark Office or] [(']USPTO[')] an application for International Registration with the World Intellectual Property Organization (["]WIPO["]) under the Madrid Protocol, with France as the designated country." Id. ¶ 31. The plaintiff states that "[o]n August 29, 2019, the International Bureau of the WIPO registered the Knocky Balls mark[, ]Registration No. 1,484,378[], and on January 16, 2020, the Institut national de la propriété industrielle [ ] in France issued a statement of grant of protection for the Knocky Balls mark in accordance with Rule 18ter(1) of the Hague Agreement." Id. ¶ 36.

The plaintiff claims that "[t]he Knocky Balls mark was first used in [domestic] commerce when Knocky Balls was published by [the plaintiff] on the Microsoft Store on December 28, 2016, where it remains to this day. Knocky Balls was published by [the plaintiff] to Google Play on or before March 27, 2018." Id. ¶ 27. Further, the plaintiff states that "[o]n August 10, 2018,

Voodoo published a video game to the App Store (iOS) called Knock Balls, and on September 19, 2018, [Voodoo] published Knock Balls on Google Play." Id. ¶ 28.

According to the plaintiff, "[t]he logo for Knock Balls [is] remarkably similar to [the plaintiff's] Knocky Balls with a ball hitting blocks with a splat icon." Id. ¶ 28. The plaintiff claims that "[s]hortly after [ ] [his] application [for Knocky Balls] was approved for publication and forwarded to the I[nternational] B[ureau], Voodoo reported Knocky Balls to Google Play for violation of the impersonation policy. [And, o]n July 13, 2019, Knocky Balls was removed from Google Play." Id. ¶ 33. Additionally, the plaintiff claims that "Voodoo's ads, for [its] games, infringed on, at least, the following trademarks registered with the [USPTO]: Aniosgel[, ]Registration No. 2,924,386[], Disneyland[, ]Registration No. 4,866,683[], and Cleveland Cavaliers[, ]Registration No. 3,028,591[]; and the unregistered trademarks of Lebron James and a deceased YouTuber named Etika." Id. ¶ 38.

## B.    Procedural Background

On January 20, 2021, the Goldman defendants filed their motion to dismiss the complaint, see Goldman Defs.' Mot. at 1, on February 17, 2021, the plaintiff filed his opposition to the Goldman defendants' motion to dismiss, see Pl.'s Opp'n to Goldman Defs.' Mot. at 1, and on March 10, 2021, the Goldman defendants filed a reply in support of their motion, see Goldman Defs.' Reply at 1.

On January 20, 2021, Voodoo filed its motion to dismiss for improper service of process. See Voodoo SAS's Motion to Dismiss the Complaint for Improper Service of Process Pursuant to Fed. R. Civ. P. 12(b)(5) ("Voodoo's 1st Mot.") at 1, ECF No. 14. On January 6, 2022, the Court denied Voodoo's motion to dismiss for improper service of process and ordered the plaintiff to effect proper service by April 6, 2022. See Order (Jan. 6, 2022) at 1, ECF No. 33.

Then, on January 14, 2022, Voodoo filed its currently pending motion to dismiss the plaintiff's

Complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to

state a claim, <u>see</u> Voodoo's Mot. at 1, and on February 14, 2022, the plaintiff filed a

memorandum in opposition to Voodoo's motion, <u>see</u> Pl.'s Opp'n to Voodoo's Mot. at 1.

Additionally, the plaintiff filed a motion for sanctions on March 24, 2022, against

Voodoo for the alleged falsification of evidence, <u>see</u> Pl.'s Mot. for Sanctions at 1, after which

Voodoo filed its memorandum in opposition to the plaintiff's motion on April 7, 2022, <u>see</u>

Voodoo's Opp'n at 1, and to which the plaintiff filed his reply, <u>see</u> Pl's Reply, on April 13, 2022.

## II.     STANDARDS OF REVIEW

### A.     Federal Rule of Civil Procedure 12(b)(1)

"Federal [district] courts are courts of limited jurisdiction[,]" <u>Kokkonen v. Guardian Life</u>

<u>Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994), and "[a] motion for dismissal under [Federal Rule of

Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'"

<u>Morrow v. United States</u>, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting <u>Haase v.</u>

<u>Sessions</u>, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, the Court is obligated to dismiss a claim if

it "lack[s] . . . subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Because "[i]t is to be

presumed that a cause lies outside [the Court's] limited jurisdiction," <u>Kokkonen</u>, 511 U.S. at 377,

the plaintiff bears the burden of establishing that the Court has subject-matter jurisdiction, <u>see</u>

<u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 561 (1992).

"In deciding a [Rule] 12(b)(1) motion, the [C]ourt need not limit itself to the allegations

of the complaint."  <u>Grand Lodge of the Fraternal Ord. of Police v. Ashcroft</u>, 185 F. Supp.

2d 9, 14 (D.D.C. 2001).  Rather, the "[C]ourt may consider such materials outside the pleadings

as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."

Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see Jerome

Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Additionally, the Court must "assume the truth of all material factual allegations in the complaint

and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can

be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642

F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir.

2005)).  However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer

scrutiny in resolving a [Rule] 12(b)(1) motion than in resolving a [Rule] 12(b)(6) motion for

failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (first and second alterations in

original) (internal quotation marks omitted).

## B.    Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can

be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw [a] reasonable inference that the defendant is liable

for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the

complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be

derived from the facts alleged."  Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012)

(internal quotation marks omitted).  While the Court must "assume [the] veracity" of any "well-

pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the

assumption of truth." Iqbal, 556 U.S. at 679.  Thus, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing

Twombly, 550 U.S. at 555).  Also, the Court need not accept "legal conclusions cast as factual

allegations," or "inferences drawn by [the] plaintiff if those inferences are not supported by the

facts set out in the complaint." Hettinga, 677 F.3d at 476.  Finally, the Court "may consider only

the facts alleged in the complaint, any documents either attached to or incorporated in the

complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp.

Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**C.    Pro Se Complaints**

        "A pro se complaint," such as the plaintiff's, "must be held to less stringent standards

than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007)

(internal quotation marks and citations omitted).  Furthermore, all factual allegations by a pro se

litigant, whether contained in the complaint or other filings in the matter, should be read together

in considering whether to grant a dispositive motion. See Richardson v. United States, 193 F.3d

545, 548 (D.C. Cir. 1999) (finding that the district court abused its discretion in failing to read all

of the pro se litigant's filings together prior to dismissing the case).  Nonetheless, "[a] pro se

plaintiff[] must still adequately plead [his or her] complaint consistent with the edicts of Iqbal

and Twombly." Yellen v. U.S. Bank Nat'l Ass'n, 301 F. Supp. 3d 43, 47 (D.D.C. 2018) (citing

Atherton v. D.C. Office of Mayor, 567 F.3d 672, 682 (D.C. Cir. 2009)).

### III.    ANALYSIS

        The plaintiff asserts a total of twenty counts in his Complaint against the defendants. See

generally Compl.  He names the defendants jointly in some counts, and separately in others. See

Compl. at 2–4 (identifying the claims and the defendants to which each applies).  However,

because the plaintiff is proceeding in this case <u>pro se</u>, the Court will liberally construe each

allegation as to all of the defendants together.  <u>See</u> <u>Abdelfattah v. U.S. Dep't of Homeland Sec.</u>,

787 F.3d 524, 533 (D.C. Cir. 2015) ("A document filed <u>pro se</u> is to be liberally construed, [and

thus,] a <u>pro se</u> complaint, however inartfully pleaded, must be held to less stringent standards

than formal pleadings drafted by lawyers.") (internal quotation marks omitted).

The plaintiff's allegations can be divided into five different categories of claims: (1) civil

RICO claims, <u>see</u> Compl. ¶¶ 233–48; (2) antitrust claims, <u>id.</u> ¶¶ 249–59; (3) copyright

infringement claims, <u>id.</u> ¶¶ 191–94, 195–206, 207–10; (4) trademark infringement claims, <u>id.</u> ¶¶

176–90, and (5) common law claims including negligent misrepresentation, tortious interference,

unjust enrichment, and civil conspiracy, <u>see</u> Compl. at 2–4.  Both of the defendants argue that the

plaintiff lacks standing as to the RICO and antitrust claims.  <u>See</u> Goldman Defs.' Mot. at 10, 21;

Voodoo's Mot. at 26, 29.  The Court will therefore first address Article III standing before

turning to statutory standing as to the civil RICO and antitrust claims.[2]  The Court will then

address whether this district is the proper venue for the remaining claims as to all of the

defendants that survive the defendants' motions.

## A.    Article III Standing, Generally

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases'

and 'controversies.'"  <u>Allen v. Wright</u>, 468 U.S. 737, 750 (1984).  "In an attempt to give

meaning to Article III's case-or-controversy requirement, the courts have developed a series of

---

[2] As an initial matter, the Goldman defendants also seek to "[s]trike [the p]laintiff's [i]mmaterial [a]llegations[,]" Goldman Defs.' Mot. at 7; Fed. R. Civ. P. 12(f), that they believe "will inevitably lead to wildly improper discovery requests and disputes unnecessarily consuming the resources of the parties and the Court[,]" <u>id.</u> at 9.  However, the Goldman defendants concede that "given their impertinence[ to the case], the Complaint fails to state a claim with or without the [allegations.]" <u>Id.</u>  Because the Court ultimately agrees that the plaintiff lacks standing to pursue the RICO and antitrust claims against them, the Court need not consider the merits of the Goldman defendants' motion to strike the portions of the Complaint referenced in their motion to dismiss.  <u>Cf.</u> <u>Dentons US LLP v. Republic of Guinea</u>, 208 F. Supp. 3d 330, 338 (D.D.C. 2016) ("[F]ederal courts retain the discretion to strike [or not strike] immaterial allegations even in the absence of prejudice to the moving party[.]").

principles termed 'justiciability doctrines,' among which are standing[,] ripeness, mootness, and

the political question doctrine." Nat'l Treasury Emps. Union v. United States, 101

F.3d 1423, 1427 (D.C. Cir. 1996).  If a plaintiff lacks Article III standing, a district court

> need not delve into [a plaintiff's] myriad constitutional and statutory claims . . .
> because a court may not resolve contested questions of law when its jurisdiction is
> in doubt, as [h]ypothetical jurisdiction produces nothing more than a hypothetical
> judgment—which comes to the same thing as an advisory opinion, disapproved by
> [the Supreme] Court from the beginning.

Am. Freedom L. Ctr. v. Obama, 106 F. Supp. 3d 104, 108 (D.D.C. 2015) (alterations in original)

(internal quotation marks and citations omitted).

> [T]he irreducible constitutional minimum of standing contains three elements.
> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally
> protected interest which is (a) concrete and particularized, and (b) "actual or
> imminent, not 'conjectural' or 'hypothetical[.]'"  Second, there must be a causal
> connection between the injury and the conduct complained of—the injury has to be
> "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e]
> result [of] the independent action of some third party not before the court." Third,
> it must be "likely," as opposed to merely "speculative," that the injury will be
> "redressed by a favorable decision."

Lujan, 504 U.S. at 560–61 (third, fourth, and fifth alterations in original) (citations omitted).

"The absence of any one of these three elements defeats standing."  Newdow v. Roberts, 603

F.3d 1002, 1010 (D.C. Cir. 2010).

## 1. Whether the Plaintiff Has Standing to Pursue His Claims Against the Goldman Defendants

The Court first exercises its "affirmative obligation . . . to ensure it is acting within its

jurisdictional authority[,]" Morrow, 723 F. Supp. 2d at 76 (citing Grand Lodge, 185 F. Supp. 2d

at 13), and concludes that the plaintiff does not have Article III standing to bring RICO and

antitrust claims against the Goldman defendants.  This is because none of the plaintiff's RICO

and antitrust claims are "fairly traceable to the challenged conduct of the defendant[s.]"  See

Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016); Attias v. Carefirst, Inc., 865 F.3d 620, 629 (D.C. Cir. 2017) (same).

In regard to the plaintiff's RICO claims, he alleges "massive funding by [the] Goldman [defendants that] gave Voodoo the ad funding to push Knock Balls to the top of the charts on Google Play and the App Store[,]" Compl. ¶ 236, "remove[] Knocky Balls from Google Play, [cause Knocky Balls to receive] a fake bad review, and fraudulently [attempt] to purchase [Knocky Balls] through a fake company[,]" id. ¶¶ 241, 244.  However, an injury under civil RICO "must be concrete and actual or imminent, not conjectural or hypothetical."  Lopez v. Council on Am.-Islamic Rels. Action Network, Inc., 657 F. Supp. 2d 104, 110, 114 (D.D.C. 2009) (citing Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000)).  Here, the plaintiff fails to allege any facts that demonstrate how the "massive funding [allegedly provided] by [the] Goldman [defendants,]" Compl. ¶ 236, was a proximate cause of "[the removal of the plaintiff's] Knocky Balls from Google Play," id. ¶¶ 241, 244.  Moreover, the racketeering activity allegedly engaged in by the Goldman defendants would have occurred significantly earlier than when the plaintiff alleges the infringement of his video game occurred.  See Compl. ¶¶ 123–40 (contending that the alleged bribery of public officials by the Goldman defendants began in 2006 with the appointment of former Treasury Secretary Paulson); see also id. ¶¶ 86–87 (listing the dates of alleged infringement by Voodoo beginning on August 10, 2018).  The significant time lapse and lack of a causal connection between the alleged racketeering activity and the alleged infringement does not support the conclusion that there is a "direct relationship[,]" see Solomon v. Dechert LLP, No. 22-cv-3137 (JEB), 2023 WL 6065025, at *9 (D.D.C. Sept. 18, 2023), between the conduct engaged in by the Goldman defendants and the injuries alleged by the plaintiff.

Next, as to the plaintiff's antitrust claims, his allegations against the Goldman defendants are even more attenuated.  According to the plaintiff, "[t]he acquisition of Voodoo stock by [the] Goldman [defendants] may substantially lessen competition in the market in violation of 15 U.S.C. § 18[, and t]he acquisition also provided the funding to Voodoo to do the activities listed in this [C]omplaint that damaged [him.]"  Id. ¶ 259 (emphasis in original).  However, there are no allegations in the Complaint that the Goldman defendants' investment interest in Voodoo facilitated the alleged anticompetitive actions that Voodoo undertook against the plaintiff, see generally Compl., nor would ownership and investment alone be sufficient to establish that the Goldman defendants facilitated any anticompetitive actions by Voodoo.  See, e.g., Copperweld Corp. v. Indep. Tube Corp., 467 U.S. 752, 772 (1984) ("A corporation has complete power to maintain a wholly owned subsidiary . . . . The economic, legal, or other considerations that lead corporate management to choose one structure [of ownership] over the other are not relevant to whether the enterprise's conduct seriously threatens competition.").  And, as the Goldman defendants correctly indicate, at least two of the competitors in the purported market are owned by companies with market capitalizations "in excess of $10 billion and $70 billion, respectively, dwarfing the $200 million Goldman fund investment that supposedly . . . conferred market dominance on Voodoo."  Goldman Defs.' Mot. at 25 (internal quotation marks omitted); see Compl. ¶ 166 ("Activision Blizzard is the largest titan in the [video game] industry[.]"); id. ("The largest [mobile video game company] is Zynga.").  Thus, even assuming arguendo that the plaintiff sustained any antitrust injury from anticompetitive conduct, it is not "fairly traceable" to the Goldman defendants.

Accordingly, for the above reasons, the Court concludes that the plaintiff lacks Article III standing to bring RICO and antitrust claims against the Goldman defendants, and it must

therefore dismiss Counts IX, X, XI and XII, against them.  However, at this stage of the case, the

Court notes that the plaintiff appears to have Article III standing against Voodoo because, taking

his allegations as true, he could have "suffered an injury in fact, [ ] that is fairly traceable to the

challenged conduct of [ ] [Voodoo], and [ ] [it] [could be] redressed by a favorable judicial

decision."  Spokeo, 578 U.S. at 338.  Therefore, the Court will proceed to assess whether the

plaintiff possesses statutory standing to pursue his RICO and antitrust claims against Voodoo.

**B.    Whether the Plaintiff's RICO Claims Should be Dismissed**

Incorporating the Goldman defendants' arguments, see Voodoo's Mot. at 8, Voodoo

argues that the plaintiff has not "establish standing to bring a civil RICO claim[ against it,]"

Goldman Defs.' Mot. at 10.  Specifically, Voodoo "challenges [ ] [the p]laintiff's standing to sue

under [the civil RICO] statute[], as [the plaintiff] lacks . . . the injury to 'business or property'

required to sue under civil RICO, 18 U.S.C. § 1964(c)[.]"  Voodoo's Mot. at 8.  As proof that he

has alleged injury to his business or property, the plaintiff contends in his opposition that "the

Complaint properly alleged the fake negative review of his game[ from the Google Play

Store, ]Compl. ¶¶ 271–72[], the false removal of his game[, ]Compl. ¶¶ 273–74[], and the

facilitation, funding, and concealment of these frauds by the defendants through the Cayman

Islands[, ]Compl. ¶¶ 231, 286[].  Certainly, those activities damaged the plaintiff."  Pl.'s Opp'n

to Goldman Defs.' Mot. at 11.  The Court will address each argument in turn.

**1.    Standing to Pursue the Civil RICO Claims[3]**

"To adequately allege a civil RICO claim, [a p]laintiff must allege '(1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity.'"  Roe v. Bernabei & Wachtel PLLC,

85 F. Supp. 3d 89, 99 (D.D.C. 2015) (quoting Pyramid Secs. Ltd. v. IB Resolution, Inc., 924

---

[3] Statutory standing under RICO is properly analyzed under Federal Rule 12(b)(6)—separate and distinct from Article III standing, which is analyzed under 12(b)(1).

F.2d 1114, 1116 (D.C. Cir. 1991)).  "'Racketeering activity,' also known as 'predicate acts' or 'predicate offenses,' is defined in a lengthy statutory provision which enumerates various criminal acts under both state and federal law."  Cheeks v. Fort Myer Constr. Corp., 216 F. Supp. 3d 146, 153 (D.D.C. 2016) (quoting 18 U.S.C. § 1961(1)).  "Thus, [a] plaintiff[] must allege that the defendants committed predicate acts to state a civil RICO claim."  Id.  And, the plaintiff must establish that the predicate acts "were directed at him, as opposed to others."  Scheck v. Gen. Elec. Corp., No. 91-cv-1594 (SS), 1992 WL 13219, at *2 (D.D.C. Jan. 7, 1992); see also 18 U.S.C. § 1964.

A civil RICO plaintiff "only has [statutory] standing if, and can only recover to the extent that, he has been injured in his business or property by the [predicate acts—i.e., the] conduct constituting the [RICO] violation[.]"  Hourani v. Mirtchev, 796 F.3d 1, 11 (D.C. Cir. 2015) (first alteration in original) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496–97 (1985)).  "[T]he injury [ ] is the harm caused by predicate acts sufficiently related to constitute a pattern[.]"  Id.  A civil RICO plaintiff must also show that (1) "the defendant's [RICO] violation was a 'but for' cause of [the] plaintiff's injury[,]"  Holmes v. Sec. Invest. Prot. Corp., 503 U.S. 258, 265–66 (1992), and (2) that the "RICO predicate act proximately caused [the plaintiff's] alleged injuries[,]"  Solomon, 2023 WL 6065025, at *9 (citing Sedima, 473 U.S. at 495).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation[s] led directly to the plaintiff's injuries."  Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006).  Indeed, "[t]here must be 'some direct relation between the injury asserted and the injurious conduct alleged.  A link that is too remote, purely contingent, or indirect[] is insufficient.'"  Cheeks, 216 F. Supp. 3d at 153 (quoting Hemi Grp., LLC v. City of New York, 559 U.S. 1, 9 (2010)).

Before addressing whether the plaintiff has adequately alleged injury to his business or property, the Court first notes the alleged predicate acts the plaintiff attributes to the defendants. See Pl.'s Opp'n to Goldman Defs.' Mot. at 11 ("The plaintiff . . . allege[s] the fake negative review of his game (Compl. ¶¶ 271–72), the false removal of his game [from Google Play] (Compl. ¶¶ 273–74), and the facilitation, funding, and concealment of [alleged] frauds by the defendants through the Cayman Islands (Compl. ¶¶ 231, 286).").  The plaintiff is correct that the defendants do not appear to address whether "there were [ ] patterns of racketeering activity[,]" id. at 10, and instead, focus their arguments on whether the plaintiff has properly connected the predicate acts to his own alleged injuries, see Goldman Defs.' Reply at 4–5 ("The fatal problem for [the p]laintiff is that RICO requires a nexus among the predicate acts that form the requisite pattern of racketeering, the purported enterprise, and the plaintiff's injury." (internal quotation marks omitted)); Corrected Voodoo Reply at 21 (incorporating by reference the Goldman defendants' RICO arguments).  Accordingly, the Court assumes arguendo that the plaintiff has pled the requisite predicate acts, see, e.g., Ambellu v. Re'ese Adbarat Debre Selam Kidist Mariam, 387 F. Supp. 3d 71, 85 (D.D.C. 2019) ("Under [Federal] Rule 12(b)(6), the Court must construe the [civil RICO plaintiff]'s allegations in the light most favorable to them and accept as true all reasonable factual inferences drawn from well-pleaded allegations."), and must determine whether the plaintiff has demonstrated a connection between those acts and an injury sustained by his business or property sufficient to establish civil RICO standing.

2. **Whether the Plaintiff Has Statutory Standing to Proceed Against Voodoo**

The plaintiff argues that he incurred "injur[ies] to [his] business or property[,]" Quick v. EduCap, Inc., 318 F. Supp. 3d 121, 138 (D.D.C. 2018), claiming that Voodoo "clone[d the plaintiff's] Knocky Balls[ game,]" which "push[ed Voodoo's] Knock Balls [game] to the top of the charts on Google Play and the App Store[,]" Compl. ¶ 236; see id. ¶ 241.  However, the

plaintiff does not allege a "concrete financial loss" as the basis for any of his civil RICO claims

against Voodoo for its alleged conduct.  See Lopez, 657 F. Supp. 2d at 110, 114 (citing Maio,

221 F.3d at 483).  The plaintiff further alleges that Voodoo "damaged [him] by infringing his

copyrights and trademark."  Compl. ¶ 244.  While the "misuse of intellectual property can suffice

to confer standing for a RICO claim," the plaintiff must provide a "concrete example" of the

harm that was caused.  Roe, 85 F. Supp. 3d at 99–100 (internal quotation marks and citations

omitted).  The Court cannot identify, nor does the plaintiff provide concrete examples of any

harm he has suffered as a result of Voodoo's alleged conduct.  See Compl. ¶¶ 236, 241, 244.

Rather, the plaintiff alleges that "[Voodoo] removed Knocky Balls from Google Play, gave it a

fake bad review, and fraudulently tried to purchase it through a fake company[,]" id. ¶ 244,

which, without more, does not appear to have resulted in an injury that "flow[ed] from the

commission of the [alleged] predicate acts[—i.e., the alleged copyright and trademark

infringement,]" see Lopez, 657 F. Supp. 2d at 110.

　　　　Additionally, the plaintiff does not allege any facts to show that Voodoo's purported

"clon[ing of the plaintiff's] Knocky Balls[ game,]" was a "[b]ut for" and proximate cause of

Voodoo's Knock Balls game being elevated "to the top of the charts on Google Play and the App

Store."  Compl. ¶ 236.  The reasons for Voodoo's Knock Balls game topping the charts on

Google Play and the App Store are speculative at best, see Lopez, 657 F. Supp. 2d at 110,

including the plaintiff's own representation that Voodoo received considerable "ad[vertising]

funding[,]" Compl. ¶ 236, which could explain the elevated ranking of Voodoo's Knock Balls

game on Google Play and the App Store.  But "[b]ecause the plaintiff['s] alleged injury is

speculative at best, the plaintiff[ did] not ma[k]e the requisite showing that [his] injuries w[ere]

the proximate cause of . . . [Voodoo's] acts."  Lopez, 657 F. Supp. 2d at 114; see Maio, 221 F.3d

at 483 (noting that a showing of injury requires proof of a concrete financial loss and not mere injury to an intangible property interest).  The harm that the plaintiff alleges must be "direct[ly] connect[ed] [to] the predicate criminal act and the injury[,]" <u>Greenpeace, Inc. v. Dow Chemical Co.</u>, 808 F. Supp. 2d 262, 270 (D.D.C. 2011), but, the plaintiff has failed to demonstrate that connection.  Accordingly, the plaintiff has not alleged any facts to show he was "injured in his business or property by [Voodoo's] conduct[,] constituting the [civil RICO] violation[.]"  <u>See Hourani</u>, 796 F.3d at 11.

For these reasons, the Court must dismiss the civil RICO claims against Voodoo, <u>i.e.,</u> Counts IX, X, XI, and XII, for lack of statutory standing.

**C.    Whether the Plaintiff Has Standing to Pursue Antitrust Claims Against Voodoo**

The Court next considers whether the plaintiff has antitrust standing to bring antitrust claims against Voodoo.  The plaintiff's two counts alleging antitrust violations are based on § 1 of the Sherman Act and § 7 of the Clayton Act.  <u>See</u> Compl. ¶¶ 249–59.  Section 1 of the Sherman Act declares illegal "[e]very contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States, or with foreign nation[s,]" 15 U.S.C. § 1, and the Supreme Court has recognized that this provision was intended to prohibit only unreasonable restraints, <u>see, e.g.</u>, <u>Bus. Elecs. Corp. v. Sharp Elecs. Corp.</u>, 485 U.S. 717, 723 (1988).  Section 7 of the Clayton Act prohibits any acquisition of the stock or assets of another company where "the effect of such acquisition may be substantially to lessen competition[.]"  15 U.S.C. § 18.  The Court will analyze whether the plaintiff has adequately pleaded an antitrust injury with respect to all of the defendants collectively.[4]

---

[4] Although the Court has dismissed the plaintiff's antitrust claims against the Goldman defendants, the Court must assess their conduct as it relates to Voodoo for purposes of determining whether the plaintiff has antitrust standing to pursue claims under Sherman and Clayton Acts against Voodoo.

Generally, to demonstrate antitrust standing, the plaintiff must allege an injury that "affect[s] [his] business or property" and is "the kind of injury the antitrust laws were intended to prevent[.]"  Andrx Pharms., Inc. v. Biovail Corp. Int'l, 256 F.3d 799, 806 (D.C. Cir. 2001). More specifically, to establish antitrust standing, a plaintiff must demonstrate "(1) an injury that the antitrust laws were designed to prevent and that flows from that which makes [the] defendants' acts unlawful; (2) direct and non-speculative damages to [the] plaintiff[']s[] business or property; and (3) proper-plaintiff status, which ensures that other parties are not better situated to sue."  Mulvey v. Am. Airlines Inc., 18-cv-3119 (CKK), 2019 WL 1060877, at *3 (D.D.C. Mar. 6, 2019).  "To understand the scope of antitrust standing, [courts must] focus on the bedrock principle of this field: antitrust laws protect market (i.e.[,] economic) competition." Johnson v. Comm'n on Presidential Debates, 869 F.3d 976, 983 (D.C. Cir. 2017) (emphasis omitted); see Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488 (1977).  But "[u]nlike constitutional standing, . . . jurisdiction does not turn on antitrust standing."  In re Lorazepam & Clorazepate Antitrust Litig., 289 F.3d 98, 108 (D.C. Cir. 2002) (citing Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 535 n.31 (1983)).  Because antitrust standing is not jurisdictional, "[i]t is properly considered under [Federal] Rule 12(b)(6)."  Pierce v. Yale Univ., 17-cv-2508 (CRC), 2019 WL 162029, at *3 (D.D.C. Jan. 10, 2019).

Here, the plaintiff lacks antitrust standing because he has not properly alleged how Voodoo harmed the competitive mobile video game market.  See, e.g., Sprint Nextel Corp. v. AT&T Inc., 821 F. Supp. 2d 308, 313 (D.D.C. 2011) ("[E]ven if a threatened injury is 'causally related to an antitrust violation,' it 'will not qualify as "antitrust injury" unless it is attributable to an anticompetitive aspect of the practice under scrutiny.'" (quoting Atl. Richfield Co. v. USA

Petrol. Co., 495 U.S. 328, 334 (1990))).  Nor has the plaintiff shown that his alleged injury is "the kind of injury the antitrust laws were intended to prevent."  Andrx Pharms., Inc., 256 F.3d at 806.  In regard to the relevant market, the plaintiff makes limited allegations against Voodoo. Specifically, the plaintiff implicates Voodoo by arguing that he was "damaged because [the] Goldman [defendants] funded Voodoo and made them the size that they are.  But for [the] Goldman [defendants], Voodoo would not have infringed [the plaintiff's] game[.]"  Compl. ¶ 255.  However, as the Court indicated, supra, Section III.A.1, there is no allegation in the Complaint that Goldman's interest in Voodoo facilitated alleged anticompetitive actions by either company.  See generally Compl.; see, e.g., Copperweld Corp., 467 U.S. at 772 ("A corporation has complete power to maintain a wholly owned subsidiary . . . . The economic, legal, or other considerations that lead corporate management to choose one structure [of ownership] over the other are not relevant to whether the enterprise's conduct seriously threatens competition.").  Without a causal link between Goldman's purchase of a minority share in Voodoo and Voodoo's allegedly anticompetitive conduct, the plaintiff cannot demonstrate antitrust standing.  See Ass'n of Retail Travel Agents, Ltd. v. Air Transp. Ass'n of Am., 635 F. Supp. 534, 536 (D.D.C. 1986) ("[§] 1 of the Sherman Act requires a party to show concerted activity in restraint of trade." (emphasis added)); see Nat'l ATM Council, Inc. v. Visa Inc., 922 F. Supp. 2d 73, 82 (D.D.C. 2013) ("[P]laintiffs [alleging misconduct in violation of § 1 of the Sherman Act] must allege not only the antitrust injury, but also the existence of an agreement or conspiracy, or facts sufficient to support the inference of an agreement or conspiracy." (emphasis added)).

Even assuming arguendo that the plaintiff could establish sufficient causation to implicate the Goldman defendants in Voodoo's conduct, his own briefing calls that conclusion

into question.  The plaintiff argues that the Goldman defendants' purchasing portions of Voodoo is akin to "a deep[-]pocket parent in[] a market of pygmies."  Pl.'s Opp'n to Goldman Defs.' Mot. at 20 (quoting Brunswick Corp., 429 U.S. at 478) (internal quotation marks omitted). Implicitly, the plaintiff alleges that due to Goldman's financial might, Voodoo has been able to engage in anticompetitive business practices that would have otherwise been impossible. However, first, there is no factual allegation as to how the Goldman defendants' size facilitated Voodoo's actions any differently than would have been the case had they been purchased by a smaller company.  See generally Compl.  Thus, without an allegation that the injury to the market would not have occurred had Voodoo not been purchased by a deep-pocketed parent, the plaintiff likewise fails to demonstrate an injury sufficient to establish antitrust standing. Brunswick, 429 U.S. at 487 (holding that, under § 7 of the Clayton Act, a plaintiff must prove "more than injury causally linked to an illegal presence in the market"); see WAKA LLC v. DC Kickball, 517 F. Supp. 2d 245, 250 (D.D.C. 2007) ("To state a claim based on a [§] 1 violation, a plaintiff must allege that defendants entered into some contract, combination, conspiracy, or other concerted activity that unreasonably restricts trade in the relevant market." (internal quotation marks omitted)).

Second, and importantly, the plaintiff's allegation about the power of the Goldman defendants' financial assets in the market fails due to the greater size of other competitors also in the market.  The Goldman defendants deny the plaintiff's assertion that they have over one trillion dollars in assets, claiming the true number is less than one-tenth of that amount.  See Goldman Defs.' Reply at 15 n.5.  The Goldman defendants also note that several of the competitors in the market are owned by at least two companies with market capitalizations "in excess of $10 billion and $70 billion, respectively, dwarfing the $200 million Goldman fund

investment[.]"  Goldman Defs.' Mot. at 25.  Thus, the Goldman defendants are correct that they

are not a giant in a pygmy market, but rather a giant in a market of giants, which undermines the

plaintiff's claim that their size contributes to anticompetitive effects.[5]

Finally, the plaintiff's claim that that "[b]ut for [the] Goldman [defendants], Voodoo

would not have infringed [the plaintiff's] game," Compl. ¶ 255, is "speculative at best . . . [and

therefore] the [plaintiff] lack[s] [ ] standing[ based on this theory,]" Transmission Agency of N.

Cal. v. Fed. Energy Regul. Comm'n, 495 F.3d 663, 670 (D.C. Cir. 2007).  Furthermore, the

"Sherman Act does not penalize harm to individual competitors, but to competition itself."

Southgate v. Facebook, Inc., No. 17-cv-648 (AJT), 2017 WL 6759867, at *4 (E.D. Va. Nov. 14,

2017) (citing NYNEX Corp. v. Discon, Inc., 525 U.S. 128, 139 (1998).  Indeed, "this [Circuit]

has clearly held that injury to a single competitor does not suffice to constitute an injury to

competition."  Johnson, 869 F.3d at 983; Dial A Car, Inc. v. Transp., Inc., 82 F.3d 484, 486–87

(D.C. Cir. 1996) ("While [the plaintiff] alleges injury to itself, that injury involves only one

specific competitor and is insufficient to support a finding that the market as a whole is or will be

injured.").  Therefore, the plaintiff's infringement claims do not survive under an antitrust theory

of liability because, as alleged, they are not "the kind[s] of injur[ies that] the antitrust laws were

intended to prevent."  Andrx Pharms., Inc., 256 F.3d at 806.  Accordingly, the Court must

---

[5] In regard to Voodoo, the plaintiff concedes that it does not have market power in the hyper-casual game market.
See Pl.'s Opp'n to Goldman Defs.' Mot. at 20 ("[the Goldman defendants] [have] the market power, not [d]efendant
Voodoo.").  Both parties agree that central to any antitrust claim is an allegation that "defendants have market power
in that market[.]"  In re McCormick & Co., 217 F. Supp. 3d 124, 137 (D.D.C. 2016).  The plaintiff attempts to
backpedal from this concession by claiming that Voodoo has market power "through the market power of its deep
pocket parent."  Pl.'s Opp'n to Voodoo's Mot. at 40.  However, this argument also falls victim to the same defects it
has in the context of the Goldman defendants, namely, that many of Voodoo's competitors have similarly deep-
pocketed investors.  Accordingly, the plaintiff has not alleged sufficient facts to state an antitrust claim against
Voodoo.  Fotobom Media, Inc. v. Google LLC, No. 22-cv-712 (APM), 2024 WL 1603968, at *2 (D.D.C. Feb. 27,
2024) ("An antitrust plaintiff must allege sufficient 'fact[s] to raise a reasonable expectation that discovery will
reveal evidence of illegal [conduct].'" (alterations in original) (quoting Twombly, 550 U.S. at 556)).

dismiss Counts XIII and XIV of the plaintiff's Complaint as to Voodoo because he lacks antitrust standing to pursue them.

**D.    Whether This Court is the Proper Venue for the Plaintiff's Remaining Claims**

The Court, having dismissed the civil RICO and antitrust claims against all of the defendants, now considers whether the remaining claims should be transferred to another venue. The defendants argue that "[w]ithout the RICO and antitrust claims, this Court lacks jurisdiction over the remaining claims."  Goldman Defs.' Mot. at 26; Voodoo's Mot at 8.  In response, the plaintiff argues that "[t]he defendants did not dispute that the plaintiff served them on their registered agent in [the District of Columbia], and they did not dispute that service gives the Court personal jurisdiction over them for the RICO and antitrust claims through the [respective] nationwide service of process statutes."  Pl.'s Opp'n to Goldman Defs.' Mot. at 26; see 18 U.S.C. § 1965 (RICO); 15 U.S.C. § 22 (antitrust).  The plaintiff therefore argues that "[t]he service gives the Court general personal jurisdiction over the defendants for all claims."  Pl.'s Opp'n to Goldman Defs.' Mot. at 27.

28 U.S.C. § 1391(b) provides that a civil action may be brought in

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

In evaluating a jurisdictional challenge under this statute, a Court may either dismiss a case, "or if it be in the interest of justice, transfer such case to any district . . . in which it could have been

brought." 28 U.S.C. § 1406(a). "The decision whether a transfer or a dismissal is in the interest of justice[ ] rests within the sound discretion of the district court" where the suit was improperly filed, see Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983). Courts in this Circuit favor transfer in a case when "procedural obstacles—such as lack of personal jurisdiction[ or] improper venue . . . impede an expeditious and orderly adjudication [ ] on the merits." Coltrane v. Lappin, 885 F. Supp. 2d 228, 235 (D.D.C. 2012) (Walton, J.) (internal quotation marks omitted). When the issue of whether to transfer or dismiss arises where the plaintiff is pro se, there is a "presumption in favor of transfer[ing]" a complaint that "dovetails with the normal application of liberal standards to pro se pleadings." Sanchez-Mercedes v. Bureau of Prisons, 453 F. Supp. 3d 404, 418 (D.D.C. 2020). However, there are no "fixed general rules on when cases should be transferred[.]" Starnes v. McGuire, 512 F.2d 918, 929 (D.C. Cir. 1974).

The defendants are correct that without the RICO and antitrust claims, this Court no longer has general or specific jurisdiction over the remaining claims because none of the defendants are "at home" in this district, nor do the remaining claims "arise out of or relate to the defendant[]s' contacts with th[is] forum." Goldman Defs.' Mot. at 26 n.17; see Cockrum v. Donald J. Trump for President, Inc., 319 F. Supp. 3d 158, 174 (D.D.C. 2018) ("For corporations, [general jurisdiction can be exercised in] a[] [district] . . . in which the corporation is fairly regarded as at home[.]") (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011)); see also Goodyear Dunlop Tires Operations, S.A., 564 U.S. at 919 ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." (internal quotation marks omitted)). None of the defendants resides in the District of Columbia, as the Goldman defendants reside in the state of

New York, <u>see</u> Goldman Defs.' Mot. at 26 n.17; Compl. ¶¶ 6–7, and Voodoo is headquartered in Paris, France, <u>see</u> Voodoo's Mot. at 3; Compl. ¶ 8. Moreover, the plaintiff, a resident of Herndon, Virginia, <u>see</u> Compl. ¶ 5, does not allege that any of the remaining claims are related to or arise out of the defendants' ties to the District of Columbia, <u>see generally</u> Compl. Thus, because this Court has neither general jurisdiction or specific jurisdiction over the remaining claims, the Court is divested of a basis upon which to exercise personal jurisdiction over the defendants in regard to these claims.

Exercising its "sound discretion[,]" <u>Naartex Consulting Corp.</u>, 722 F.2d at 789, the Court, "in the interest of justice[,]" 28 U.S.C. § 1406(a), transfers this case to what is now the proper venue, rather than dismissing it. Accordingly, the Court transfers the plaintiff's copyright, trademark, and state law claims to a "district in which a substantial part of the events . . . giving rise to the claim[s] occurred, or a substantial part of property that is the subject of the action is situated[,]" 28 U.S.C. § 1391(b)(2), that being the United States District Court for the Eastern District of Virginia.[6]

## IV.   CONCLUSION

For the foregoing reasons, the Court dismisses the plaintiff's RICO and antitrust claims for lack of Article III standing as to the Goldman defendants, statutory standing as to Voodoo, denies without prejudice the plaintiff's motion for sanctions, and transfers the remaining claims to the Eastern District of Virginia.

---

[6] For all of the same reasons, the Court will also deny without prejudice the plaintiff's motion for sanctions. In the event the plaintiff desires to renew his motion for sanctions, he may do so upon the transfer of this case to the Eastern District of Virginia.

**SO ORDERED** this 27th day of November, 2024.[7]

REGGIE B. WALTON
United States District Judge

---

[7] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.